```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GATEGUARD, INC.,

            Plaintiff,

       v.                              20 Civ. 1609 (AJN)

GOLDMONT REALTY CORP., et al.,

            Defendants.                Initial Pretrial
                                       Conference
                                       (Via Teleconference)
------------------------------x
                                       New York, N.Y.
                                       July 24, 2020
                                       3:49 p.m.

Before:

                 HON. ALISON J. NATHAN,

                                       District Judge

                     APPEARANCES

FISHERBROYLES, LLP
     Attorneys for Plaintiff
BY:  ARIEL REINITZ, ESQ.

KOSS & SCHONFELD, LLP
     Attorneys for Defendants
BY:  SIMCHA DAVID SCHONFELD, ESQ.
     SHIRA G. MOYAL, ESQ.
```

1         (Case called)
2         THE DEPUTY CLERK:  Persons granted access to remote
3    proceedings are reminded of the general prohibition against
4    photographing, recording, and rebroadcasting of court
5    proceedings.  Violations of these prohibitions may result in
6    sanctions, including removal of court-issued media and
7    credentials, restricted entry to future hearings, denial of
8    entry to future hearings, or any other sanctions deemed
9    necessary by the court.
10         Counsel, please state your name for the record,
11    starting with plaintiff's counsel.
12         MR. REINITZ:  Ariel Reinitz, FisherBroyles, for
13    plaintiff GateGuard.
14         THE COURT:  Good afternoon, Mr. Reinitz.
15         MR. REINITZ:  Good afternoon, your Honor.
16         THE COURT:  And for the defendant.
17         MR. SCHONFELD:  Simcha Schonfeld from Koss & Schonfeld
18    for the defendants.
19         THE COURT:  Good afternoon.
20         MS. MOYAL:  And Shira Moyal, also for defendants, from
21    Koss & Schonfeld.
22         THE COURT:  All right.  Good afternoon, Ms. Moyal.
23         I need one lawyer who will be speaking for each side,
24    so who will be speaking on behalf of the defendants?
25         MR. SCHONFELD:  That will be me, your Honor,

1    Mr. Schonfeld.
2              THE COURT:  Okay.  Thank you, Mr. Schonfeld.
3              Or actually, Ms. Moyal, you represent a different
4    party?
5              MS. MOYAL:  No, the same party.
6              THE COURT:  All right.  Thank you.
7              Thank you, counsel.
8              Because of the public health crisis, I am conducting
9    this proceeding remotely by telephone.  Can I confirm, please,
10   that I have the court reporter on the line?
11             THE REPORTER:  Yes.  Good afternoon, Judge.  It's
12   Khris Sellin.  I'm here.  How are you.
13             THE COURT:  Thank you so much, and good afternoon.
14             All right.  We're here for our initial pretrial
15   conference in this matter.
16             I am in receipt of the parties' joint letter dated
17   July 20, 2020, with the proposed case management plan.  I thank
18   you for that.  We will discuss what's anticipated in terms of
19   discovery, any foreseeable obstacles to discovery, we'll
20   finalize the case management plan, and then I will inquire as
21   to how the Court can be of assistance regarding settlement.
22             Before we begin, since it's my obligation to ensure
23   that I have jurisdiction over the matter, I am going to inquire
24   about that.
25             Mr. Schonfeld, you removed this case to federal court

1    based on diversity jurisdiction, correct?
2            MR. SCHONFELD:  Yes, your Honor.
3            THE COURT:  Are any of the defendants residents of New
4    York?
5            MR. SCHONFELD:  Yes, they are.
6            THE COURT:  Okay.  So you're not able to remove to
7    federal court in that instance.
8            And is there complete diversity jurisdiction aside
9    from that issue?
10           MR. SCHONFELD:  Yes, I believe there is.
11           THE COURT:  The amended complaint in state court
12   alleges that GateGuard is a Delaware corporation.  Where is its
13   principal place of business; do you know, Mr. Schonfeld?
14           MR. SCHONFELD:  I don't know.  I believe it's Florida.
15   That's my understanding.
16           THE COURT:  Let me --
17           MR. SCHONFELD:  They do have an address listed with
18   the Secretary of State of the State of New York, but it's not
19   an actual address.  I know when we tried to effect service,
20   there was nothing there.
21           THE COURT:  Mr. Reinitz, what's your understanding of
22   the citizenship of the plaintiff?
23           MR. REINITZ:  Mr. Schonfeld is correct; GateGuard is a
24   Delaware corporation.  Mrs. Schonfeld is also correct that as
25   of today, my understanding -- I can confirm -- is that

