# FisherBroyles

**Ariel Reinitz**
*Partner*
FisherBroyles, LLP
445 Park Avenue
Ninth Floor
New York, NY 10022

Ariel.Reinitz@fisherbroyles.com
Direct: 646.494.6909

June 3, 2021

<u>**VIA ECF**</u>

Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl St.
New York, New York 10007

      Re:    *GateGuard, Inc. v. Goldmont Realty Corp., et al.*
              Case No.: 1:20-cv-01609-AJN- GWG

Dear Judge Gorenstein:

      I represent Plaintiff GateGuard, Inc. ("Plaintiff") and write pursuant to Local Civil Rule 37.2 and Section 2.A. of this Court's Individual Practices to request a conference regarding Plaintiff's anticipated motion to compel Defendant Abi Goldenberg ("A. Goldenberg") to produce documents responsive to Plaintiff's discovery requests.

***I. Defendants: "No Responsive Materials Are Being Withheld"***

      Plaintiff's discovery requests to A. Goldenberg (e.g., RFPs 2-3, 5-6) seek, *inter alia*, documents and communications concerning Plaintiff and its founder (Ari Teman) ("Teman"). On April 29, 2021, A. Goldenberg responded by raising various "boilerplate" objections, producing certain documents, and confirming "no responsive materials are being withheld":

> 2. All Documents in your possession concerning GateGuard.
> Defendant Abi objects to this Request as unduly burdensome to respond to as it is not limited in scope and seeks the production of "All Documents" in his possession. Additionally, this Request (as best understood) likely encompasses materials in Plaintiff's possession – which would be equally available to Plaintiff. Despite the above objections, *no responsive materials are being withheld on the basis of such objections*. Without waiving the foregoing objections, responsive documents are annexed hereto as Exhibit A.

A. Goldenberg's Supplemental Responses to Plaintiff's RFP 2 (emphasis added).

      In subsequent correspondence, Defendants' counsel further represented that "Defendants

---

**Fisher Broyles**

June 3, 2021 | Page 2 of 6

are not withholding any responsive materials."

### II. Defendants' Production Reflects Responsive Documents <u>Are</u> Being Withheld

Review of A. Goldenberg's document production reveals he withheld several responsive documents including:

1. His communications with non-party Samuel Taub ("Taub") concerning Plaintiff or Teman. *See* enclosed <u>Exhibit A</u> at 1 (correspondence identifying responsive – but unproduced – communications between A. Goldenberg and Taub).

2. A. Goldenberg's communications with non-party Jacob Litchfield ("Litchfield") concerning Plaintiff or Teman. *See* <u>Ex. A</u> at 1-2 (identifying responsive communications with Litchfield that A. Goldenberg failed to produce).

3. A. Goldenberg's communications concerning a "suicide note" authored by Teman and at issue in this case. *See* <u>Ex. A</u> at 1.

### III. The Withheld Documents are Relevant to the Parties' Claims and Defenses

*A. Background*

Plaintiff provides intercom devices and services for multi-tenant apartment buildings including those owned/managed by Defendants. *See, e.g.*, ECF No. 8 at 1; ECF No. 1 at 22-24.

In early 2019, Defendants informed Teman (Plaintiff's CEO) that they would make a substantial investment into Plaintiff and instructed Plaintiff to undertake specific business activities. Plaintiff did so in reliance on Defendants' representations.

In July 2019, the U.S. Attorney's Office for the Southern District of New York ("USAO SDNY") brought criminal charges against Teman, alleging certain transactions involving other customers of Plaintiff's (*not* Defendants) constituted bank and wire fraud. *See U.S. v. Teman*, No. 19-cr-00696 (PAE) (S.D.N.Y. 2019).[1]

Upon learning of the criminal charges, A. Goldenberg expressed his sympathy for Teman and his desire to support Plaintiff's business. In this context, Plaintiff and Defendants negotiated and entered into an Equipment Purchase Agreement (the "Agreement"). The Agreement was to provide Defendants with intercom devices at a substantial discount and support Plaintiff while its business was vulnerable due to the charges against Teman. *See, e.g.*, ECF No. 8 at 1-2.

