```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GATEGUARD, INC.,                                    :
                    Plaintiff,                      :    OPINION AND ORDER
        -v.-                                        :
                                                         20 Civ. 1609 (AJN) (GWG)
ABI GOLDENBERG et al.,                              :
                    Defendants.                     :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff GateGuard, Inc. ("GateGuard") brings this action alleging breach of contract by Goldmont Realty Corp. ("Goldmont") and fraud by two of Goldmont's executives, Abi Goldenberg and Leon Goldenberg. See Verified First Amended Complaint, dated February 1, 2020, annexed as Ex. C to Notice of Removal, filed February 24, 2020 (Docket # 1) ("FAC"), at 5-6. Before the Court is defendants' motion to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA").[1] For the following reasons, defendants' motion is granted as to the contract claim and denied as to the fraud claims.[2]

---

[1] See Motion to Compel Arbitration, filed Oct. 28, 2021 (Docket # 69) ("Def. Mot."); Memorandum of Law in Support of Motion to Compel Arbitration, annexed as Ex. 13 to Def. Mot. ("Def. Mem."); GateGuard's Memorandum of Law in Opposition to Motion to Compel Arbitration, filed Nov. 15, 2021 (Docket # 76) ("Pl. Opp."); Declaration of Ariel Reinitz, dated Nov. 15, 2021, annexed to Pl. Opp. ("Reinitz Decl."); Defendants' Reply Memorandum in Support of Motion to Compel Arbitration, filed Nov. 22, 2021 (Docket # 81) ("Def. Reply"); GateGuard's Reply Letter, filed Jan. 7, 2022 (Docket # 94).

[2] "District courts in this Circuit regularly have concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases); accord Anderjaska v. Bank of Am., N.A., 523 F. Supp. 3d 456, 459 n.2 (S.D.N.Y. 2021).

I. <u>BACKGROUND</u>

On August 30, 2019, Goldmont executed an Equipment Purchase Agreement with GateGuard, which provided that GateGuard would provide Goldmont with 41 intercom devices for a purchase price of $369,000. <u>See</u> GateGuard Equipment Purchase Agreement, annexed as Ex. C to Def. Mot. ("Purchase Agreement"), at *2. The parties dispute whether Goldmont breached the purchase agreement. Goldmont maintains that it repudiated the agreement prior to performance, <u>see</u> Def. Mem. at 3, while GateGuard contends that it delivered the intercom devices and Goldmont refused to pay for them, <u>see</u> Pl. Opp. at 3. The Purchase Agreement bound the parties to additional terms regarding dispute resolution, which were available via a website. Purchase Agreement at *14; <u>see</u> Dispute Resolution Terms, annexed as Ex. D to Def. Mot. ("Arbitration Agreement"). Those terms contained the following provision:

> Notwithstanding anything to the contrary contained herein, you and GateGuard agree that any dispute, claim or controversy arising out of or relating to the Terms or the breach, termination, enforcement, interpretation or validity thereof, or to the use of the Site will be settled by binding arbitration, except that GateGuard alone retains the right to seek injunctive or other equitable relief in a court of competent jurisdiction to prevent the actual or threatened infringement, misappropriation or violation of a [sic] its copyrights, trademarks, trade secrets, patents, or other Intellectual Property rights.

Arbitration Agreement at 1. The arbitration agreement provides that the "arbitration will be administered by the American Arbitration Association ('AAA') in accordance with the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes." <u>Id.</u>

On December 4, 2019, GateGuard filed an action for breach of contract against Goldmont in New York State Supreme Court. <u>See</u> Verified Complaint, dated Dec. 4, 2019, annexed as Ex. A to Notice of Removal. On February 1, 2020, GateGuard filed an amended complaint that added a claim for fraud against Abi Goldenberg, a Goldmont executive, and Leon Goldenberg,

Goldmont's CEO. See FAC at 1, 6. On February 24, 2020, defendants removed the case to federal court, invoking diversity jurisdiction. See Notice of Removal.

