# EXHIBIT A

B"H

# Rabbi Leibel Khazanovich

Judge Paul Engelmayer
Southern District of New York
40 Foley Square
New York, NY 10007

12 Av, 5782
Aug 9, 2022

Dear Judge Engelmayer,

On behalf of the dozens of rabbis and legal experts who have signed the attached letter seeking your immediate resignation, we respectfully request the letter be filed to the docket in *United States v Ari Teman*. We have reviewed publicly filed information in the trial and appellate proceedings involving Mr. Teman, and our considered opinion is that your *ex parte* call providing one party in litigation a material tactical advantage (and your admission that this is a regular practice of yours), the non-disclosure of your interest in Bank of America until after trial and even then in an incomplete and deceptive manner, and your comments about Mr. Teman's faith constitute violations of *Halacha* and should be made public. In addition, we believe your conduct violates the Code of Judicial Conduct and the US Constitution, and should be publicly filed so that Mr. Teman and other parties before you can protect their rights.

Thank you,

*Rabbi Leibel Khazanovich*

Copying:   US Attorney Damian Williams
           AUSA Kedar Bhatia
           AUSA Jacob Guttwillig
           Mr. Ari Teman, Defendant
           Mr. Eden Quainton, Appellate Attorney for Mr. Teman
           *Via Electronic Mail*

B"H<br>
29th of Tamuz, 5782<br>
Yom Kippur Katan Av<br>
Thu, 28 July 2022

Judge Paul Engelmayer
District Judge
Southern District of New York
40 Foley Square
New York, New York

Damian Williams,
United States Attorney
Southern District of New York

**RE: Request for recusal or retirement of Judge Paul Engelmayer (USA v. Teman, 1:19-cr-00696)**

Your Honor,

We write to you as Rabbis and community leaders to express our deep concern over the treatment of Ari Teman, a young man who has been a pillar of the Jewish community and has suffered great hardship for a matter that should never have resulted in criminal prosecution and for which there is no evidence of any criminal intent. We are also deeply concerned with your handling of Mr. Teman's case and we are calling on you to recuse yourself from any further proceedings involving Mr. Teman, against whom you have formed a bias that, sadly, borders on anti-semitism.

**Mr. Teman's strong track record of supporting the Jewish community**

> Ari Teman's Jewish practice and *Ahavat Yisrael,* love for the Jewish people, requires a brief overview. Ari Teman has been an outstanding, exceptional leader and volunteer for the Jewish communities of New York, Miami, and across the United States, Israel, Canada, Australia, and beyond.
>
> As the founder of JCorps International, he worked unpaid for years to build a multi-continent international volunteer organization that drove thousands of young adults to volunteer for the first time. There, besides feeding the hungry, visiting the elderly, comforting the sick, and beautifying their cities, young adults often met their spouses and created beautiful families, many formed friendships, and others changed careers and began a life of service.
>
> Ari has consistently been one of the first to step up to help his local synagogues and Chabad Houses. He is active with Israel organizations such as United Hatzalah, FIDF, Aleh Negev, and more. He doesn't just donate, he volunteers to help create and lead programs and events.

**The legally baseless prosecution theory**

> Legal experts on all sides of the political spectrum -- from Harvard Law School Professor Lawrence Lessig to SCOTUS attorney Ronald Coleman - have concluded that the case against Mr. Teman is "legally baseless," "ridiculous" and his conviction a "grave injustice." Although we know you are familiar with these letters, we are attaching relevant communications to the President of the United States and the US Attorney General that have impressed upon us the need to act in defense of an innocent man.

The accusations against Mr. Teman do not withstand objective scrutiny. In a word, Ari stands accused of enforcing a contract all three clients who testified against him admitted they were aware of. All three clients admit GateGuard's invoices state that products and services are provided under a multi-year, non-cancellable contract, but the clients claim they simply chose to not read the Payment Terms subpage. The government's argument is that because these clients claim they didn't read a subpage, Ari should go to prison for enforcing it, an argument so far-fetched we are shocked the government could proceed, and even convict, on this basis.

