UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
……………………………………………………………X
GUATEGUARD, INC.,

                              Plaintiff,

         -against-


GOLDMONT REALTY CORP.,
LEON GOLDENBERG,
ABI GOLDENBERG,


                           Defendants.
……………………………………………………………X

Civil Case No.: 1:20-CV-01609 (VEC)(GWG)

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY SIMCHA SCHOENFELD AND THE FIRM OF KOSS & SHOENFELD, LLP</u>

Eden P. Quainton
**QUAINTON LAW, PLLC**
*Attorneys for Plaintiff*
*GateGuard, Inc.*
2 Park Avenue, 20th Floor
New York, New York 10016
(212) 419-0575
Email: equainton@gmail.com

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STANDARD OF REVIEW .................................................................................................... 2

FACTUAL BACKGROUND ................................................................................................ 3

LEGAL ARUMENT ............................................................................................................ 6

    I.     THE COURT SHOULD DISQUALIFY SIMCHA SCHONFELD .............................. 6

      A.   Mr. Schonfeld is a Necessary Witness in This Case and His Further Representation
of Defendants Will Violate RPC 3.7 .................................................................................. 6

      B.   Mr. Schonfeld Has Likely Violated the Rule of Professional Conduct in Dealings
Related to Plaintiff and is Potentially Subject to Discipline under Rule 3.4 Of the New
York Rules of Professional Conduct, Rendering Disqualification in the Best Interest of
the Court and the Parties. ................................................................................................ 11

      C.   Schonfeld's Prior Representation of One of GateGuard's Principal Competitors with
Interests Adverse to Goldmont Creates a Conflict of Interest that Could Taint the
Proceedings Before This Court. ....................................................................................... 14

      D.   Koss & Schoenfeld, LLP, As a Small Seven-Person Firm, Cannot "Ring Fence"
Schoenfeld from Other Attorneys at the Firm. ................................................................. 16

CONCLUSION ................................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Big City Realty Management, Inc. v. Ada Medina*,
  151040/2016 ............................................................................................................ 14

*Cheng v. GAF Corp.*, 631 F.2d 1052 (2d Cir.1980),
  *vacated on other grounds,* 450 U.S. 903 (1981)................................................ 2

*Cresswell v. Sullivan & Cromwell*,
  922 F.2d 60(2d Cir.1990) ......................................................................................... 2

*Decker v. Nagel Rice LLC*,
  716 F. Supp. 2d 228 (S.D.N.Y. 2010) .................................................................... 3

*Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*,
  722 F. Supp. 2d 295 (E.D.N.Y. 2010) ................................................................. 16

*GateGuard v. Amazon.com, Inc., et al.*,
  Case No. 21:cv-9321 ................................................................................................ 4

*GateGuard v. MVI Systems, LLC, Samuel Taub, and MVI Industries, LLC*,
  Case No. 19-cv-2472 ...................................................................................... passim

*GateGuard, Inc. v. Goldmont Realty Corp. et al*,
  Index No. 657197/19 ................................................................................................ 3

*Hammond v. City of Junction City, Kansas*,
  No. 00-2146-JWL, 2001 WL 1665374, at *1 (D. Kan. Dec. 17, 2001) ................................. 3

*Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*,
  409 F.3d 127 (2d Cir.2005) ..................................................................................... 2

*In re Michael S. Goldberg, LLC*,
  595 B.R. 119 (Bankr. D. Conn. 2018) ................................................................. 13

*Jews for Jesus, Inc. v. Town of Oyster Bay*,
  No. CV 09-2088, 2010 WL 256670 (E.D.N.Y. Jan. 21, 2010) ............................................ 9

*LaSalle Nat'l Bank v. County of Lake*,
  703 F.2d 252 (7th Cir.1983) ................................................................................. 16

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) .......................................................................................... 7

*Murray v. Metro. Life Ins. Co.*,
   583 F.3d 173, 178 (2d Cir. 2009) ................................................................................ 9

*Papanicolaou v. Chase Manhattan Bank*, N.A.,
   720 F. Supp. 1080 (S.D.N.Y. 1989) ...................................................................... 3, 16

*Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers,*
   378 F.3d 269 (2d Cir.2004) ......................................................................................... 9

*Runs Like Butter Inc. v. MVI Systems LLC et al.*,
   Case No: 1:19-cv-02432 ..................................................................................... passim

*Scantek Med., Inc. v. Sabella*,
   693 F. Supp. 2d 235 (S.D.N.Y. 2008). ........................................................................ 2

*Shelton v. Amer. Motors Corp.*,
   805 F.2d 1323 ............................................................................................................ 10

*U.S. Football League v. Nat'l Football League*,
   605 F. Supp. 1448 (S.D.N.Y. 1985) ......................................................................... 15

*U.S.A. v. Anilesh Ahuja*,.,
   Case No. 18-cr-00328 ................................................................................................. 9