1  GateGuard's current principal place of business is in Miami,
2  Florida.  As of the date -- I guess the operative date would be
3  the date of the amended complaint in February -- I'm not sure.
4  Certainly prior to that date they had a principal place of
5  business in New York, and I'm just not certain as to when that
6  shifted from New York to Miami.  Sometime in the interim.
7           THE COURT:  Okay.  And what about the issue of removal
8  to federal court by an in-state defendant, Mr. Reinitz?  What's
9  your position with respect to that?
10          MR. REINITZ:  Removal to federal court by an in-state
11 defendant, we don't take a position at the moment regarding the
12 removal one way or the other.
13          THE COURT:  All right.  We'll set the schedule and
14 I'll let you put in whatever things you like, and I'll need
15 assurance as to complete diversity in order to proceed, even if
16 you consent to the removal.
17          All right.  So let's move on for now.  Let's talk
18 about what's anticipated in terms of discovery, including any
19 foreseeable obstacles to discovery.  Mr. Reinitz?
20          MR. REINITZ:  Your Honor, we've set out in the case
21 management plan sort of the schedule.  The only issues that I
22 foresee are simply with respect to depositions.  I don't
23 believe there will be a huge number of them, but obviously,
24 given the health crisis, you know, I expect there may be some
25 scheduling issues there, which is why I proposed -- and I think

opposing counsel, you know, agrees -- you know, just trying to give ourselves some time to see where things go and travel schedules and sort of where things stand in a few months from now. Those were the only issues that I anticipated at this stage.

THE COURT: All right. Fair enough. I have been encouraging counsel to consider video depositions, since we have uncertainty as to the length of time that we'll be restricted in travel and the like. I do intend to keep cases moving forward, and there is always the option for video depositions, so I encourage you to confer about those possibilities when you get to that stage.

Mr. Schonfeld, anything else to flag in terms of special obstacles to discovery?

MR. SCHONFELD: Yes, your Honor. Two issues, specifically with respect to depositions. And just for the record, I have no objection to conducting videotaped depositions. We've done quite a few of them already in my office with Ms. Moyal, who has handled a few herself. So obviously we'd always prefer to do things in person, but given the situation as it is today and particularly that it may appear that one or more witnesses would be in Florida, it would be particularly difficult, and so we have no objection to that.

But the two issues that I anticipate are: Number one, Mr. Ari Teman, who would definitely be the principal witness on

K7o1gatc

1    behalf of the plaintiffs, as the Court may be aware, was
2    convicted on multiple counts of bank fraud and is due to be
3    sentenced in September.  I know that the government is asking
4    for 30 to 37 months.  To the extent that he'll be incarcerated,
5    that may pose some difficulty in achieving his testimony,
6    number one.
7              The second issue -- and I did make reference to this
8    in our joint letter -- is that we believe that Mr. Reinitz is a
9    material witness in this action.  Whether he will recuse
10   himself from the case or not, I suppose that's a discussion for
11   another time, but we will certainly need his deposition.  There
12   are references in the complaint that he submitted in which he
13   refers to conversations that he had in and around the execution
14   of this contract, which obviously are material -- that's why
15   they're in the complaint -- and I would note that Mr. Reinitz
16   has testified in other actions in connection with Mr. Teman.
17   So we would certainly want his deposition testimony, and I
18   would imagine that that would raise some issues for the Court
19   and for Mr. Reinitz's consideration as well.
20             THE COURT:  Mr. Reinitz, do you want to respond to
21   that.
22             MR. REINITZ:  Yeah, I understand generally where
23   Mr. Schonfeld is coming from.  Obviously I don't want to start
24   to prelitigate this issue other than to note that obviously,
25   from where I stand, from where plaintiffs stand today, any

1   input that I would have as a fact witness would be very small,
2   you know, in terms of the actual issues that will, you know, be
3   litigated meaningfully in this case.  That's number one.
4            Number two, my understanding, in terms of briefly
5   looking at the issue, is that generally speaking, certainly in
6   this district, when this issue comes up, a lot of times it can
7   be, you know, just -- motions to disqualify can be used sort of
8   as more of a leverage, as a tool to raise issues and in many
9   cases are simply deferred up until the point of things going to
10  trial.  So if this case ultimately goes to trial, I think
11  that's an issue to revisit, but certainly when it comes to fact
12  discovery and paper document discovery, I don't foresee that --
13  which is obviously going to be happening in the next few
14  months, I don't think this issue would -- I guess what I'm
15  saying is, this may well be premature for the Court and as
16  between the parties as well.
17           THE COURT:  Mr. Schonfeld, do you intend to bring a
18  motion for disqualification?
19           MR. SCHONFELD:  I would really prefer to avoid that,
20  your Honor, and it's only something I would discuss with
21  Mr. Reinitz outside of the purview of the Court to see if we
22  can resolve that, but I absolutely do intend to take his
23  deposition in this action, because there are specific
24  allegations in the complaint relating to discussions that he
25  had with my client's prior counsel and that relates to the