After Plaintiff performed under the Agreement, Defendants refused to make the required payment, asserted the Agreement's terms were "irrelevant," and tried to intimidate Plaintiff from enforcing the Agreement (including by threatening to "drag this [dispute] out forever" before paying Plaintiff). *Id*.

Defendants also apparently sought to leverage the Government's criminal prosecution of

---

[1] After USAO SDNY dismissed certain charges, Teman proceeded to trial after which the jury returned a guilty verdict as to the bank and wire fraud charges. Teman is awaiting sentencing while the court considers his post-trial motions.

# Fisher Broyles

June 3, 2021 | Page 3 of 6

Teman to pressure Plaintiff from pursuing claims against Defendants. For example, shortly before Teman's trial, A. Goldenberg communicated with member(s) of the USAO SDNY team prosecuting Teman, as well as the Government's primary witness (Joseph Soleimani). A. Goldenberg appears to have done so in an apparent attempt to lodge additional criminal accusations against Teman and intimidate Plaintiff from pursuing its claims against Defendants. *See, e.g.*, ECF No. 8 at 2; ECF No. 1 at 23.

In their defense, Defendants assert that the Agreement is "unenforceable," that Plaintiff "did not fully perform" and allegedly "breached" the Agreement, that Plaintiff "unilaterally amend[ed]" the Agreement, and that Plaintiff used "intimidation tactics" (including suicide threats) to "extort money" from them. *See, e.g.*, ECF No. 8 at 2-3.

*B. Pretrial Conference: Parties "Can Certainly Go Through" Intimidation Attempts During Discovery*

During the parties' initial pretrial conference with Judge Nathan, Plaintiff raised concerns regarding Defendants' apparent attempts to use criminal threats against Teman as leverage in this (civil) action. *See* ECF No. 23 at 13-16 (describing negotiation of the Agreement in context of Teman's criminal prosecution, Defendants' breach, and A. Goldenberg's apparent attempt to use criminal accusations against Teman as leverage in this case).

In response, Defendants acknowledged that any alleged "extortion" or "intimidation" (whether by Plaintiff or Defendants) would be at issue in discovery: "during the course of discovery, we can certainly go through all of these areas of attempts by parties to blackmail and threaten and pressure each other, which I think will be illuminating." *Id*. at 17.

*C. Discovery to Date*

Discovery has proceeded on these topics, including all matters relating to the Agreement, Defendants' intimidation tactics (to dissuade Plaintiff from pursuing its claims), and intimidation tactics (including suicide threats) Defendants allege Plaintiff employed "in an attempt to extort money from Defendants[.]" ECF No. 8 at 3.

Documents produced by Defendants to date (and in response to the RFPs referenced in Section I, above) include Defendants' correspondence with various third parties concerning provisions of Plaintiff's terms (parts of which are incorporated into the Agreement), and Plaintiff's enforcement of its agreements. *See, e.g.*, Exhibit B (Defendants' Bates Nos. 000036-39) (correspondence from Taub[2] to A. Goldenberg re: Plaintiff's terms and enforcement

---

[2] Taub is the founder of MVI Systems LLC and MVI Industries, LLC (collectively, "MVI"), a direct competitor of Plaintiff. Both Taub and MVI are defendants in ongoing litigation with Plaintiff. *See GateGuard, Inc. v. MVI Systems LLC, et al.* No. 1:19-cv-02472 (S.D.N.Y. Mar. 20, 2019). There, Plaintiff brings claims against Taub for breaching his agreement with Plaintiff, and against Taub and MVI for, *inter alia*, misappropriating Plaintiff's trade secrets and interfering with Plaintiff's customers. In this context, Taub's dealings with A. Goldenberg – including communications regarding terms in Plaintiff's Agreement, Plaintiff's enforcement activities, Teman's criminal prosecution, and Teman's "suicide note" – take on a far more sinister hue.