Since being removed to this Court, the parties have engaged in discovery. Each side has served interrogatories and document requests on the other side. See, e.g., Defendants' Request for Production of Documents, filed Aug. 24, 2020 (Docket # 17) ("Def. RFP"); Defendants' First Set of Interrogatories, filed Sept. 24, 2020 (Docket # 18) ("Def. Interrogatories"); Letter from Ariel Reinitz, filed Apr. 13, 2021 (Docket # 39) (detailing interrogatories and document requests served on defendants by GateGuard). The parties have sought this Court's assistance in resolving several discovery disputes. See Letter from Ariel Reinitz, filed Apr. 13, 2021 (Docket # 39); Letter from Simcha Schonfeld, filed June 11, 2021 (Docket # 58); Letter from Ariel Reinitz, filed Nov. 11, 2021 (Docket # 75); Letter from Ariel Reinitz, filed Dec. 2, 2021 (Docket # 84); Letter from Ariel Reinitz, filed Dec. 31, 2021 (Docket # 91). Neither side has filed any motions to dismiss or motions for judgment on the pleadings in this Court, and no trial date has been set.[3]

## II. LEGAL STANDARD

Section 2 of the FAA provides in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[3] The Notice of Removal alleges that on January 12, 2020, defendants filed a motion to dismiss the complaint for failure to state a claim against defendant Leon Goldenberg in state court. See Notice of Removal ¶ 4. There is no suggestion that the motion was ever ruled on. It was never re-presented to this Court.

9 U.S.C. § 2. Section 4 of the FAA permits a party to obtain from a federal district court "an order directing that [an] arbitration proceed in the manner provided for" in an arbitration agreement. 9 U.S.C. § 4. As the Second Circuit has held, the FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." Vera v. Saks & Co., 335 F.3d 109, 116 (2d Cir. 2003) (quotation omitted). The FAA thus reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ross v. Am. Express Co., 547 F.3d 137, 142 (2d Cir. 2008) (quotation omitted).

The Second Circuit has held that a court considering a motion to compel arbitration of a dispute first must

> determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004) (quoting Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998)).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

III. DISCUSSION

    A. Waiver

Before addressing the issue of the agreement to arbitrate and its scope, we address GateGuard's argument that defendants' motion to compel arbitration should be denied because

defendants waived any right to compel arbitration by participating in this litigation for "nearly two years." Pl. Opp. at 1.

A court must look to three factors to determine whether a party has waived its right to compel arbitration by litigation conduct: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010) (punctuation omitted). "Generally, waiver is more likely to be found the longer the litigation goes on, the more a party avails itself of the opportunity to litigate, and the more that party's litigation results in prejudice to the opposing party." Thyssen, Inc. v. Calypso Shipping Corp., S.A., 310 F.3d 102, 105 (2d Cir. 2002) (citing Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995)). However, "the key to a waiver analysis is prejudice. Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Merrill Lynch, 626 F.3d at 159 (punctuation omitted).

"[W]aiver of arbitration is not to be lightly inferred," and "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." Leadertex, 67 F.3d at 25 (punctuation omitted); see also Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case." Merrill Lynch, 626 F.3d at 159.

We examine the three factors next.

1. Time Elapsed

GateGuard commenced this action in New York state court on December 4, 2019. See Notice of Removal ¶ 1. GateGuard filed an amended complaint on February 1, 2020, id. ¶ 8, and defendants filed a notice of removal with this Court on February 24, 2020, see generally id. The instant motion to compel arbitration was filed on October 28, 2021. See Def. Mot. Accordingly, the matter was litigated for over 22 months before the instant motion was filed. This represents a significant length of time, and much shorter delays have been held to support a finding of waiver. See Merrill Lynch, 626 F.3d at 159-60 (characterizing an 11 month delay as a "significant amount of time" that, in combination with other factors, constituted waiver); Leadertex, 67 F.3d at 26 (7 month delay supported waiver); Galvstar Holdings, LLC v. Harvard Steel Sales, LLC, 2018 WL 6618389, at *3 (S.D.N.Y. Dec. 18, 2018) (finding waiver after defendant offered "no reasonable explanation as to why it waited" two years to seek arbitration).[4] The first factor therefore favors GateGuard.