Moreover, we are profoundly troubled by evidence that your Honor conducted an *ex parte* call with the Southern District of New York prosecutors to ensure there was "adequate supervision" of the government attorneys on the case—in effect signaling that you were taking sides in the dispute and that the government needed to bring in reinforcements to ensure Teman's conviction.

Your Honor's action has, in candor, shocked our consciences. The partiality on display in the ex parte call is also reflected in your insistence that it was the <u>*defense's*</u> burden to place the 2018 Payment Terms in evidence, even though it was the <u>*Government*</u>'s affirmative burden to establish that allegedly defrauded clients had not assented to the Payment Terms, which of course the Government should have been required to introduce into evidence as part of their own prima facie case. Without this crucial evidence, the Government's case should have been dismissed. Instead, you concluded that it was the Defendant's job to prove his innocence and not the Government's job to prove his guilt!

**Judge Engelmayer's Abuse of Judaism & False Testimony to Convict & Sentence Teman**

However, what we find inexcusable, and what requires your recusal from the Teman case, is the anti-Jewish – even, alas, anti-semitic – tenor of your comments towards Mr. Teman. You claimed that drafting accounts on the Friday before Passover is a sign of intent to defraud, when the first two days of Passover that year fell on Saturday and Sunday, days which banks are officially closed. Such a claim constitutes an abuse of the Jewish faith for dishonest, misleading purposes. The Government and Court knew full well that Mr. Soleimani, for example, had WhatsApp messaged with Mr. Teman during the Intermediary Days ("Chol Hamoed") of Passover the year prior, and they knew full well that Judaism allows work, travel, and use of electronics on the Intermediary Days, and that Mr. Soleimani would be free to address any billing issues on Monday following the Passover weekend when banks were closed.

You then repeatedly distorted the record and even invented statements by Mr. Teman that he had intentionally chosen to use the Passover weekend to defraud his clients – statements for which there is not a shred of evidence in the record. It appears you were turned against Mr. Teman and then were so blinded with animus against him that you literally saw evidence that did not exist. Such conduct would be inexcusable in any judge, but is outrageous and intolerable in a Jew.

We are aware of a suicide note that the Government provided to you in which Mr. Teman makes irrational and delusional statements relating to Judaism. You knew perfectly well that Mr. Teman was suffering under grave physical and psychiatric distress when he wrote the suicide letter, due to a then-undiagnosed spinal condition, which was highly prejudicial and should only have been considered for the narrow purpose of determining whether Mr. Teman was fit to stand trial. Even a cursory review of the letter – completely at odds with Mr. Teman's character and his lifelong devotion to Judaism – should have been enough to convince you that Mr. Teman was not of sound mind and could not fairly be tried.

Instead, you appear to have taken the letter at face value, and, without introducing it into evidence or informing the jury that you were in possession of highly damaging evidence that you chose to keep to yourself, used the letter to fuel your animus against Mr. Teman and paint him to the attorneys, the jury, his family and friends as a religious bigot — allegedly because of his drafting of checks on the Friday before Passover. When the Government argued to the jury that Mr. Teman's drafting of checks on this normal working day separated from Intermediary Days by a weekend when banks would be closed showed intent to defraud you sat by impassively, apparently endorsing this horrible accusation and then adopting it as your own.

As Rabbis, we cannot countenance your dishonest abuse of Jewish practices and your calumnious attacks on Mr. Teman. If anything, you should have seen Mr. Teman's letter as a cry for help from a very sick person who completely lacked capacity to stand trial, not as a basis for the animus you then displayed against him. We believe your conduct is so egregious that you should immediately recuse from any further proceedings in the case and extend an apology to Mr. Teman and the Jewish community. Americans of all faiths must have confidence that judges are not guided by improper sentiments and do not abuse the Jewish faith to convict anyone, under any circumstances.