*U.S.A. v. Teman*,
   Case No. 22-1920 .................................................................................................... 1, 5

*U.S.A. v. Teman*,
   Case No. 19-cr-696 ...................................................................................................... 8

## <u>Rules</u>

Federal Rule of Evidence 404(b)(2 ............................................................................... 11
Federal Rule of Evidence 609 ........................................................................................ 7
Rules of Professional Conduct. ....................................................................................... 3
Rule of Profesional Conduct 3.4(a)(6 ..................................................................... 12, 13
Rule of Profesional Conduct 3.4 ............................................................................... 9,11
Rule of Professional Conduct Rule 3.7 ...................................................................... 6,9

## PRELIMINARY STATEMENT

Plaintiff GateGuard, Inc. ("Gateguard") brings the present motion to disqualify Simcha Schonfeld ("Schonfeld") and his law firm, Koss & Schonfeld, LLP, from representing Defendants Goldmont Realty, Corp. ("Goldmont"), Leon Goldenberg and Abi Goldenberg for two principal reasons. First, Schonfeld is a necessary witness in the case. Schonfeld has made clear on multiple occasions that his trial strategy will be based on attacking the credibility of GateGuard's CEO, Ari Teman ("Teman"), who was convicted of bank fraud with respect to three real estate entities, whose principals are well-known to Schonfeld. Teman's case is currently pending on appeal, *USA v. Teman*, 22-1920, and Teman maintains his innocence.[1] In connection with Teman's criminal trial, Schonfeld engaged in communications with an Assistant United States Attorney for the prosecution. Teman intends to call Schonfeld as a necessary witness to testify as to the nature of these communications and whether Schonfeld omitted to communicate material exculpatory information to the Government in order to help secure Teman's conviction. In addition, Schonfeld has allegedly engaged in structuring a fraudulent conveyance to frustrate the claims of creditors in separate two lawsuits, *GateGuard v. MVI Systems, LLC, Samuel Taub and MVI Industries, LLC*, 1:19-cv-02472, and *Runs Like Butter Inc. v. MVI Systems LLC et al.*, Case No: 1:19-cv-02432, a case brought by a competitor of GateGuard and making a nearly identical allegation. Plaintiff intends to call Schonfeld as a necessary witness to testify as to his role in structuring a transaction to avoid liability. This allegation bears directly on the fraud alleged in the present action, in which Defendants are

---

[1] A number of legal experts have opined that the Teman case involves a commercial dispute without any indication or a crime or *mens rea* that should have been resolved as a civil matter. *See, e.g.*, Declaration of Eden P. Quainton, dated September 1, 2022 (the "Quainton Decl."), Ex. A. at 7-8 (letter from Harvard Professor of Law, Lawrence Lessig, dated November 12, 2020).

alleged to have attempted to structure a fraudulent conveyance, likely with Schonfeld's assistance, pursuant to which they promised to invest in GateGuard at a $25 million valuation and then, after GateGuard had exhausted its cash flow in reliance on this promise, attempted to squeeze Teman to sell control of GateGuard at a "fire sale" price.

Second, the conduct alleged both by GateGuard and *Runs Like Butter* would, if proven, violate Schonfeld's ethical and professional responsibilities, and require his disqualification and/or discipline. GateGuard's claim against MVI is currently pending in arbitration and GateGuard intends to call Schonfeld as a witness pursue discovery of the fraudulent conveyance allegations in the arbitration forum. It would be disruptive to the proceedings before this Court if developments in the arbitration brought to light conduct requiring discipline against Schonfeld. In the interests of judicial economy, and in light of Schonfeld's necessary testimony as a witness in any event, it would be far preferable to disqualify Schonfeld and his firm now, so that Defendants can secure new counsel and prepare expeditiously for trial.

## STANDARD OF REVIEW

A motion to disqualify an attorney is committed to the discretion of the District Court. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990); *Cheng v. GAF Corp.,* 631 F.2d 1052, 1055 (2d Cir.1980), *vacated on other grounds,* 450 U.S. 903 (1981). In the exercise of its discretion, the District Court can disqualify an attorney to forestall an ethical violation. *Cresswell,* 9022 F. 2d at 72-73. When deciding a motion to disqualify counsel, a court must balance "the need to maintain the highest standards of the profession" against "a client's right freely to choose his counsel." *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir.2005) (citations omitted). *Scantek Med., Inc. v. Sabella*, 693 F. Supp. 2d 235, 238 (S.D.N.Y. 2008). As a general matter, an attorney can be disqualified if his representation of a client would constitute a conflict of interest, or if he is a necessary

witness in a case in which he is also serving as counsel, or if his conduct otherwise violates the Rules of Professional Conduct. *Papanicolaou v. Chase Manhattan Bank*, N.A., 720 F. Supp. 1080, 1083 (S.D.N.Y. 1989) (disqualification is appropriate when a lawyer's conduct might taint the case); *Paul v. Jud. Watch, Inc.*, 571 F. Supp. 2d 17, 26–27 (D.D.C. 2008)(same); *Hammond v. City of Junction City, Kansas*, No. 00-2146-JWL, 2001 WL 1665374, at *1 (D. Kan. Dec. 17, 2001)(same); *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 233 (S.D.N.Y. 2010) (disqualification under the advocate-witness rule). A district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake. *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1246 (2d Cir.1979).