1    allegations of breach and so forth, so he is definitely going
2    to be -- whether we move to disqualify or not, you know, and I
3    don't know if this is the appropriate venue yet, assurances
4    from counsel that he will appear for a deposition, but I will
5    say on the record that it is our intention to call him, and I
6    think that his deposition would be necessary and appropriate.
7             THE COURT:  All right.  Why don't we do this, since I
8    think it is, at the very least, premature for the Court to have
9    any basis to weigh in, but what I think would be useful would
10   be to set a schedule by which you discuss the issue, see if you
11   can come to some sort of mutual agreement as to how to proceed,
12   and, in the absence of that, a date by which the defendant
13   would bring any available motion for disqualification.
14             Mr. Schonfeld, what do you think is an appropriate
15   time frame for that?
16             MR. SCHONFELD:  I would ask for, I suppose, two weeks,
17   if I can work out something with Mr. Reinitz on this.  In the
18   event that we can't, another 30 days from then to bring a
19   motion, if that's acceptable to the Court.
20             THE COURT:  So basically six weeks from now, if you
21   are going to bring a motion of disqualification, it would be
22   brought by then.
23             Mr. Reinitz, any objection to that time frame?
24             MR. REINITZ:  No objection, your Honor.
25             THE COURT:  All right.  Let's do that.  I encourage

K7o1gatc

1  you to talk through it and see what you can work out, what is
2  your understanding in the background of applicable law on the
3  question of an attorney witness and recognizing, as Mr. Reinitz
4  indicated, the possibility of abuse and therefore the need for
5  substantiation of the need to call an attorney in a case which
6  would lead to disqualification.  So six weeks from now is the
7  time frame by which the defense must bring any available
8  motions for disqualification if it hasn't been worked out in
9  some way between the parties between now and then.
10           Otherwise I'll put you on the schedule for the case
11  that you propose.
12           I'll give you my standard admonition, which is to
13  please do what you need to do sooner rather than later.  If
14  there are any disputes during the course of discovery, try to
15  work them out.  If you can't, come to me pursuant to my
16  individual rules and either I or the magistrate judge will give
17  you quick relief to keep the case moving forward.  Barring any
18  exceptional circumstances, the schedule I've put you on today
19  will be the schedule that controls this case.
20           I didn't address the flag by defense counsel regarding
21  the deposition of Mr. Teman.  Mr. Schonfeld, do you have any
22  application with respect to that?
23           MR. SCHONFELD:  I don't have an application, your
24  Honor.  I don't know if Mr. Reinitz can make an assurance,
25  given his sentencing has not yet occurred, but I do want to

1   make sure that Mr. Teman is going to be available for
2   deposition in accordance with the Court's scheduling order once
3   it's entered, whether that's going to be, you know -- I don't
4   know if he'll be incarcerated at that point.  I don't know.  We
5   don't know.  So I just want to know, before we make the
6   schedule, and I'm not sure that anyone's in a position to
7   ensure that plaintiff will be available to be deposed.  You
8   know, as I indicated, I'm certainly flexible for it to be in
9   person if need be.  So it's an open question on my end, and I
10  don't know if we can have the answer to that yet.
11              THE COURT:  Mr. Reinitz, anything to note on that at
12  this point or just a "wait and see," from your perspective?
13              MR. REINITZ:  The latter, your Honor.  Clearly I'm not
14  in a position to make any specific representations regarding,
15  you know, Mr. Teman's schedule and the like, other than to note
16  that it's not yet for a few months and, you know, short of
17  anything outside of my control, including that, we have no
18  current objections to any deposition of Mr. Teman and the
19  context in which Mr. Schonfeld would like to conduct it.
20              THE COURT:  All right.  Well, I encourage you to
21  confer on that as well as you're conferring on the question of
22  deposition of Mr. Reinitz, considering all available options,
23  including whether this should be a deposition that should be
24  front-loaded to ensure that you have it or other potential
25  arrangements.  And you'll let me know by letter if there's