**Fisher Broyles**

June 3, 2021 | Page 4 of 6

activities, characterizing Plaintiff's online terms as "outrageous" and warning others to "stay far away" from Plaintiff and Teman); Exhibit C (Defendants' Bates Nos. 000130-132) (correspondence between Litchfield and A. Goldenberg, in which Litchfield appears to refer to Teman as a "scam artist," discusses Plaintiff's terms, warns A. Goldenberg to "stay away" from Plaintiff and Teman, and provides A. Goldenberg with Taub's contact information).

Defendants have also produced correspondence with third parties (including Taub and Litchfield) concerning the intimidation tactics referenced in Sections III.A.-B. (above). *See, e.g.*, Exhibit D (Defendants' Bates Nos. 000040-84) (correspondence from Taub to A. Goldenberg re: Teman's criminal charges). Shortly after this correspondence, A. Goldenberg communicated with USAO SDNY in an apparent attempt to lodge additional criminal accusations against Teman. *See also* Exhibit E (Teman's "suicide note," discussing Defendants, this case, Soleimani, Teman's criminal prosecution, and Plaintiff's litigation with Taub and MVI). As noted, Teman's "suicide note" was the subject of A. Goldenberg's correspondence with both Litchfield and Taub. *See* Ex. C at 000132.

Defendants' discovery responses also reflect that A. Goldenberg communicated with central figures in Teman's criminal prosecution regarding both Plaintiff and Teman. This includes Detective Daniel Alessandrino and Joseph Soleimani (USAO SDNY's primary witness in its prosecution of Teman). *See* Exhibit F at 3 (A. Goldenberg's verified interrogatory responses); Ex. D at 000047-51 (criminal complaint against Teman, verified by Alessandrino). *See also* Ex. E at 2 (identifying Soleimani and Alessandrino as the complaining witness and arresting officer, respectively, in Teman's criminal prosecution).

### IV. Defendants Obstruct Plaintiff's Discovery Efforts

As detailed in Section I (above), Defendants indicated in their discovery responses they were not withholding responsive materials. But Defendants' production reflected that documents *were* withheld. *See* Section II (above). Plaintiff asked Defendants to produce these documents. *See* Ex. A at 12 ¶ 2 (requesting unproduced media files incorporated within correspondence between Litchfield and A. Goldenberg – *see* Ex. C at 000131-132).

After Defendants responded by providing certain images and asserting (apparently incorrectly) they had provided "all media files," Plaintiff *again* demonstrated that Defendants were still withholding specific communications (including voice notes/messages between Goldenberg and Litchfield). *See* Ex. A at 1-2 (identifying responsive audio files apparently in Defendants' possession which Defendants had still not produced). Defendants then avoided Plaintiff's requests to address this deficiency for much of the next two weeks.

### V. The 'Meet and Confer'

On May 28, 2021 at 1:00 PM, I conferred by phone with Simcha Schonfeld, Esq. and Shira Goldman Moyal, Esq. (Defendants' counsel) for approximately 30 minutes regarding the deficiencies identified in Section II (above).

During the conference, I asked Defendants to produce the withheld documents because they were relevant to the parties' claims and defenses. I noted, for example, Defendants'

# Fisher Broyles

June 3, 2021 | Page 5 of 6

assertion that the Agreement is "unenforceable," and that their communications regarding Plaintiff, the Agreement, Defendants' breach of the Agreement, and the referenced intimidation tactics, were all at issue in this case. As an example, I noted A. Goldenberg's correspondence with Taub concerning Plaintiff's terms and its enforcement of them (Ex. B).

Mr. Schonfeld asserted that the Documents were irrelevant to this case. He suggested that the "four corners" of the Agreement were relevant, but Defendants' communications regarding the Agreement, the parties' intimidation tactics, and other issues were not.

I noted that discovery was warranted regarding Defendants' defenses, including those referenced in Section III.A. (above) (e.g., that the Agreement is "unenforceable," "threats" by Teman, or concerns about Plaintiff's intercoms). I added that Plaintiff was *not* seeking irrelevant communications, speculating, or "fishing." Rather, the existence of the documents sought and their relevance were already confirmed by other documents produced by Defendants.