2. The Amount of Litigation to Date

In assessing "the amount of litigation to date, including motion practice and discovery," Merrill Lynch, 626 F.3d at 159, courts look to whether the party seeking arbitration has "evidenced a preference for litigation that supports a finding of waiver." PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 109 (2d Cir. 1997).

---

[4] We reject defendants' argument that the time elapsed should be measured from January 2021, when GateGuard produced a copy of the Purchase Agreement. See Def. Reply at 2-3. Defendants were on notice of the arbitration agreement given that they signed the Purchase Agreement and, if it was not available to them at the time suit was filed, could have acted to obtain it expeditiously.

Here, defendants have actively litigated this case. Defendants did not invoke the arbitration clause when GateGuard first initiated this action in state court, instead opting to remove the matter to federal court. See Notice of Removal. While suggestive of a preference for litigation, case law holds that removal does not by itself establish waiver. See Anderjaska, 523 F. Supp. 3d at 463 ("courts commonly have refused to find a waiver merely because the motion to compel arbitration was made after the removal of the case to federal court.") (collecting cases).

Since that time, defendants served GateGuard with a request for production of documents and a set of interrogatories, see Def. RFP; Def. Interrogatories, and were provided with at least some responses, see Reinitz Decl. ¶ 12. Defendants filed a letter motion to quash a GateGuard subpoena pursuant to Fed. R. Civ. P. 17(c)(2), see Letter from Simcha Schonfeld, filed June 1, 2021 (Docket # 47), which defendants later withdrew without explanation, see Letter from Shira Goldman Moyal, filed June 3, 2021 (Docket # 51). On June 16, 2021, the Court held a conference to resolve discovery disputes between the parties, but was forced to adjourn when counsel for defendants was unprepared. See Order of June 16, 2021 (Docket # 61). Although there have been discovery disputes since that time, they were all initiated by GateGuard seeking discovery from the defendants, not by the defendants themselves. See Letter from Ariel Reinitz, filed November 11, 2021 (Docket # 75); Letter from Ariel Reinitz, filed November 16, 2021 (Docket # 77); Letter from Ariel Reinitz, filed December 2, 2021 (Docket # 84).

Given the two years of litigation activity preceding the instant motion, the second factor also favors GateGuard. Nonetheless, it does not appear that GateGuard has been burdened with significant discovery and thus it does not weigh strongly.

3. <u>Prejudice</u>

In the end, the first two factors cannot by themselves determine the outcome of the waiver question inasmuch as "delay in seeking arbitration does not create a waiver unless it prejudices the opposing party" and the litigation activity has not been significant. <u>Leadertex</u>, 67 F.3d at 25. In support of its prejudice argument, GateGuard states that "[t]o date, Plaintiff has expended many tens of hours collecting, reviewing, organizing, and compiling hundreds of emails, documents, electronic communications, media files, and other information, in response to defendants' discovery requests in this case. Plaintiff has produced these documents across seven rounds of document production." Reinitz Decl. ¶ 12; Pl. Opp. at 4, 9. GateGuard also points to the fact that, at the time it filed its brief, defendants had not complied with certain deposition and document requests. Pl. Opp. at 9, 10. The record is clear, however, that since that time at least one deposition (if not all depositions) of defendants have taken place and no application has been made to the Court regarding any deficiency in defendants' document production. <u>See</u>, <u>e.g.</u>, Order of November 17, 2021 (Docket # 78) ("Nov. 17 Order"); Order of December 3, 2021 (Docket # 87); Letter from Jacob Schindelheim, filed January 5, 2022 (Docket # 92), at 1 (detailing several depositions taken by GateGuard). While GateGuard also cites prejudice from expenses it incurred because of defendants' improper conduct, Pl. Opp. at 10 n.1, plaintiff has already been compensated for any such expenses. <u>See</u> Nov. 17 Order at 1. As for its own efforts at producing documents, we do not view the expenditure of "tens of hours" as particularly onerous. In any event, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." <u>PPG Industries</u>, 128 F.3d at 107.