**Judge Engelmayer's personal & financial bias**

In addition to the many instances of prosecutorial misconduct described in Mr. Teman's filings and in his brief on appeal, which we have read with equal parts sadness and anger, we are particularly troubled by your delay in disclosing that you and your family are beneficial owners of over $2,000,000 in Bank of America shares, when Bank of America was the only alleged economic victim in the case. For you to sit as judge in a case with such a strong motive to find in favor of Bank of America is unbefitting any Judge. Even if you believed you could rule impartially in this case, the confidence of the public, Jewish and Gentile, in the rule of law is profoundly shaken by the sight of a judge with a substantial financial interest in a case sending a defendant to prison over an amount that pales in comparison with the judge's financial interest. For a Jew, who should stand as a light to the nations, to engage in such subterfuge and self-interested obfuscation undermines and discredits our faith.

**A note on Jewish laws violated by Judge Engelmayer**

As Jews we have an obligation to correct moral and Halachic failings of a fellow Jew, in this case, your Honor. We can only condemn your Honor's multiple, significant violations of Jewish law. These include:

1. Requiring a Jewish, defendant to appear on Jewish Holidays (Shemini Atzeret) and stay in court into the Sabbath. Also, requiring a Jewish observant witness (Reinitz) and defendant to remain in court into the Sabbath despite protest from the defendant (Dkt _).[1] In fact, requiring even the non-Jewish attorneys to participate was and is a violation of Jewish law.[2]

    The foregoing judgments are not esoteric Halacha (Jewish Law), but rather stem from the plain text of one of the Ten Commandments: "But the seventh day is a sabbath unto the LORD thy God, in it thou shalt not do any manner of work, thou, nor thy son, nor thy daughter, nor thy man-servant, nor thy maid-servant, nor thy cattle, nor thy stranger that is within thy gates;"[3]

    Moreover, by causing Teman to disrespect the Sabath, you are guilty of prohibition of *Lifnei iver,*

---

[1] Shemot (Exodus) 20:9; *Mechilta,* Shemot (Exodus) 12:16
[2] Beit Yosef end of D.C. 344, Shulchan Aruch HaRav, Orach Chaim 343:1; Maimonides, Laws of Shabbat 6.
[3] Shemot (Exodus), 20:9

causing another Jew to sin.[4]

2. Making false testimony by fabricating "statements Teman did not make and do not appear at all in evidence (not even the Government or its witnesses suggested Teman said he would draft accounts on Passover) and then basing sentencing on it. (Exodus 20:12, "You shall not bear false witness against your neighbor.") , While also turning a blind eye to exculpatory evidence (Dkt. 284, 294, etc.) and delaying hearings on exculpatory evidence.[5]

3. Judging a case in which you have a significant ($2M+!) financial interest in the only alleged economic victim in the case,[6] and in which you are close personal friends with attorneys on both sides (Mr. Noam Biale and his wife AUSA Margaret Graham) who willfully violated disclosure obligations and violated Mr. Teman's right to conflict-free counsel and attorney-client confidentiality. Your Honor's conduct in this respect constitutes and egregious violation of Jewish law[7].

4. Making ex parte call(s) to ensure "extra supervision" to only one side .

.
Violating the Sabbath, bearing false witness, hiding material evidence, displaying favoritism toward an accuser — such behavior is unacceptable and unbefitting of a Jew.

Under Jewish law, your Honor has a duty to apologize and make Mr. Teman whole. Jewish Law is clear that only Mr. Teman, not G-d nor any Rabbis, can forgive the grave abuses you have committed. We call on you to atone for your conduct without delay.

**Summary**

For the above reasons, and in light of the severity of the conduct described, your Honor should not only recuse yourself from any further involvement in the Teman matter, but your Honor should retire from the bench immediately.