## FACTUAL BACKGROUND

The case before the Court is embedded in a complex set of relationships involving Teman and GateGuard and a number of commercial entities, their owners, their attorneys, and the United States' Attorney's office for the Southern District of New York. GateGuard provides a cutting-edge artificial intelligence enabled intercom that not only functions as a traditional gatekeeper for multi-resident buildings, but also enables a high level of owner supervision of building traffic, thus enabling owners to thwart illegal uses of their properties, such as for unauthorized sublets. *See*, *e.g., GateGuard v. MVI Systems, LLC, Samuel Taub, and MVI Industries, LLC*, 19-cv-2472, Dkt 104 ¶¶ 3-7. GateGuard provided intercoms under long-term contracts to multiple property owners throughout New York City, including Defendant Goldmont, which is owned and operated by Defendants Leon Goldenberg and his son Abi Goldenberg. *GateGuard, Inc. v. Goldmont Realty Corp. et al*, Index No. 657197/19, NYSEF Doc. No. 20 (the "State Law Complaint")¶¶ 2-3.[2]

---

[2] The present case began as a state law case brought in New York Supreme Court and was removed to Federal Court by Defendants based on diversity of jurisdiction. Dkt. 1.

3

Beginning in 2018, GateGuard entered into a commercial relationship with Goldmont. State Law Complaint ¶ 16. In 2019, Goldmont, acting through Abi Goldenberg, entered into long-term contracts for 60 additional intercoms.[3] Both Abi and Leon Goldenberg expressed their admiration for the GateGuard devices[4] and, according to Plaintiff, sought to devise a scheme to take control of GateGuard at far below its true value. State Law Complaint ¶¶ 20-24, 42-52. To implement this scheme, Abi and Leon Goldenberg promised to make an investment of $1 million into GateGuard and to secure additional investors for the business. In reliance on their promises and at their request, GateGuard rented office space, hired staff, invested resources to expand production in China and exhausted its available cash resources. Once GateGuard was out of cash, Leon and Abi Goldenberg admitted they had never intended to purchase GateGuard at the original valuation and attempted to buy the Company at a "fire sale" price.

Meanwhile, GateGuard encountered difficulties with other customers in the tight-knit Manhattan commercial property world.  A company called MVI Systems, LLC, began marketing a competing product, allegedly misappropriating GateGuard's proprietary technology. *See, e.g., GateGuard v. MVI Systems, LLC, Samuel Taub, and MVI Industries, LLC*, 19-cv-2472, Dkt 104. Amazon.com. Inc.then started marketing a separate competing product, called the Amazon "Key," that was illegally installed inside of GateGuard's devices, either free riding on these devices or causing them to malfunction and creating ill-will that Amazon then used to market its own products. *GateGuard v. Amazon.com, Inc., et al.*, 21:cv-9321¶¶ 9, 91-92, 105.

---

[3] The State Law Complaint only referenced 41 devices, but discovery established that Goldmont entered into long-term contracts for 60 devices.

[4] *See, e.g.*, Quainton Decl., Ex. B, 311:13 ("We thought he had a great product").

In this intellectual property and commercial maelstrom, several of GateGuard's customers sought to back out of their long-term financial obligations to GateGuard. In response, after months of warning these clients through email, SMS, phone messages and counsel, GateGuard used its contractual right to draw so-called "remotely created checks" or "RCC's," a legal device pursuant to which a customer authorizes a supplier to write checks "remotely" (*i.e.*, without customer signature) on identified bank accounts to cover unpaid amounts owed. *See U.S.A. v. Teman,* 21-1920 at 5. GateGuard exercised this right against three customers ABJ Properties, Coney Management and Mercer Equities Inc. *Id.* at 6-24. Incredibly, despite the express language of GateGuard's online Terms and Conditions authorizing the use of RCC's, requiring customers to assent to the Terms and Conditions, and requesting customers banking information in advance for purpose of drafting RCC's, these customers claimed they had not authorized the use of RCC's. *Id.* More incredibly still, Teman was arrested for bank fraud in connection with the use of these RCC's on July 3, 2019, *id.*, at 24, and then tried, convicted and sentenced to a year in prison in addition to payment of restitution and forfeiture. *Id.* at 3-4. Teman's conviction is currently on appeal. *Id.* One of the alleged "victims" in the criminal case, Joseph Soleimani, has also appeared in the case before this Court and has coordinated his position with Goldmont and Schonfeld. *See* Dkt. 53 at 3 (statement by counsel for Soleimani that "I have coordinated my response with Goldmont's counsel, Simcha Schonfeld"). As if this were not enough, a large Manhattan property owner Big City Realty Management, Inc. ("BCR") and a group of fifteen property owning affiliates then baselessly attacked GateGuard for "illegally" installing GateGuard devices on their properties, despite admitting that their managers had signed up for GateGuard's services on online, had assented to GateGuard's terms and had even provided information so the ateGuard team could access the buildings' basements. *3660 Broadway BCR, LLC et al., v. GateGuard,*

*Inc. and Ari Teman*, 654105/2019.  Discovery is ongoing in that case. *Id.* at NYSCEF Doc. No.