1  anything I can do to be of assistance with respect to that.
2          I gather from your letter that the parties don't
3  believe there's anything at this stage that the Court can do to
4  be of assistance regarding settlement.  Mr. Reinitz?
5          MR. REINITZ:  Currently that's our position, yes, your
6  Honor.
7          THE COURT:  Mr. Schonfeld?
8          MR. SCHONFELD:  Yes, that's our position as well, your
9  Honor.
10         THE COURT:  All right.  Well, I do like to keep
11 inquiring on this, so what I'll do is I'll set a date three
12 months from now, which I'll include on the final scheduling
13 order I docket.  That just requires you to put in a joint
14 letter at that point indicating whether it would be useful to
15 have a settlement conference in front of the magistrate judge
16 or referral to the mediation program.  And that's just my way
17 of keeping that as part of the conversation going forward.  If
18 the answer is you're not ready for that, then you're not, but
19 it gives you a chance to discuss with your client as discovery
20 gets under way.
21         All right.  With that, Mr. Reinitz, is there anything
22 else I can address at this time?
23         MR. REINITZ:  Thank you, your Honor.  There is just
24 one other issue that, you know, sort of sticks out in my mind.
25 I note that the Court gave us an option to defer -- or, I'm

1    sorry -- just to waive the conference.  I generally would be
2    inclined to do so, and I appreciate that.  The reason I did ask
3    for the conference today specifically was with respect to, you
4    know, just a few events that transpired since we brought
5    this -- or issued the action in state court, as it were, last
6    September.
7              As I set out in the letter, and not to rehash sort of
8    some of the chronology here, but essentially the parties,
9    plaintiff and the defendants, have, you know, sort of been
10   doing business for some period of time -- year, two years.
11   Obviously things were good for a while.  There were discussions
12   and negotiation of an investment.  There was, you know, later
13   on, more recently, or later on in 2019, as Mr. Schonfeld noted,
14   Mr. Teman was -- that's plaintiff's CEO -- was indicted for
15   bank fraud charges in this district relating to other
16   accusations brought by other customers; nothing to do with the
17   current defendants.  The issue of, again, specifically those
18   criminal charges was something that Mr. Teman discussed
19   directly with the defendant.  They actually negotiated --
20   that's where I'm going with this -- the agreement that's at
21   issue here was negotiated in that context specifically given
22   that the backdrop of Mr. Teman's fighting a criminal case in
23   federal court was not something that was, you know, helping his
24   business.  The defendants were at the time a customer of his.
25   They negotiated the current, you know, agreement that we're now

K7o1gatc

1   in the position to be litigating.  And with that backdrop, the
2   defendants were essentially sort of being given a significant
3   discount in exchange for, you know, obviously an agreement that
4   would help Mr. Teman, would help GateGuard -- that's the
5   plaintiff's business -- at the time.
6             Fast forward to later in 2019.  The payment under that
7   agreement came due.  That's what precipitated this case.
8   Defendants weren't willing to make the payments that they were
9   required to and so we brought this suit shortly thereafter in
10  state court.  The issue, and sort of the real concern are, deep
11  concern of my client, obviously given his position of sort of
12  being away at sentencing, but my concern as well going forward
13  in this case, is that we were informed -- I should say
14  Mr. Teman was informed through the U.S. Attorney's Office that
15  the defendants in this case -- at least one of them, Abi
16  Goldenberg, several weeks after we initiated the suit in state
17  court, Mr. Goldenberg contacted law enforcement -- I'm not sure
18  if that's NYPD or what -- directly, the Southern District, in
19  attempt to raise, as we understand it, further criminal
20  accusations against Mr. Teman.  My understanding from Mr. Teman
21  is that no charges were ever brought.  I'm not sure if anyone,
22  the U.S. Attorney, NYPD, or anyone involved in those
23  accusations found anything credible, but I can certainly tell
24  you, from what I know from my client, there was nothing that
25  was acted upon.  And so my client's concern, very deep concern,

1     and my concern as well, is that there may be further attempts
2     by the defendants to use the threat of criminal charges, and we
3     believe that initial contact with U.S. Attorney's Office after
4     we brought this suit was an attempt to intimidate and to sort
5     of leverage that against our claim in this civil action, the
6     beginning and end of which, as far as we're concerned, is a
7     simple matter.
8              And I'm also concerned that, as I understand it,
9     again, from disclosures that my client received from the
10    Southern District, there were other disclosures he didn't
11    receive, timely receive during this case, but one of the
12    disclosures he received was I believe along the lines of one of
13    the counsel -- I'm not sure if that's Mr. Schonfeld or
14    Ms. Moyal -- were also involved in lodging those criminal
15    accusations.  And my concern with respect to counsel is, my
16    understanding is that the New York Rules of Professional
17    Responsibility prevent counsel from lodging, threatening
18    criminal charges or complaints solely to obtain advantage in a
19    civil matter, which, again, as far as we're concerned, that's
20    the beginning and end of it.
21             I just wanted to put that issue out there for the
22    Court.  Again, I'm obviously only interested in litigating this
23    case, and as far as I'm concerned, only the beginning and end
24    of this case is a civil matter, but, you know, there's no
25    secret of the fact that Mr. Teman obviously has criminal