Mr. Schonfeld then inquired regarding Teman's "suicide note." I explained that the "suicide note" itself (Ex. E) directly addressed the claims and defenses in this case, and Defendants' communications regarding it were therefore discoverable. I added that bad faith conduct by both parties (including "intimidation" attempts by Plaintiff and Defendants) was already at issue, and Defendants' communications concerning such conduct were discoverable (and would be relevant for many reasons, including damages).

Mr. Schonfeld reiterated his position that such documents were "irrelevant" and bemoaned that Defendants had (in his view) already "produced too much." He also indicated Defendants would not produce the requested documents without a Court order.

At that point, I asserted – and Mr. Schonfeld agreed – that the parties were at an impasse regarding production of the documents identified in Section II (above). I conveyed to Mr. Schonfeld that Plaintiff would therefore request a conference with the Court.

## VI. The Withheld Documents are Responsive and Relevant to the Claims and Defenses

"Fed. R. Civ. P. 26(b)(1) permits parties to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…whether or not admissible in evidence. Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394 (AJN) (BCM), 2016 U.S. Dist. LEXIS 120131, at *21-22 (S.D.N.Y. Aug. 31, 2016) (quotations and citations omitted). "Thus, the Rule 26(b)(1) standard presents a 'relatively low threshold' for a party to show that the material sought is relevant to any claim or defense in the litigation." *Id.* (quoting *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014)).

As outlined above, the documents sought relate to the parties' claims and defenses. Defendants have conceded as much, including by acknowledging that the Agreement and the parties' intimidation attempts were "certainly" issues for discovery, and that such facts would be "illuminating." *See* Section III.B. (above) and ECF No. 8 at 2-3 (defenses include the Agreement's "unenforceab[ility]," Plaintiff's use of "intimidation tactics" including suicide

# Fisher Broyles

June 3, 2021 | Page 6 of 6

threats to "extort money" from Defendants, and Plaintiff's alleged failure to perform/breach or "unilateral amendment" to the Agreement). Plaintiff is not speculating or "fishing." Documents already produced establish that the withheld documents exist and underscore their relevance.

Moreover, Defendants previously represented they were not withholding any responsive documents. *See* Section I (above). And the "boilerplate" objections they did raise (e.g., that the requests were "burdensome") fall far short of Rule 34(b)(2)(B)'s requirement to "state with *specificity* the grounds for objecting to the request, *including the reasons*." (emphasis added).

"[G]eneral and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Fort Worth Emples. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 102-03 (S.D.N.Y. 2013) (quoting *Melendez v. Greiner*, No. 01 Civ. 7888, 2003 U.S. Dist. LEXIS 19084, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003)). "Rather, [a] party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . submitting affidavits or offering evidence revealing the nature of the burden." *Id.* (quoting *Vidal v. Metro-North Commuter Railroad Co.*, No. 3:12 CV 248, 2013 U.S. Dist. LEXIS 44430, 2013 WL 1310504, at *1 (D. Conn. March 28, 2013)) (quotations and citations omitted).

As also outlined in Section IV (above), Plaintiff requested production of these documents several times. Defendants first responded by producing some documents and quietly continuing to withhold others. After Plaintiff demanded production of all responsive documents, Defendants avoided substantively engaging Plaintiff for an extended period, and only then – *for the first time* – did Defendants suggest the requested documents were "irrelevant."

This gamesmanship should not be rewarded. Defendants did not meaningfully object to the discovery requests at issue. They represented that "no responsive materials are being withheld." They did not invoke "relevance" as a basis for withholding documents. And they appear to have attempted to misdirect Plaintiff by producing some documents while continuing to withhold others. Defendants' belated attempt to invoke "relevance" as a basis for withholding responsive documents (raised *for the first time* during the 'meet and confer') is unavailing for the reasons described above. In any event, this argument should not be credited in view of Defendants' conduct.

### *VII. Conclusion*

For the foregoing reasons, Plaintiff requests a pre-motion conference with the Court concerning Plaintiff's forthcoming motion to compel Defendants' production of the documents identified in Section II (above) and Ex. A at 1-2.

Respectfully submitted,
By: /s/ Ariel Reinitz
Ariel Reinitz

cc:      Counsel of Record (via ECF)