The Second Circuit has recognized several bases for finding prejudice that may compel a finding of waiver. Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993). Relevant to plaintiff's claim of waiver are two types of prejudice: (a) "when a party seeking to compel arbitration engages in discovery procedures not available in arbitration" or (b) when the party "delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." Id. (citations omitted).

        a. Discovery Unavailable in Arbitration

GateGuard repeatedly states that the discovery defendants obtained would not have been available in arbitration. See Pl. Opp. at 1, 8, 9, 10. But GateGuard provides no citation that actually supports this proposition. Moreover, the AAA's publicly available Commercial Arbitration Rules reflects that an AAA arbitrator has discretion to order document discovery. See Commercial Arbitration Rules and Mediation Procedures, available at http://adr.org/sites/default/files/CommercialRules_Web-Final.pdf, Rule 22(b). The same is true for depositions. See id. Rule L-3(f) (allowing depositions in "exceptional" cases); see also Brownstone Inv. Group, LLC v. Levey, 514 F. Supp. 2d 536, 546 n.1 (S.D.N.Y. 2007) ("more and more, arbitration proceedings are being procedurally transformed into mirror images of litigation"). In any event, it was plaintiff's burden to demonstrate that, had this case gone to arbitration, it would not have resulted in defendants obtaining the discovery they have obtained. GateGuard has failed to meet its burden on this point and thus has not shown prejudice based on being required to engage in discovery procedures not available in arbitration. See Brownstone, 514 F. Supp. 2d at 545 (no prejudice where defendants had "not demonstrated what specific information [plaintiff] has obtained through litigation that he would not be able to acquire through an arbitration proceeding"); accord PPG Indus., 128 F.3d at 109 (noting that the party

opposing arbitration had "not specified . . . what portion of the . . . information [obtained by the other party through litigation] ultimately would be unavailable in the arbitral forum"); Rush v. Oppenheimer & Co., 779 F.2d 885, 888-89 (2d Cir. 1985) (no prejudice where party opposing arbitration failed to identify specific discovery that was not relevant to non-arbitrable claims).

This is not to deny that in some instances, a party may demonstrate that discovery was obtained that was not available in arbitration, as reflected in scattered cases cited in plaintiff's brief. See Pl. Opp. at 7-12. For example, in Doe v. Trump Corp., the court found that the defendant issued "numerous non-party subpoenas that would not have been available in arbitration." 453 F. Supp. 3d 634, 645 (S.D.N.Y. 2020), aff'd, 6 F.4th 400 (2d Cir. 2021). But plaintiff has made no such showing here. Moreover, in virtually all of the cases cited by plaintiff that featured this circumstance, there was additional prejudice shown. See, e.g., Tech. in P'ship, Inc. v. Rudin, 538 F. App'x 38, 39 (2d Cir. 2013) (court had adjudicated a motion to dismiss); Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp., 376 F. App'x 70, 72-73 (2d Cir. 2010) (party "invoked arbitration in the face of adverse rulings on substantive motions" including "several motions for summary judgment" in a related state court action, giving the movant a "tactical advantage with respect to issues it seeks to arbitrate"); Arbercheski v. Oracle Corp., 339 F. App'x 5, 5-6 (2d Cir. 2009) (court had adjudicated a motion to dismiss, which resulted in dismissal of several of the plaintiff's claims).