---

[4] Rav Ovadiah Yosef, *Teshuvot Yechaveh Da'at 4:6*5; Also, Chazon Ish (*Sanhedrin* 15:4))
[5] Rambam, Hilchot Sanhedrin 24,2; Rav Ovadia Yosef, Responsa Yabia Omer 1,41.
[6] Talmud Bavli, Bava Basra 43a (("If one says, 'Give a sum of money to the people of my city,' the case may not be judged by judges of that city, nor may evidence be presented based on the testimony of residents of that city."); Shulchan Aruch, Choshen Mishpat 37:1 (ruling that where two partners own a single property and a suit is brought against one of the partners alleging that the whole property had been stolen from the plaintiff and illegally sold to the partner-defendant, the non-party partner is disqualified from judging the case) and Shulchan Aruch, Choshen Mishpat 37:4 (ruling that a debtor holding a debt in partnership with another party is disqualified from judging a case brought by the creditor against only the partner for repayment of the loan) with Shulchan Aruch, Choshen Mishpat 37:11 (holding that where A holds a note of credit against B and conveys the note to C, B is disqualified from judging an action seeking to invalidate the conveyance since he may prefer to be indebted to A over C, or vice versa) and SHULCHAN ARUCH, Choshen Mishpat 37:15 (ruling that where A sells property to B without a guarantee and C subsequently brings a suit against B to recover title to the property, A is disqualified from judging the case since he may prefer that the property remain with B so that his own creditors can attach the property to pay debts owed to them by A). (From
https://ir.lawnet.fordham.edu/cgi/viewcontent.cgi?article=2418&context=ulj )

[7] R. ASHER B. YECHIEL, RESPONSA ROSH 6:25 (disqualifying a judge from deciding a case involving a bequest of books and lamps to the synagogue the judge frequented, even though the members of the congregation would be under no obligation to purchase these items themselves if the bequest was invalidated);) (Ibid)

We also respectfully ask that the United States Attorney for the Southern District of New York, Mr. Damian Williams, seek the immediate dismissal of this case. Mr. Williams inherited this case but he has had ample time and notice to stop the injustice and has failed to do so.

America has a Constitution. Jews have the Torah and oral and written commentary developed over millennia. No judge should disrespect the former, no Jew should disrespect the latter. Alas, your Honor has run afoul of both. We respectfully ask that your Honor examine his conscience and take the only appropriate steps under the circumstances: immediate recusal and withdrawal from the bench.

Any action short of these steps sends an unmistakable message that the Constitution and our sacred laws and traditions can be ignored and violated to serve the needs of the rich and well-connected. The damage to the Jewish community from your Honor's continued involvement in the Teman case would be incalculable. We are confident that, in your heart, you know the right course of action. We call on you to follow the conscience G-d has given you and step down so that Mr. Teman can be free again to devote himself to the Jewish community for which he has such love and of which he is so proud. .

Signed,

*Rabbi Reuben Koolyk, Esq., MD*
Yeshiva University

*Rabbi Menachem Mayberg, Esq.*
LEC

*Rabbi Andrew Schein*
Yeshiva University

*Rabbi Sidney Slivko*
Bay Terrace Garden Jewish Center Queens (ret),
Yeshiva University

*Rabbi Jeffrey Shron*
Yeshiva Pirchei Shoshanim,
Kehilath Israel, Kansas City (ret)

*Rabbi Zvi Karpel*
Chaplain (ret) Daughters of Israel, West Orange, NJ.

*Rabbi Chezky Wolff*
The Chelsea Shul

*Rabbi Shmuel Druin LCSW*
Chaplain, North Miami Police Dept.