124.

      Goldmont's principal attorney in the matter before the Court, Simcha Schonfeld, a

name partner in a small seven-lawyer firm, is not casually acquainted with the facts described

above, but is rather at the center of this web of accusations and counteraccusations. Schonfeld

is not only Goldmont's attorney, but is also the lead attorney for BCR and its affiliates

currently pursuing baseless attacks on GateGuard in the NYSCEF Doc. No. 1. Schonfeld also

served as counsel to MVI Systems LLC in structuring the alleged fraudulent conveyance

identified above. *See supra* at 1. GateGuard's suit against MVI for intellectual property theft is

currently in arbitration proceedings. Finally, at the same time that he was initiating the BCR-

led vendetta against Teman and GateGuard, and allegedly structuring a fraudulent conveyance

to prevent GateGuard from recovering against MVI, Schoenfeld was also in direct

communication with the U.S. Attorney's Office for the Southern District of New York in

connection with Teman's criminal trial, *See* Dkt. 24 at 126, and possibly coordinating with

witnesses in the case who had a common interest in Teman's conviction to avoid contractual

obligations. The nature of and extent of the information and assistance provided by Schoenfeld

to the prosecution against the backdrop of his involvement in multiple cases in which he and

his clients have an evident motive to provide damaging testimony and withhold exculpatory

evidence relating to Teman is a material issue that will require Schoenfeld's testimony.

## LEGAL ARUMENT

## I.     THE COURT SHOULD DISQUALIFY SIMCHA SCHONFELD

     **A.**     **Mr. Schonfeld is a Necessary Witness in This Case and His Further Representation of Defendants Will Violate RPC 3.7.**

Under New York Rule of Professional Conduct (the "RPC") Rule 3.7:

a) A lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
(1) the testimony relates solely to an uncontested issue;
(2) the testimony relates solely to the nature and value of legal services rendered in the matter;
(3) disqualification of the lawyer would work substantial hardship on the client;
(4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
(5) the testimony is authorized by the tribunal.

Here, Teman's criminal conviction will likely be relied upon heavily for impeachment purposes by counsel for Goldmont pursuant to Federal Rule of Evidence 609. However, because Teman's case is on appeal, and because Teman maintains his innocence, whether witnesses perjured themselves or failed to produce relevant exculpatory evidence to the government will be relevant to rehabilitate Teman.

In the context of the pending action, the rehabilitation will necessarily involve Schoenfeld's testimony. As discussed, Schonfeld's involvement in an exceptionally large number cases adverse to Teman, both as counsel to defendants and plaintiff, provides him with a uniquely powerful motive to provide damaging, even untruthful testimony, or to withhold form the prosecution exculpatory evidence going to the heart of the criminal case, namely that Teman's commercial counterparts signed up for GateGuard services through an online portal that required acknowledgement of Terms and Conditions authorizing RCC's. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017)(confirming that "clickwrap" and "browsewrap" agreements are customary and valid in online contracts). The jury's assessment of Schonfeld's credibility could be fatal to the defense case, highlighting in the jury's mind that it is the defense and their counsel, and not plaintiff, with the motive to lie about the facts of the case. That Schoenfeld communicated with the prosecution is uncontroverted. Schoenfeld testified as follows:

> Mr. Schoenfeld: With respect to contact with law enforcement, I can tell you that I was contacted by an assistant U.S. attorney from the Southern District of New York, not the other way around. I have another action in fact in which Mr. Reinitz is counsel on as well involving Mr. Teman, and it's been reported in the media. The Southern District of New York got wind of that action and called me and asked me about information in that case, which I thought may or may not have been helpful to them in the criminal proceeding. I don't know if they used my other action in the proceedings or not. I didn't follow the criminal trial very closely.

Dkt. 23, 16:14-24.

Ignoring that his communications with the Southern District assistant U.S. Attorney would necessarily make him a witness in any attempt to impeach Teman with evidence of a conviction under appeal and subject to a *habeas* claim of actual innocence, Schoenfeld self-servingly added "And it [my communications with the prosecution] certainly has no bearing on any ability to defend this matter." Dkt. 23, 17:25-18:1. The exact opposite is true, and the Court was rightly skeptical of Schoenfeld's claims.