1  charges and obviously is continuing to deal with that issue on
2  that front, and I'm concerned that the defendants not further
3  leverage the any sort of criminal threats in the context of
4  this case.
5            THE COURT:  Mr. Schonfeld.
6            MR. SCHONFELD:  Yes, your Honor.
7            So, two points.  First of all, I think the first part
8  of what Mr. Reinitz stated in terms of discussing the
9  background and the history of how it was that these agreements
10 were entered into sort of underscores the need to have his
11 testimony on the record, because none of that is anything I had
12 any knowledge of and none of it is alleged in the complaint.
13 So that's just as an initial matter.
14           With respect to contact with law enforcement, I can
15 tell you that I was contacted by an assistant U.S. attorney
16 from the Southern District of New York, not the other way
17 around.  I have another action in fact in which Mr. Reinitz is
18 counsel on as well involving Mr. Teman, and it's been reported
19 in the media.  The Southern District of New York got wind of
20 that action and called me and asked me about information in
21 that case, which I thought may or may not have been helpful to
22 them in the criminal proceeding.  I don't know if they used my
23 other action in the proceedings or not.  I didn't follow the
24 criminal trial very closely.
25           And insofar as whether or not the Southern District of

K7o1gatc

1   New York or the NYPD reached out to my client or my client
2   reached out to them, I don't have any specific knowledge of
3   that.  I'm not sure what, if any, wrongdoing is being alleged
4   if a client believes that they were being taken advantage of
5   or, you know, attempted to be swindled, so to speak, for them
6   to reach out to law enforcement to lodge a complaint, but
7   again, just -- and to my knowledge -- and Ms. Moyal can correct
8   me if I'm wrong -- I don't believe she had any contact with law
9   enforcement.  I did, because, as I said, they called me.  I
10  gave them the information that I had with respect to the other
11  matter.  I don't believe I was yet representing Goldmont at the
12  time that they reached out to me, but I'm not a hundred percent
13  sure.  I provided them the information, and they did with it
14  whatever they may or may not have done.
15          So to the extent that there's a suggestion of any
16  wrongdoing or attempt to threaten, I'm not sure where that
17  comes from or what the basis of that is, and I suppose that
18  during the course of discovery, we can certainly go through all
19  of these areas of attempts by parties to blackmail and threaten
20  and pressure each other, which I think will be illuminating.
21  But I can certainly represent to the Court that I did not
22  myself reach out to law enforcement and I did not use that as a
23  tool of leverage in this case or any other companion -- not
24  companion, but the other action where I'm representing the
25  parties in litigation with GateGuard.  And it certainly has no

1    bearing on any ability to defend this matter.

2    THE COURT: All right. Look, here's what I'm going to
3    say. I don't know what's happened up to this point, but I'll
4    make clear what my expectations are going forward. I'm sure
5    counsel for both sides will agree with me. Everyone is going
6    to be cautious about their ethical obligations. Obviously
7    there are complications here of potential involvement of
8    lawyers and potential knowledge of parties as to legal issues
9    involving the other. Everyone will proceed cautiously, fully
10   aware of their ethical obligations and the rules of
11   professional responsibility going forward. If either side has
12   a good faith basis to believe that there is a violation of the
13   ethical rules, they should provide a detailed factual account
14   of any such accusation in a letter, and I'll deal with it
15   appropriately or refer it to the grievance committee of the
16   Southern District as appropriate, or other authorities. So I'm
17   sure we're all in agreement as to how we'll proceed from here,
18   and you'll let me know with specificity if there are issues
19   that the Court needs to get to the bottom of and address.

20   Do you agree with that statement of how we'll conduct
21   ourselves, Mr. Reinitz?

22   MR. REINITZ: Yes, your Honor.

23   THE COURT: Mr. Schonfeld?

24   MR. SCHONFELD: Absolutely, your Honor.

25   THE COURT: Very well. I appreciate that.

K7o1gatc

1           With that, Mr. Reinitz, anything else I can address at
2   this time?
3           MR. REINITZ:  Nothing else for today, your Honor.
4           THE COURT:  Mr. Schonfeld?
5           MR. SCHONFELD:  Nothing further, your Honor.
6           THE COURT:  All right.  Thank you, everyone.  Be safe.
7   We are adjourned.
8           ALL COUNSEL:  Thank you.
9                              o0o