It is thus not surprising that numerous cases have found that engaging in discovery, including depositions, is not sufficient to establish prejudice — particularly where, as here, the party resisting arbitration has itself obtained discovery. See, e.g., Salerno v. Aetna Life Ins. Co., 101 F.3d 109, 109 (2d Cir. 1996) (no prejudice where parties had engaged in document discovery and each had obtained depositions, in part because the plaintiff "likely benefitted"

from the discovery); see McClain v. Rochdale Village, 2021 WL 3023087, at *5 (E.D.N.Y. July 16, 2021) (no prejudice where parties had "nearly completed fact discovery with only one deposition remaining"); Mahmoud Shaban & Sons Co. v. Mediterranean Shipping Co., S.A., 2013 WL 5303761 (S.D.N.Y. Sept. 20, 2013) (no prejudice although seven depositions were taken); Cole v. John Wiley & Sons, Inc., 2012 WL 3133520, at *9, 18 (S.D.N.Y. Aug. 1, 2012) (no prejudice although the "central fact witnesses" had been deposed, as this discovery could be used in arbitration); McFadden v. Clarkeson Rsch. Grp., Inc., 2010 WL 2076001, at *6 (E.D.N.Y. May 18, 2010) (no prejudice although movant had obtained a deposition and opposing party had not, as movant agreed to appear for a deposition regardless of forum, eliminating potential for prejudice). "If the party asserting waiver of arbitration cannot convincingly demonstrate some unique or material way in which it would be placed at a substantial disadvantage by reason of the discovery taken in litigation — other than delay or expense with nothing more — it is difficult to justify a determination that the opposing party has suffered sufficient prejudice." Brownstone, 514 F. Supp. 2d at 543.

In Leadertex, also cited by GateGuard, the court declined to find prejudice from the movant's receipt of documents in discovery in part because the movant had obtained "no significant information" in discovery. 67 F.3d at 26. We note that GateGuard's own interrogatory responses provided hardly any substantive information. See GateGuard's Responses and Objections to Defendants' Interrogatories, dated July 16, 2021, annexed as Ex. A to Def. Reply. GateGuard provided responses to four interrogatories, two of which were identical responses. See id. at 7-8, 20, 26. Even if this discovery would not have been available in an arbitral forum, GateGuard has failed to "convincingly demonstrate some unique or material

way in which it would be placed at a substantial disadvantage by reason of" the information it has disclosed. Brownstone, 514 F. Supp. 2d at 543.

   b. Unnecessary Expense or Delay

  The second form of prejudice invoked by GateGuard, which has been termed economic prejudice, occurs where "a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). "No bright line defines this second type of prejudice — neither a particular time frame nor dollar amount automatically results in such a finding — but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." Id.

  Here, GateGuard argues that it has been prejudiced because it has had to engage in the discovery process. But, as just noted, GateGuard has not shown that defendants obtained discovery from it that they could not have obtained in arbitration. As for delay, while it is possible that the arbitration process would run its course faster than the process that occurred here, this conclusion rests to some degree on speculation, as plaintiff has provided no evidence on this question. Decisions where waiver has been found as a result of solely economic prejudice are limited in number, and generally involve far greater expense than is present here. In Demsey & Assocs., Inc. v. Steamship Sea Star, 461 F.2d 1009 (2d Cir. 1972), for example, waiver was found by reason of "substantial expense to all concerned" where a party sought arbitration after the matter had already gone to trial on the merits. Id. at 1018. In Cotton, the "unnecessary expense or delay" included the attorneys' fees associated with "several substantive motions, including one for summary judgment." 4 F.3d at 180. In Leadertex, economic

prejudice was found where the events giving rise to the litigation had caused significant business hardship for the plaintiff which was exacerbated by delays in the litigation. See 67 F.3d at 26-27.

Here, there has not been expense on a scale that has been held to constitute prejudice. While this case has been pending for a significant period of time, trial is not imminent, and the parties have not been forced to incur litigating expenses associated with dispositive motions. Although discovery between the parties has been contested, neither party has shown that the scale of the actual production has been inordinate or unreasonable. Case law is clear that "pretrial expense and delay — unfortunately inherent in litigation — without more, do not constitute prejudice sufficient to support a finding of waiver." Id. at 26. The instant case is similar to Rush, in which the Second Circuit held that litigation spanning more than 8 months, including "rather extensive discovery [and] bringing a motion to dismiss," was not sufficient to warrant a finding of prejudice, and fell "well short" of other decisions that found economic prejudice. 779 F.2d at 887-88. In the end, GateGuard has failed to show that it incurred something more than typical pretrial expense.