*Rabbi Eitan Webb*
Princeton University

*Rabbi Yonah Blum*
Columbia University

*Rabbi Chayim B. Alevsky*
Chabad Family Programs, NYC

*Rabbi Leibel Khazanovich*
YJP South Beach,
Hebrew Academy (RASG)

*Rabbi Ephraim Simon*
Friends of Lubavitch of Bergen County

*Rabbi Levi Teldon*
Alamo Chabad

*Rabbi Mendy Krinsky*
Chabad Jewish Center Needham

*Rabbi Moshe Z. Schapiro*
Chabad of Hoboken

*Rabbi Aryeh Weil*
Congregation Bnai Yeshurun, Teaneck (ret)

*Rabbi Shraga Mann*
Chabad of South Beach

*Rabbi Zev Katz*
Miami Beach Chabad

*Rabbi Yakov Bankhalter*
Chabad Loft

*Rabbi Moishe Korf*
Chabad of Miami Gardens

*Rabbi Eliezer Tewel*
Chabad Israeli Center

*Rabbi Moshe Klar*
JETS, Beis Menachem

*Rabbi Yossi Smierc*
KSPACE



# HARVARD LAW SCHOOL

LAWRENCE LESSIG
ROY L. FURMAN PROFESSOR OF LAW AND LEADERSHIP
1563 MASSACHUSETTS AVE
CAMBRIDGE · MASSACHUSETTS · 02138
TEL. (617) 496-8853
lessig@law.harvard.edu

November 12, 2020

President Donald J. Trump
1600 Pennsylvania Avenue
Washington, DC 20500

The Honorable William Barr Attorney General

The Honorable Jeffrey Rosen
Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC, 20530

Re: Ari Teman

I have reviewed, *pro bono*, the case involving Ari Teman. Ari was convicted for acts that certainly do not establish a crime nor evince any criminal intent. I urge the Justice Department to dismiss the case or the President to pardon Mr. Teman.

The facts underlying this case involve a business dispute between Mr. Teman's company, GateGuard, and some of its clients. Those clients had failed to pay for the services GateGuard had provided. Pursuant to the terms agreed to by the clients and GateGuard, Mr. Teman effected a transfer of funds from the clients' bank accounts to GateGuard. The clients had contractually authorized GateGuard to collect overdue fees in this way. The contract that authorized this was not crafted by Mr. Teman, but by his lawyers. They had patterned the agreement on other well known companies (such as AirBnB). The lawyers' work obviously cannot be the foundation for a finding of Mr. Teman's fraudulent intent.

Whether GateGuard's contract should be enforceable in a civil court is an interesting question for academics to consider. GateGuard's customers acknowledged they received the contracts; they claimed they hadn't read it. Again, that poses an interesting question for a contracts exam. It doesn't evince fraudulent intent by

1

Mr. Teman. Indeed, the reality of online commerce is that agreements like this are the norm. The judge in this case suggested that the terms authorizing the transfer of funds were buried in the contract. GateGuard's contract is actually quite concise relative to many online agreements. The suggestion that a surprising term in an online agreement constitutes an intent to defraud would render most banks and credit card companies guilty of fraud. Nothing in GateGuard's terms of service is extreme or unusual.

The judge in this case, writing to uphold a jury verdict, was constrained to justify the jury's verdict. He was therefore persuaded that the fees charged were unreasonable. And he was skeptical that the terms authorizing a transfer were in fact present at the time the clients agreed to the contract.

But the fees were charged as many contracts — cell phones contracts for example — provide today: a low monthly fee that is accelerated if a contract is terminated early, or not kept current. And the evidence in this case demonstrates conclusively that the term authorizing transfers from the clients' accounts was both part of the original agreements and expressly acknowledged by at least some of the clients.

What explains this prosecution is not the law, nor the justice within this commercial dispute. What explains it, apparently, is the relative inexperience of the front line prosecutors. Those prosecutors were new to the U.S. Attorney's office. They allowed their inexperience to guide their intuitions. And once it was clear that they had uncovered not a criminal commercial enterprise but ordinary online commerce, rather than acknowledging their error, and the injustice in prosecuting a commercial dispute as a crime, they continued to press the prosecution against Mr. Teman.

This behavior is surprising and troubling to those like me who have high regard for United States Attorneys. Yet it is clear that sometimes, winning becomes more important than justice. The prosecution of Mr. Teman is not justice. It is not a credit to the work of the Department. I urge you to take whatever steps are possible to stop this prosecution before Mr. Teman is sentenced to prison.