> The Court: Everyone is going to be cautious about their ethical obligations. Obviously, there are complications here of potential involvement of lawyers and potential knowledge of parties as to legal issues involving the other. Everyone will proceed cautiously, fully aware of their ethical obligations and the rules of professional responsibility going forward. If either side has a good faith basis to believe that there is a violation of the ethical rules, they should provide a detailed factual account of any such accusation in a letter, and I'll deal with it appropriately or refer it to the grievance committee of the Southern District as appropriate, or other authorities. So I'm sure we're all in agreement as to how we'll proceed from here, and you'll let me know with specificity if there are issues that the Court needs to get to the bottom of and address. Dkt. 23, 18:5-19.[5]

---

[5] Teman also intends to call Joseph Solemani, and representatives of the other entities against whom RCC's were drawn and with respect to whom Teman has discovered material evidence of false statements, notably with respect to the core issue in the criminal case, that of GateGuard's customers' knowledge and acceptance of the company's terms and conditions authorizing the user of RCCs. *See, e.g.*, *U.S.A. v. Teman*, 19-cr-696, Dkt. 284. There is disturbing evidence that Schonfeld may have coordinated with Soleimani in making false statements to the government. Not only was Schonfeld well aware that Teman's clients necessarily enter orders *via* the GateGuard online website that require a "browsewrap" consent to the allegedly unauthorized terms at issue in the criminal trial, *see* Quainton Decl., Ex. C at

In assessing whether Schoenfeld should be disqualified because of his necessary testimony as a fact witness, the Court should be guided by the Second Circuit's analysis:

> We have identified four risks that Rule 3.7(a) is designed to alleviate: (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009); *see also Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers,* 378 F.3d 269, 282-83 (2d Cir.2004); *Jews for Jesus, Inc. v. Town of Oyster Bay*, No. CV 09-2088, 2010 WL 256670, at *2 (E.D.N.Y. Jan. 21, 2010).

Here, of course, all of these risks are present. Schoenfeld will be called to testify as to exactly what he told the Assistant U.S. Attorney with whom he spoke, and he will clearly be in a position of vouching for his own credibility. To advocate effectively for Plaintiff, counsel for Teman may be required to proceed in a "hard hitting" manner that could itself be inconsistent with RPC 3.4, thus placing opposing counsel in an impossible position with respect to his competing duty of zealous advocacy. Because the impeachment of Teman's credibility would operate in favor of Schonfeld's client, jurors may perceive that Schoenfeld is distorting the

---

142:15-24, Schonfeld also jointly represented Soleimani in moving to quash a third-party subpoena, Dkt. 49 at 3 and engaged in stonewalling tactics to delay production of certain discovery items that may have shown coordination between Goldenberg and Taub until after Teman was scheduled to be sentenced. *See, e.g.*, Dkt. 50 at 2 (withholding of responsive correspondence between Goldenbeg and Taub). Sadly, the prosecution appears to have been aware of and even to have encouraged false statements, as appears to be a pattern in recent cases. *See United States v. Anilesh Ahuja*, 18-cr-00328, Dkt. 395 at 2-3: "It is now known that certain representations made by the government in its June 8, 2019 letter and in response to the Court's questions on June 10, 2019 were inaccurate and/or incomplete. . . The existing record raises legitimate questions about whether there was a deliberate effort by the government to avoid putting things in writing to circumvent its disclosure obligations. . . But, on this record, we submit that disclosure of such documents is also required under Brady, which "extends to evidence material to . . . the ability of a defendant to assert his constitutional rights," *Martinez v. United States*, 793 F.3d 533, 555 (6th Cir. 2015), *vacated on other grounds upon reh'g en banc*, 828 F.3d 451 (6th Cir. 2016), and therefore would include evidence (if any) of circumvention of disclosure obligations or failure to memorialize communications."

truth in favor of his own client, a result that could be prejudicial to Schoenfeld and his clients.

Finally, the inherent risks when an attorney testifies are likely to be amplified because of the

stakes and the jury's confusion as to whether Schoenfeld is presenting evidence or argument.

Rather than risk the dangers underscored by the Second Circuit, the Court and the parties

would be better served by the disqualification of Schoenfeld and his firm immediately, so that

Goldmont and the Goldenbergs can seek replacement counsel as soon as possible.

In addition to Schoenfeld's necessary testimony as to his communications the US.

Attorney's office, Schoenfeld's alleged structuring of a fraudulent conveyance transaction will

also require Schoenfeld to testify. *See supra* at 1; *see also infra* at 12-14. As with questions

about the nature of Schonfeld's communications with the U.S. Attorney's office, questions

about this transaction would be permissible in the context of plaintiff's examination of

Schoenfeld as part of his rehabilitation of Teman, as they would provide a motive for lying

about Teman to prevent him from pursuing counsel's own liability for structuring the

fraudulent conveyance.