Additionally, GateGuard has not shown that the 22-month delay in seeking arbitration actually caused GateGuard any prejudice. See, e.g., Leadertex, 67 F.3d at 25 ("[D]elay in seeking arbitration does not create a waiver unless it prejudices the opposing party."); United States ex rel. Preferred Masonry Restoration, Inc. v. Int'l Fid. Ins. Co., 2019 WL 4126473, at *7 (S.D.N.Y. Aug. 30, 2019) (case stayed pending arbitration in part because "Plaintiff has failed to show that it has suffered prejudice as a result of the delay, or will suffer prejudice by proceeding to arbitration."). Courts have regularly found that similar periods of delay in seeking arbitration did not result in prejudice. See Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 122

(2d Cir. 1991) (no waiver although defendant did not raise arbitration after knowing about his rights for three years); McClain, 2021 WL 3023087, at *5 (no waiver despite nearly two year delay and parties' exchange of discovery); McCoy v. Dave & Buster's, Inc., 2018 WL 550637, at *4 n.5 (E.D.N.Y. Jan. 24, 2018) (no waiver despite two year delay); Herko v. Metro. Life Ins. Co., 978 F. Supp. 141, 148 (W.D.N.Y. 1997) (no waiver despite 18-month delay).

Accordingly, the Court concludes that GateGuard has not suffered prejudice as a result of defendants' delay in pursuing arbitration, and therefore defendants have not waived their rights under the arbitration clause.

### B. Whether GateGuard's Claims are Subject to Arbitration

To determine whether GateGuard's claims are subject to arbitration, we undertake the four-part inquiry discussed previously. See JLM Industries, 387 F.3d at 169.

#### 1. Mutual Assent

We first assess whether GateGuard and Goldmont mutually assented to arbitrate GateGuard's claims. See id. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). The arbitration agreement provides that its terms are governed by Delaware law. See Arbitration Agreement at 1 ("The Terms and your use of the Site will be governed by and interpreted in accordance with the laws of the State of Delaware and the United States of America, without regard to its conflict-of-law provisions").

It is unnecessary to review Delaware law regarding contract formation because GateGuard does not contest that the parties agreed to arbitrate at least some claims by virtue of the arbitration clause. See Pl. Opp. at 11-12. It disputes only whether the fraud claim was

included in this agreement.  We address this question under the rubric of the "scope" of the arbitration clause.

        2.  Scope

Determinations of the "scope" of an arbitration clause typically revolve around whether the clause is "narrow" or "broad."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).  We accept that the clause here is "broad" inasmuch as it provides that "any dispute, claim or controversy arising out of or relating to" the contract is to be arbitrated.  Arbitration Agreement at 1.  But even where a clause is broad, there arises a presumption of arbitration as to matters collateral to the contract — such as the fraud claim here — only if the collateral claim "implicates issues of contract construction or the parties' rights and obligations under it."  Louis Dreyfus Negoce S.A., 252 F.3d at 224.

The factual allegations supporting the fraud claim in this matter are thin.  What they do describe, however, has nothing to do with the subject of the contract that contained the arbitration clause: that is, the delivery of intercom devices to Goldmont and the payment for those devices.  Instead, the amended complaint alleges that Ari and Leon Goldenberg told GateGuard's CEO that they would make an investment of at least one million dollars in GateGuard if GateGuard would "undertake specific business activities including hiring staff, contracting for product manufacturing and office space, and promotional activities."  FAC ¶ 21.  GateGuard alleges that the Goldenbergs' representations regarding the investment were "known to be false . . . when made."  Id. ¶ 23.  Unaware of this, GateGuard actually undertook those activities in reliance on the Goldenbergs' promise, thereby "incurring substantial expense."  Id. ¶ 22.