Sincerely,



Lawrence Lessig

2

Shelly Jenkins Pecot
18 Mercer St. New York NY 10013
shelly.pecot@gmail.com (917) 561-6505

Judge Paul Engelmayer
District Judge
Southern District of New York
40 Foley Square
New York, NY 10008

August 21, 2021

Your Honor,

My name is Shelly Jenkins Pecot. I am a shareholder at 18 Mercer. I was out of the country when I was subpoenaed to testify.

With regard to 18 Mercer, I do not believe Ari Teman should go to prison.

Ari Teman did warn myself and other shareholders of what he said were the following terms in the contract he signed with our then board Vice President via an online document.

1. There was an $18,000 fee for removing the device
2. There was a $10,000 fee for collections
3. There would be attorney fees
4. There was binding arbitration
5. That he believed he had the right to draft owed monies from our bank account

I confirm that I did text with Mr. Teman and that the texts he has shown to me are accurate and match those on my phone.

I also confirm that I did forward the two attached emails to Mr. Teman on Aug 19th.

I do not live in New York and was only at the coop for a few days while Mr. Teman's device was installed. During that time, the device was connecting to the app but seemed to be disconnected from the door lock.

My personal interactions with Mr. Teman on this matter were amicable at first. I believed that he wanted to work with us to get his device working properly. Mr. Teman told me that our internet was not sufficient to run the device and that he had informed the board of this. Mr. Teman also told me that he had added a new router to help with this issue.

I was informed by another shareholder that this shareholder had been told by contractors that Bonnie Soon-Osberger had instructed them to disconnect the device. At the time, my suspicion was that it had been sabotaged to justify going with a different company. However, I had no direct proof of this and now believe they were referring to when the device was removed to be replaced.

I have no direct knowledge of Mr. Teman's interactions with the board or management. However the management team did insist to shareholders that they had no interactions with Mr. Teman. Mr. Teman forwarded me emails between himself and management to show me that they were not being truthful.

I am out of state, but I would be happy to speak by Zoom on this matter if you have any further questions.

Shelly Jenkins Pecot

*[signature]* Aug 20, 2021

Shelly Pecot appeared before me on August 20th 2021

Melody Hannigan as notary

MELODY HANNIGAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID# 20064012643
MY COMMISSION EXPIRES APR. 05, 2022



RCOLEMAN@DHILLONLAW.COM
ADMITTED IN NEW JERSEY AND NEW YORK

November 30, 2020

**BY EMAIL**

The President
The White House
1600 Pennsylvania Avenue
Washington, DC  20500

The Honorable William Barr
Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC  20530

           Re:       **Pardon application of Ari Teman**
                        **U.S. v. Teman (S.D.N.Y. 1:19-cr-00696)**

Mr. President and Attorney General Barr:

      I am a lawyer who has been active in the practice of Internet-related law, including issues concerning the formation of contracts and, in particular, the law relating to unfair and deceptive trade practices relating to the Internet for decades.  I have lectured and written extensively on these subjects,  and I write today to join with the esteemed legal authorities and figures, including Prof. Alan Dershowitz, Prof. Lawrence Lessig and outstanding attorneys such as Molly McCann (General Flynn's attorney), David Markus, Pat Nolan, Kurt Schlichter, Robert Barnes, David Safavian, and others – all of whom, like me, have made themselves available *pro bono publico* concerning this cause – in urging a full pardon for Mr. Ari Teman, the defendant in the referenced criminal matter.  Although I am using my professional letterhead in this instance because I am writing as a lawyer, Mr. Teman is not a

November 30, 2020
Page 2 of 5

client of our firm and has never been one. Moreover, I speak only for myself, albeit professionally, in this letter. I explain my reasoning below.