Moreover, independently of the use of his testimony to rehabilitate Teman,

Schoenfeld can be named as a trial witness and examined on both his communications with the

Government and on the structuring of the alleged fraudulent conveyancing transaction. The

Second Circuit has not yet established a rule governing the conditions under which opposing

counsel may be called as a witness, but district courts in the Second Circuit have widely

followed the rule governing the propriety of a deposition of opposing counsel set forth in

*Shelton v. Amer. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). *See Cadle Co. v. Flanagan*, No.

3:01CV0531 (AVC), 2005 WL 8167448, at *1 (D. Conn. June 3, 2005). In *Shelton*, the Eighth

Circuit held that the court should limit depositions of opposing counsel to situations in which

the party seeking the testimony shows "(1) no other means exist to obtain the information than

to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3)

the information is crucial to the preparation of the case." *Id.* at 1327. This approach is

appropriate in determining whether Schonfeld can be called as a witness. *Cadle Co*. 2005 WL

8167448, at \*2.

  With respect to Schoenfeld's communications to the prosecution, no other means of

obtaining this information exists than taking Schoenfeld's testimony. The prosecution did not

produce a 302 summary of its interview with Schoenfeld or call Schoenfeld as a witness. To

the extent Schoenfeld was in possession of exculpatory evidence and failed to produce this

evidence, his direct testimony is the only means of obtaining such evidence. The information

relating to Schoenfeld's communications with the prosecution is clearly relevant, as Teman's

fraud allegation is based on the contention that Defendants intended to obtain leverage over

him to force a "fire sale" of GateGuard. To the extent Teman can establish that Schonfeld

failed to provide complete and truthful testimony to the prosecution, this would support the

case that Defendants and their counsel were carrying out their scheme to acquire GateGuard

fraudulently. Likewise, evidence that Schonfeld and his clients used fraudulent means to evade

their commercial obligations would be relevant and admissible under FRE 404(b)(2) as

evidence of Defendants' intent to perpetrate a fraud.

  In sum, Schoenfeld's testimony will be relevant and central to Plaintiff's case, and it

will be impossible for Schoenfeld to act as a neutral advocate given the importance of his role

as a witness. Disqualification is required.

  **B.**  **Mr. Schonfeld Has Likely Violated the Rule of Professional Conduct in Dealings Related to Plaintiff and is Potentially Subject to Discipline under Rule 3.4 Of the New York Rules of Professional Conduct, Rendering Disqualification in the Best Interest of the Court and the Parties.**

Under Rule of Professional Conduct, 3.4, Fairness to Opposing Party and Counsel, A lawyer

shall not:

(a) (1) suppress any evidence that the lawyer or the client has a legal obligation to reveal or produce;
(2) advise or cause a person to hide or leave the jurisdiction of a tribunal for the purpose of making the person unavailable as a witness therein;
(3) conceal or knowingly fail to disclose that which the lawyer is required by law to reveal;
(4) knowingly use perjured testimony or false evidence;
(5) participate in the creation or preservation of evidence when the lawyer knows or it is obvious that the evidence is false; or
(6) knowingly engage in other illegal conduct or conduct contrary to these Rules;

In addition to his necessary testimony as a witness, Schoenfeld's role in structuring the alleged fraudulent conveyance between MVI Systems LLC and MVI Industries, LLC warrants his disqualification under RPC 3.4(a)(6). This involvement is not mere conjecture. Just before the fraudulent conveyance was carried out, Samuel Taub, the CEO of MVI Systems, explicitly told one of his creditors:

> Cyrus, since you aren't answering me, I will make this very clear.
> We are liquidating the company this coming Monday, so if you want to accept the offer we proposed to your lawyer, then you will need to do it beforehand.
> Otherwise, there will be nothing left.
> Your choice.

*GateGuard, v. MVI Systems, LLC et al.*, 19-cv-2472, Dkt 104-13. In separate litigation brought in the Southern District of New York, *Runs Like Butter Inc. v. MVI Systems LLC et al.*, Case No: 1:19-cv-02432, counsel for plaintiff's issued a subpoena to Koss & Schoenfeld, LLP in connection with plaintiff's credible allegation that Schoenfeld had been responsible for structuring a fraudulent conveyance of MVI System's assets to an affiliate to force MVI into liquidation and enable the pressure high pressure tactics embodied in the email quoted from above. Notably, counsel for the plaintiff in *Runs Like Butter* stressed the following:

> Given the suspicious liquidation of all of MVI System's assets in the midst of litigation – and Taub's admission he intended to strip MVI Systems so "there will be nothing left" absent a quick settlement – it is entirely reasonable to believe his objective was fraudulent and made to hinder, delay and frustrate his current and future creditors. And there is probable cause to believe that communications between Taub and K&S during this time frame were made

12

in furtherance of his attempts to carry out this fraudulent transfer. *See In re Michael S. Goldberg, LLC*, 595 B.R. 119, 126-127 (Bankr. D. Conn. 2018) (finding trustee established probable cause to believe communications between investor and his attorney were made in furtherance of fraudulent transfer so as to render them discoverable where transfers not made until after clawback proceeding was commenced).