The amended complaint makes no connection between the delivery of goods and the allegations of fraud. The first claim in the complaint thus relates merely to the purchase and sale of equipment (breach of contract). The second claim, alleging fraud, relates not to the purchase and sale of the equipment but to the plan to invest in GateGuard.

Defendants point to various cases suggesting that non-contract claims may be covered by an agreement to arbitrate. Def. Reply at 14. But defendants cite no case where a claim with factual allegations unrelated to the contract claim covered by the arbitration clause was deemed to be arbitrable. See, e.g., S.A. Mineracao Da Trindade-Samitri v. Utah Int'l, Inc., 745 F.2d 190, 195-96 (2d Cir. 1984) (fraudulent inducement claims were arbitrable because they involved transactions covered by an "umbrella" Shareholders' Agreement, which contained an arbitration clause); Promovision Video Display Corp. v. Intech Leasing Corp., 129 A.D.2d 785, 786 (2d Dep't 1987) (no factual allegations identified except those relating to the contract and performance thereunder).[5]

On the issue of the connection between the contract claim and the fraud claim, defendants argue that:

> The fraud claim only arose as a result of the underlying Agreement between the parties where the Defendants first considered investing in Plaintiff's business, after having entered into the Agreement with Plaintiff, and thereafter trying to help Plaintiff obtain additional financing from multiple sources. Surely, there would be no fraud claim but for the Agreement.

---

[5] Defendants argue that the carve-out in the arbitration clause that allows GateGuard to obtain equitable relief somehow impacts the scope of the arbitration clause. Def. Reply at 14. However, we see no connection between this clause and the issue of scope. On a related point, plaintiff suggests that we should rule on defendants' purported motion to "strike" the portion of this clause that allows the plaintiff to opt out of the agreement. Pl. Opp. at 12. We do not read defendants' motion as seeking any such relief from this Court, however, and thus it would be inappropriate to rule on this question as it would amount to an improper advisory opinion.

Def. Reply at 14. But this argument is devoid of any citation to allegations in the complaint or any evidentiary matter. It would require pure speculation to assume that there is a connection between the contract claim and the fraud claim. Even if we might make the inference that the acts of alleged fraud would not have occurred "but for" the parties entering into the contract, there is no "but for" test in determining the scope of an arbitration clause. Rather, the test is whether the allegedly collateral claim "implicates issues of contract construction or the parties' rights and obligations under it." Louis Dreyfus Negoce S.A., 252 F.3d at 224 (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir.1995)). Here, it clearly does not.

Accordingly, while the contract claim comes within the arbitration clause, the fraud claim does not.

### 3. Stay of Fraud Claim

The third prong of the JLM Industries test — "if federal statutory claims are asserted, [the court] must consider whether Congress intended those claims to be nonarbitrable," 387 F.3d at 169 — is inapplicable here, as GateGuard has not alleged any federal statutory claims, see FAC. Thus, the only remaining issue is whether the fraud claim should be stayed or should proceed in this Court while the contract claim is arbitrated.

"The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir. 1987) (quoting Moses H. Cone Mem'l Hosp., 460 U.S. at 20 n.23); see also White v. Cantor Fitzgerald, L.P., 393 F. App'x 804, 808 (2d Cir. 2010) (summary order) ("[T]he district court is not required to stay the litigation of the nonarbitrable claims before it on remand pending the outcome of any arbitrated claims." (collecting cases)).

Judge Woods has aptly summarized the law in this area:

> The Court must balance several factors, in its discretion, in deciding whether to grant a stay of non-arbitrable claims. "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (quotation omitted). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." Id. at 110-11 (quotation omitted); see also Moore v. Interacciones Glob., Inc., No. 94-CV-4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants." (citations omitted)). Similarly, "[b]road stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit." Genesco, 815 F.2d at 856 (citations omitted).