The President and Attorney General will doubtless be aware of correspondence received concerning Mr. Teman's case that addresses extensive claims of prosecutorial misconduct. I am neither familiar enough with the record nor qualified by experience or otherwise to offer an opinion concerning these matters; nor would I presume to address them in a pardon application given the procedural posture of the defendant at this time. I do, however, have the experience to address the very narrow issue of whether the criminal offense with which Mr. Teman was charged and convicted should properly be considered criminal, or even deceptive, at all.

Mr. Teman was essentially convicted on the basis of what is commonly called a "click-wrap" contract, meaning the web-based terms that an Internet business – in this case, Mr. Teman's company, GateGuard – uploads and requires users to agree to before offering a product or service. It is well established that such online contracts are, under virtually all circumstances, proper and enforceable, and that their terms govern the seller's relationship with its customers. The Government's theory of criminal liability was that the structure of GateGuard's online terms was evidence of an "intent to defraud" its customers, however. Ultimately, the District Court ruled that the jury could have reasonably convicted Teman of fraud because GateGuard's terms included hyperlinks to subpages, requiring them to follow those links in order to be fully apprised of the terms to which they were agreeing to be subject in their relationships with GateGuard. The premise of this ruling appears to be that the use of hyperlinks, as opposed to cutting and pasting text and information into the terms found online on one webpage, constituted a sort of deception.

With all due respect to the District Court judge, I write to urge that such an interpretation of the custom and practice utilized throughout the world of Internet commerce is incomprehensible. Certainly, there is no question that virtually all contemporary businesses utilize online contracts to offer their services to the public and subsequently to document the terms under which their customer relationships will continue to proceed. And it is beyond question that the practice of using hyperlinks to extend, elucidate or otherwise incorporate online contractual terms in e-commerce websites, using subpages and hyperlinks, is widespread and uncontroversial. Organizing terms and related information in this way benefits businesses and customers alike, allowing all parties access and reference to them, and the ability to update specific sections of the terms, when necessary and appropriate. There is no obvious or even rationale for claiming that it is deceptive or fraudulent for Internet-based customers, who are at this point in technology history intimately familiar with how the Internet works, to click a clearly-highlighted hyperlink to obtain information. Indeed, it can be argued that doing so is far more convenient, and makes the information more accessible, than repetitive scrolls down a massive screen jammed with

November 30, 2020
Page 3 of 5

verbiage. That is why the practice of using hyperlinks and subpages for contract terms is employed by companies such as Amazon, Google and Netflix.

Notably, GateGuard's terms are effectively identical in form and substance to those used by another national company Airbnb, a recognized leader in the same industry (property management) in which GateGuard operates. This should come as no surprise, because it is common practice among web designers and legal counsel advising new online businesses to recommend that new businesses "borrow" such terms where available online content in setting up their own e-commerce sites. The advantage of doing so are obvious: Similar businesses that are already successful in the same market have typically customized their terms of service to that market based on commercial experience, and are presumptively acceptable to regulators given the high profile and success of such market leaders. Despite the fact that the Government repeatedly emphasized the format and structure of GateGuard's terms as evidence of Teman's guilt during trial, I am aware of no claim by either criminal or regulatory authorities that the virtually identical terms and structure used by Airbnb are problematic, much less felonious. In fact,

The case law is clear that online contract terms that incorporate content via sub-pages and hyperlinks are legal and binding. I am also advised that testimony at trial by customers of GateGuard established that these consumers themselves were aware of this fact and that all the information needed to understand the applicable terms of service were no more than a click or two away at any time of the day or night. It is not necessary for consumers to actually click such supplementary links in order for them to enforceable parts of the contract between them and the online merchant. Thus, for example, in *Meyer v Kalanick (Uber),* the Second Circuit ruled that plain text disclosure of terms being applicable were binding whether or not the user clicked the link – just as a consumer, given the opportunity to read a long paper contract, has the discretion to go through each word on each page or not. Indeed, as Professor Lessig, the preeminent internet law expert, has attested in his letter to you, GateGuard's online terms are relatively concise compared to many common and unquestionably enforceable online terms.