*Runs Like Butter Inc. v. MVI Systems LLC et al.*, Case No: 1:19-cv-02432, Dkt.47 at 2.

So powerful was the allegation of a fraudulent conveyance engineered by Schonfeld to assist his client in making sure there was "nothing left" for creditors, that the *Runs Like Butter* case settled almost *immediately* after plaintiff's counsel filed the letter above. *See* 19-cv-2432, Dkt. 52.

But GateGuard has not yet had an opportunity to obtain discovery from Schonfeld and is entitled to know whether Goldmont is being represented by counsel who participated in the structuring of a fraudulent conveyance, which would clearly constitute conduct "contrary to [the] Rules" of Professional Conduct. RPC 3.4(6). GateGuard will call Schonfeld in the separate *GateGuard v. MVI* case currently in arbitration, *GateGuard, Inc. vs. MVI Systems, LLC, Samuel Taub, MVI Industries, Inc.*, Case Number: 01-22-0000-8890 (the "GateGuard MVI Arbitration").[6] If the evidence confirms Schoenfeld's role in structuring a fraudulent conveyance, he would not only be disqualified from that case as well as the matter pending before this Court, but would also be subject to discipline. It would be highly inefficient and a waste of judicial resources for the parties to continue briefing Defendants' summary judgment motion when counsel for Defendants will be simultaneously distracted with a separate case involving serious allegations against him and where he would remain subject to disqualification or disciplinary action. The more prudent course for the Court would be to grant

---

[6] Goldmont moved successfully to compel arbitration and the District Court stayed the federal court proceedings pending arbitration, thus retaining jurisdiction. *See* 19-cv-2472, Dkt. 171 at 19

Plaintiff's motion for disqualification and order Goldmont and the Goldenbergs to secure separate counsel now so that summary judgment briefing and trial can proceed without disruption.[7]

      **C.**      **Schonfeld's Prior Representation of One of GateGuard's Principal Competitors with Interests Adverse to Goldmont Creates a Conflict of Interest that Could Taint the Proceedings Before This Court.**

      While Schonfeld and his firm apparently do not currently represent MVI Systems, LLC, MVI Industries, LLC or Samuel Taub (MVI's CEO), it is not disputed that Schonfeld previously represented the two MVI entities in an asset transaction that presents the "badges of fraud" associated with a fraudulent conveyance. *See Runs Like Butter*, Dkts. 45-47. [8] As noted above, on August 8, 2021, Taub threatened to "liquidate" his company if a creditor did not accept his terms. *See supra* at 11. Less than two weeks later, on August 21, 2021, MVI Systems, Inc. (the original defendant in Goldmont's claim for theft of intellectual property) assigned its principal asset to an affiliate, MVI Industries, LLC. *See GateGuard v. MVI Systems, LLC et al.*, 19-cv-2472, Dkt 104-13. The judge in *Runs Like Butter* immediately recognized that the timing of Taub's statement and the subsequent transfer of the MVI Systems' intellectual property created a serious problem for the defendants. *See Runs Like*

---

[7] Schonfeld also appears to have a practice of filing aggressive, intimidating lawsuits, then stonewalling (even to the point of incurring sanctions) and abandoning the prosecution of his cases, suggesting a pattern of using litigation improperly as a weapon to intimidate, rather than a tool to resolve *bona fide* disputes. This appears to be the strategy in the outrageous case Schonfeld has filed on behalf of BCR and its affiliates against GateGuard, *see supra* at 5-6, with tactics similar to those used by BCR against one of its own personnel, Ada Medina. *See Big City Realty Management, Inc. v. Ada Medina*, 151040/2016, NYSCEF Doc. No. 76 (imposing sanctions) and Doc. No. 98 (indicating plaintiff has taken no action on the case since March, 2020).

[8] Schonfeld should be directed to provide an affidavit testifying to his current professional and familial relationship with the MVI entities and Taub. Plaintiff has been notified that Schonfeld is related to Taub, a fact that would heighten the concern of Schonfeld's allegiance to Taub and MVI at the expense of Goldmont. Quainton Decl. at ¶ 6.

*Butter v. MVI Systems, LLC et al.*, 19-cv-2432, Dkt. 33 at 3:14-15; 4:2-6 ; 4:20-22. Although

Taub attempted to minimize the nature of his apparently fraudulent conduct by stating that the

successor company would remain on the hook for the liabilities of the original defendant,

plaintiff amended its complaint to state a cause of action for fraudulent conveyance and

pressed the issue with a subpoena directed at Koss & Schonfield, who structured the

conveyance for Taub and the MVI entities. *See Runs Like Butter*, 19-cv-2432, Dkts. 45, 47.