>
> The Court should also consider whether the issues decided in the arbitration are "likely to have preclusive effect over some or all of the claims not subject to arbitration." Katsoris, 237 F. Supp. 3d at 111 (quotation omitted); see also CBF Indústria de Gusa S/A v. AMCI Holdings, Inc., 846 F.3d 35, 55 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration." (citation omitted)). And "a court should bear in mind that if the nonarbitrable claims are stayed pending arbitration of a [claimant's] other claims, then the [claimant] may wait 'months, if not years, before [her] nonarbitrable claims will be heard by a federal court.'" Klein v. ATP Flight Sch., LLP, No. 14-CV-1522 (JFB) (GRB), 2014 WL 3013294, at *11 (E.D.N.Y. July 3, 2014) (quoting Chang v. Lin, 824 F.2d 219, 222 (2d Cir. 1987)).

Morelli v. Alters, 2020 WL 2306445, at *4 (S.D.N.Y. May 8, 2020); accord Chang v. United Healthcare, 2020 WL 1140701, at *5 (S.D.N.Y. Mar. 9, 2020); Katsoris, 237 F. Supp. 3d at 110.

None of these considerations counsel in favor of a stay. The fraud claims have no factual overlap with the contract claim. Thus, there is no suggestion that the proceedings in arbitration would duplicate the proceedings that would remain in this Court. Also, because there is no factual overlap, there is no chance that any issue decided in arbitration would have preclusive effect on the fraud claims. Finally, we exercise our discretion to deny a stay also because of the defendants' lengthy and unnecessary delay in seeking to enforce the arbitration clause. There is thus no reason to delay the adjudication of plaintiff's fraud claim any further.

### C. Whether to Stay the Contract Claim or Compel Arbitration

Defendants ask this Court "for an Order, pursuant to the Federal Arbitration Act, compelling Plaintiff to arbitrate this case before the American Arbitration Association or[] granting a stay of proceedings pending arbitration."  Def. Mot. at 1.  GateGuard has argued that the Court is unable to compel the parties to arbitrate this dispute in Delaware, as "[S]ection 4 of the FAA provides a court with the authority to compel arbitration only within the district in which the petition for an order directing such arbitration is filed."  Pl. Opp. at 13 (quoting Anderjaska, 523 F. Supp. 3d at 463-64).  GateGuard is correct as to the text of the FAA. However, the Court concludes that the arbitration agreement does not require arbitration to be held in Delaware.  The dispute resolution terms provide that the agreement "will be governed by and interpreted in accordance with the laws of the State of Delaware and the United States of America," and that the parties "agree to submit to the personal jurisdiction of a state court located in Delaware, USA or a United States District Court located in Delaware for any actions for which the parties retain the right to seek injunctive or other equitable relief in a court of competent jurisdiction."  Arbitration Agreement at 1.  The agreement requires that the arbitrator "be either a retired judge or an attorney licensed to practice law in the state of Delaware."  Id. at 1-2.  However, the agreement also provides that "[u]nless you and GateGuard otherwise agree, the arbitration will be conducted in the county where GateGuard conducts its business."  Id. at 2. While GateGuard is a registered Delaware corporation, see FAC at 2, GateGuard's First Amended Complaint represented that GateGuard has "a place of business at 5 Penn Plaza #2372, New York, NY 10001," id.  The arbitration agreement therefore provides that the arbitration will take place in New York County.  Accordingly, the FAA's requirement that arbitration "shall be

within the district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4, does not impede this Court's ability to compel arbitration.[7]

IV. CONCLUSION

Defendants' motion to compel arbitration (Docket # 69) as to the contract claim (identified as the "First Cause of Action") against Goldmont is granted. Goldmont and GateGuard are ordered to proceed to arbitration on this claim. The parties are directed to report to the Court within 14 days of the arbitration's conclusion. The litigation of the fraud claim (the "Second Cause of Action"), brought solely against defendants Abi Goldenberg and Leon Goldenberg, will proceed in this court.

SO ORDERED.

Dated: February 15, 2022
New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[7] In light of our ruling compelling arbitration, we need not reach the question of whether GateGuard is judicially estopped from opposing the motion to compel arbitration. See Def. Mem. at 13-14; Def. Reply at 17.