The argument that consumers, much less business entities, are defrauded when they choose not to click a hyperlink to read a contract subpage turns generations of contract law as well as basic principles concerning fraud in the inducement of a contract on their heads. Even in the consumer context, fraud requires that the non-disclosing party not have a reasonable opportunity to obtain information by virtue of non-disclosure by the party against whom fraud is claimed – a situation that simply does not apply when full disclosure is available by clicking on a hyperlink. This obligation on the buyer to do a minimum of diligence on its own behalf applies even more powerfully in a commercial context such as the one in question here. Such "B to B" (business to business) online users can and should reasonably be expected by the law to not only review a prospective contract in depth but to have their legal representatives do so before entering into a contract of substantial value. For this

November 30, 2020
Page 4 of 5

reason, in *GateGuard, Inc. v. MVI Systems LLC*, (1:19-cv-02472) (S.D.N.Y. 2019), the Southern District upheld the GateGuard arbitration clause – found on the Dispute Terms subpage of GateGuard's Terms.

It is difficult indeed to understand how both this straightforward legal standard and testimony that GateGuard's customers not only should have, but did know the terms of their contracts with GateGuard before they agreed to them, could have been disregarded by the court and the jury at Mr. Teman's trial. I have learned that two of the three entities involved were, according to unrebutted testimony, shown not only to have read the first page of the terms in depth, but that they copy-pasted the paragraph referencing the Payment Terms into emails to Mr. Teman in order to ask him questions about those terms **before** they agreed to them! The third entity not only discussed the exclusivity and non-compete segments, moreover, but even emailed GateGuard's attorney asking for "a release" from certain terms. Under these circumstances, Mr. Teman was quite justified in understanding that the GateGuard terms were legal, binding and enforceable, and that taking action to enforce those terms could not amount to a criminal *mens rea* on the part of Mr. Teman. (As Professor Lessig points out, the high fees make sense, because these clients owed the majority of multi-year agreements and also incurred collections penalties, as are standard with equipment and service financing agreements.)

That Mr. Teman lacked criminal *mens rea* appears irrefutable, moreover, because as would be expected, Mr. Teman did not structure his company's terms, his company's law firm did – and, again, those terms were based on Airbnb's, which also faces the issue of illegal sublets, which is potentially devastating to its business. I am also informed, however, that this "structuring" theory of criminal liability was essentially sprung on the defense by the government at closing argument and post-trial motions, thus depriving Mr. Teman of the opportunity to rebut it by testimony and documentation proving that his attorneys who emailed him the terms, discussed how they were structured online in the same way as Airbnb's, and establish for the jury that in publishing those terms in that format Mr. Teman was relying on counsel – which, under *United States v. Scully*, would at least have required a jury instruction regarding the government's burden of proof concerning intent, a necessary component for a conviction on charges of wire fraud and bank fraud. 877 F.3d 464 (2d Cir. 2017). For the district court to have, instead, permitted the government's to rely on its "structuring" claim as a basis for the jury to find criminal intent was a miscarriage of justice.

I did not know Mr. Teman until he approached me, because of my background in this area of law, concerning his conviction. I agreed to assist him without charge or consideration in part because, from the point of view of e-commerce clients I represent, the conviction of Mr. Teman for fraud on the basis of his company's online terms creates a real danger for online businesses and their executives that is not justified by statute and which threatens all e-commerce enterprises. While contractual disputes between customers and online sellers are inevitable, they are properly addressed in **civil** proceedings except for the most egregious and

November 30, 2020
Page 5 of 5

impactful criminal conduct. That is not what happened here, and the criminal conviction of Ari Teman for the use and reliance on widely-used contract terms and business practices is deeply troubling and a threat both to online commerce but fundamental notions of justice and personal liberty.

    I am very grateful for your consideration concerning these remarks and, again, respectfully urge that Mr. Teman receive a pardon and that the Department of Justice issue appropriate guidance to prosecutors regarding criminal prosecutions of this nature.

    Most respectfully,

    *[signature]*

    Ronald D. Coleman