GateGuard is currently in arbitration proceedings with MVI in which the same fraudulent

conveyance is at issue and Schonfeld will necessarily be a fact witness. *Id.*, Dkt. 33 4:17. This

situation creates an insurmountable conflict of interest that threatens the integrity of the

pending trial before this Court.

Already, Koss & Schonfield's conflict of interest in representing an intercom vendor

(MVI) with interests potentially adverse to an intercom purchaser (Goldmont) has led it to take

borderline sanctionable conduct during the deposition of Abi Goldenberg that occurred not

long after the alleged fraudulent conveyance. *See* Dkt. 85 at 2 (endorsing letter of counsel for

GateGuard describing Koss & Schonfield's instructions to Abi Goldenberg not to answer

questions relating to "vendors" and stating "it is improper (and sanctionable) to instruct a

witness not to answer on the grounds of relevance unless the Court has issued an order

addressing the relevance issue"). But the fraudulent conveyance issue is of such importance to

Schonfeld's standing as an attorney that he is likely to prioritize his defense of this claim over

the defense of Goldmont, even should the two matters conflict (if a settlement is possible in the

MVI arbitration, for example, but would not provide a complete release against Schonfeld).

In addition, Schonfeld's prior representation of MVI and its current representation of

Goldmont raise troubling issues independently of the fraudulent conveyance. *See U.S. Football

League v. Nat'l Football League*, 605 F. Supp. 1448, 1461 (S.D.N.Y. 1985). The lengths to

15

which Koss & Schonfeld has gone – engaging in what the Court expressly described as sanctionable conduct – to direct its client not to disclose information relating to vendors such as MVI is striking. In fact, the record suggests that Schonfeld failed to inform Goldmont that its former client had installed an intercom on a Goldmont property. *See* Quainton Decl., Ex. D, 344:19-22. Again, this indicates that Schonfeld has loyalties to MVI that conflict with its duties to Goldmont. Even the appearance of impropriety can undermine the integrity of the trial.

The specter of trial counsel with potential conflicting loyalties to a competitor of Plaintiff's thus taints the proceedings at requires the disqualification of Simcha Schonfeld and the firm of Koss & Schonfeld, LLP.

> ### D. Koss & Schoenfeld, LLP, As a Small Seven-Person Firm, Cannot "Ring Fence" Schoenfeld from Other Attorneys at the Firm.

In large firms, the problems created by the knowledge, conflicts or conduct of a particular attorney can sometimes be resolved short of disqualification by "ring fencing" the attorney concerned or quarantining him behind a "Chinese Wall." *LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 258–59 (7th Cir.1983). However, even in large firms such measures are not always effective. *See Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. at 1087 (disqualifying entire 1,000 lawyer firm based on RPC violation of single attorney). In small firms, the ring fencing of an attorney is more challenging. *Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 308 (E.D.N.Y. 2010) (circumstances of a small firm may be such that a court will not be able to determine whether the proposed or implemented screening measures will be effective). Here, Schoenfeld cannot be separated from his small seven-attorney firm. *See* http://kandsllp.com/. It is inconceivable that Schoenfeld did not discuss a criminal matter as to which he was interviewed by the Government with his co-fournder, Allen Koss. It is also not plausible that Schoenfeld did not

discuss an important real estate client with Mr. Koss, who is a specialist in commercial real estate. *See* http://kandsllp.com/attorneys/. Schoenfeld has also no doubt discussed both the Goldmont and MVI cases with two other senior K&S attorneys on the case, Jacob Schindelhim and Shira Moya, leaving only three other attorneys at the firm, who appear too junior to represent the firm without partner supervision. It is simply impossible for Koss & Schonfeld to continue their representation of Defendants in this case if Schonfeld is disqualified, as he must be.

## <u>CONCLUSION</u>

For the reasons stated above, the Court should disqualify Simcha Schoenfeld and his firm, Koss & Schonfeld LLP, from representing Defendants Goldmont Realty Corp., Leon Goldenberg and Abi Goldenberg. Defendants should be directed to secure new counsel and the summary judgement briefing schedule should be adjusted to afford replacement counsel time to review the file in this matter.

Dated:     New York, New York,
           September 1, 2022

> **QUAINTON LAW, PLLC**
>
> By: <u>Eden P. Quainton</u>
> *Attorneys for Plaintiff*
> *GateGuard Inc.*
> 2 Park Ave., 20th Floor
> New York, New York 10016
> (212) 419-0575
> Email: equainton@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 1, 2022, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for Goldmont Realty Corp., Leon Goldenberg and Abi Goldenberg.

Dated: September 1, 2022

/s/ *Eden P. Quainton*_____
QUAINTON LAW, PLLC
*Attorneys for Plaintiff*
*GateGuard, Inc.*
2 Park Avenue, 20th Floor
New York, New York 10016
(212) 419-0575
Email: equainton@gmail.com

18