UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GATEGUARD, INC.                                          :
                                                                      <u>OPINION AND ORDER</u>
                                    Plaintiffs,        :        20 Civ. 01609 (VEC) (GWG)

          -v.-                                                 :

GOLDMONT REALTY CORP.,                          :
LEON GOLDENBERG, and
ABI GOLDENBERG,                                      :

                                    Defendants.       :
---------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

          Plaintiff GateGuard Inc. ("GateGuard") has brought suit against defendants Goldmont

Realty Corp. ("Goldmont"), Leon Goldenberg ("Leon"), and Abi Goldenberg ("Abi")

(collectively, "defendants") for breach of contract and fraud.  <u>See</u> Summons and Verified

Complaint (reproduced in Notice of Removal, filed Feb. 24, 2020 (Docket # 1) ("Not. Remov."),

Ex. A) ("Compl."); Summons and Verified First Amended Complaint (reproduced in Not.

Remov., Ex. C) ("FAC").  The breach of contract claims are the subject of an arbitration

agreement, so only the fraud claims remain.  <u>See</u> <u>GateGuard, Inc. v. Goldenberg</u>, 585 F. Supp. 3d

391, 394 (S.D.N.Y. 2022).  GateGuard now moves to disqualify defendants' counsel, Simcha D.

Schonfeld, and his law firm, Koss & Schonfeld, LLP, from representing defendants in the instant

action.[1]  For the following reasons, that motion is denied.

---

[1] <u>See</u> Motion to Disqualify Counsel, filed Sept. 1, 2022 (Docket # 126); Declaration of
Eden P. Quainton, filed Sept. 1, 2022 (Docket # 127) ("Quainton Decl."); Memorandum of Law
in Support, filed Sept. 1, 2022 (Docket # 128) ("Pl. Mem."); Memorandum of Law in
Opposition, filed Sept. 30, 2022 (Docket # 134) ("Def. Opp."); Reply Memorandum of Law,
filed Oct. 24, 2022 (Docket # 138) ("Pl. Reply"); Declaration of Eden P. Quainton, filed Oct. 24,
2022 (Docket # 139) ("Quainton Reply Decl.").

I.      BACKGROUND

GateGuard filed this case in New York County Supreme Court, and defendants removed it to the Southern District of New York on the basis of diversity of citizenship.  See Not. Remov. Schonfeld filed the notice of removal on behalf of the defendants and he has continued to represent defendants in this case.  Not. Remov. at 4.  In brief, the complaint alleges that GateGuard sells intercom devices and related services for apartment buildings in New York and elsewhere.  FAC ¶ 1.  For its breach of contract claim, now in arbitration, GateGuard alleges that defendant Goldmont breached an alleged agreement to pay GateGuard $369,000 in return for GateGuard having provided 41 intercom devices to Goldmont.  FAC ¶¶ 3-5, 9.  For its fraud claim, GateGuard alleges that defendants Leon and Abi Goldenberg fraudulently represented to GateGuard Chief Executive Officer Ari Teman that they would invest at least $1,000,000 in GateGuard, that Teman incurred costs in reliance on false representations that amounted to fraud, and that the Goldenbergs never made the investment.  FAC. ¶¶ 20-24, 42-52.

Separately, GateGuard has been engaged in arbitration with MVI Systems, LLC, and MVI Industries, LLC, (collectively, "MVI") over GateGuard's allegations of intellectual property theft against MVI.  Pl. Mem. at 13.  GateGuard claims that Schonfeld was an attorney for the MVI entities and structured a "conveyance" that GateGuard alleges to be fraudulent.  Id. at 1, 6, 12-14.  GateGuard anticipates that "Schonfeld will necessarily be a fact witness" in this arbitration and alleges that Schonfeld's loyalties to the MVI entities and his own self-interest conflict with his duties to defendants here.  Id. at 15.

Teman was recently convicted of bank fraud in an unrelated matter, and GateGuard alleges that his conviction will be the subject of testimony at trial for its claims in this case.  Pl. Mem. at 1.

II.    LEGAL STANDARD

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" U.S. v. Prevezon Holdings Ltd., 839 F.3d 227, 241 (2d Cir. 2016) (quoting Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). A court is thus permitted to "disqualif[y] . . . an attorney in order to forestall violation of ethical principles." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990). However, "motions to disqualify opposing counsel are disfavored in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." Capponi v. Murphy, 772 F. Supp. 2d 457, 471 (S.D.N.Y. 2009) (citations and internal quotation marks omitted). Thus, "the party seeking disqualification must meet a heavy burden of proof in order to prevail." Gormin v. Hubregsen, 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (citation and internal quotation marks omitted). Disciplinary rules "merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc., 409 F.3d at 132. Rather, "[d]isqualification is only warranted in the rare circumstance where an attorney's conduct poses a significant risk of trial taint." Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 231 (S.D.N.Y.2010) (internal quotation marks and citation omitted). Nonetheless, "any doubt is to be resolved in favor of disqualification." Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir.1975) (citation omitted); accord CQS ABS Master Fund Ltd. v. MBIA Inc., 2013 WL 3270322, at *8 (S.D.N.Y. June 24, 2013).

Here, GateGuard seeks disqualification on two separate bases. One basis is that Schonfeld will be required to serve as a witness. Pl. Mem. at 6-11. The other relates to GateGuard's assertion that disqualification is warranted because of Schonfeld's violations of the

rules requiring "Fairness to Opposing Party and Counsel," Pl. Mem. at 11, and conflicts of

interest, Pl. Mem. at 14.  We discuss each in turn.

III.    <u>ATTORNEY-WITNESS</u>

Rule 3.7(a) of New York's Rules of Professional Conduct addresses the situation where

an attorney may be called as a witness and provides:

> A lawyer shall not act as an advocate before a tribunal in a matter in which the
> lawyer is likely to be a witness on a significant issue of fact unless:
> (1) the testimony relates solely to an uncontested issue;
> (2) the testimony relates solely to the nature and value of legal services
> rendered in the matter;
> (3) disqualification of the lawyer would work substantial hardship on the
> client;
> (4) the testimony will relate solely to a matter of formality, and there is no
> reason to believe that substantial evidence will be offered in opposition to
> the testimony; or
> (5) the testimony is authorized by the tribunal.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.7(a).  This rule, commonly referred to the

"advocate-witness" or "attorney-witness" rule, is based upon concerns that:

> (1) the lawyer will appear to vouch for his own credibility, (2) the lawyer's
> testimony will put opposing counsel in a difficult position when he has to
> vigorously cross-examine his lawyer-adversary and seek to impeach his
> credibility, and (3) there may be an implication that the testifying attorney may be
> distorting the truth as a result of bias in favor of his client.

<u>Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers</u>, 378 F.3d 269, 282-83 (2d

Cir. 2004) (citation omitted).  Additionally, "when one individual assumes the role of both

advocate and witness it may so blur the line between argument and evidence that the jury's

ability to find facts is undermined."  <u>Id.</u> (citation, internal quotation marks, and alterations

omitted).

As the Second Circuit has noted:

> Rule 3.7 lends itself to opportunistic abuse.  "Because courts must guard against
> the tactical use of motions to disqualify counsel, they are subject to fairly strict
> scrutiny, particularly motions" under the witness-advocate rule.  <u>Lamborn v.</u>

> Dittmer, 873 F.2d 522, 531 (2d Cir.1989).  The movant, therefore, "bears the
> burden of demonstrating specifically how and as to what issues in the case the
> prejudice may occur and that the likelihood of prejudice occurring [to the witness-
> advocate's client] is substantial."  Id.  "Prejudice" in this context means testimony
> that is "sufficiently adverse to the factual assertions or account of events offered
> on behalf of the client, such that the bar or the client might have an interest in the
> lawyer's independence in discrediting that testimony."  Id.

Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009).  Consistent with these

principles, disqualification is "required only when it is likely that the testimony to be given by

[counsel] is necessary."  Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (citation omitted);

accord Wachovia Bank, Nat'l Ass'n v. Focus Kyle Grp., LLC, 896 F.Supp.2d 330, 332

(S.D.N.Y.2012) (citations omitted) ("For purposes of considering a disqualification motion, the

Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but

rather whether trial of the case will in fact require his testimony."); Fenn & Fenn, Inc. v.

MacQueen, 1989 WL 58041, at *8 (S.D.N.Y. May 19, 1989) ("[N]o disqualification should

occur until it is apparent the attorney's testimony is itself admissible and necessary.") (citation

omitted).  The moving party must meet a "heavy burden" to show the attorney's testimony is

necessary in the case.  John Wiley & Sons, Inc. v. Book Dog Books, LLC, 126 F. Supp. 3d 413,

419 (S.D.N.Y. 2015) (quoting Gormin, 2009 WL 508269, at *2).  "Courts determine whether an

attorney's testimony is necessary by considering, among other things, the significance of the

matters as to which the attorney's testimony is sought, the weight of the testimony, and the

availability of other evidence."  Capital 7 Funding v. Wingfield Capital Corp., 2020 WL

2836757, at *18 (E.D.N.Y. May 29, 2020) (citations and punctuation omitted).

Here, GateGuard anticipates that in an eventual trial, GateGuard CEO Teman will testify

and defendants will attempt to impeach him with evidence of his criminal conviction.  Pl. Mem.

at 6-7.  Apparently, Teman "was convicted of bank fraud with respect to three real estate entities,

whose principals are well[]known to" Schonfeld.  Pl. Mem. at 1.  While GateGuard's logic is not readily discernable, it appears that GateGuard will require Schonfeld's testimony to somehow impugn the validity of Teman's criminal conviction.  Id. at 1, 7-9.  According to GateGuard, Schonfeld talked to an Assistant United States Attorney regarding Teman, and Teman "intends to call Schonfeld as a necessary witness to testify as to the nature of these communications and whether Schonfeld omitted to communicate material exculpatory information to the Government in order to help secure Teman's conviction."  Id. at 1; accord id. at 7.  Teman also asserts that it would call Schonfeld as to "his role in structuring a transaction to avoid liability."  Id. at 1; accord id. at 10.  Apparently, this testimony would be elicited in an effort to show that Schonfeld had a "motive for lying about Teman."  Id. at 10.

      While plaintiff's arguments elude easy comprehension, the request to seek disqualification based on the need for Schonfeld's testimony is frivolous.  We start with Schonfeld's contact with the United States Attorney's Office.  Assuming arguendo that Teman would testify and that defendants would impeach him with evidence of his criminal conviction — as is permitted by Fed. R. Evid. 609 — GateGuard provides no explanation of why extrinsic evidence that would impugn that conviction, through Schonfeld's disclosure of "exculpatory evidence," would be admissible.  Inasmuch as Fed. R. Civ. P. 608(b) does not even permit a witness to be called to testify to extrinsic evidence in order to impeach another witness, the Rules of Evidence certainly do not permit a witness to be called in order to question the validity of a criminal conviction being used for impeachment purposes under Rule 609.  GateGuard of course points to no case that ever permitted such testimony.  Thus, GateGuard has failed to prove that Schonfeld's testimony as to exculpatory evidence on this point is "necessary."

The request fails separately because Schonfeld provides no evidence that Schonfeld had exculpatory evidence — or indeed any information as to what transpired between Schonfeld and the United States Attorney's Office and thus it is impossible to determine if whatever evidence might be elicited is even admissible or necessary.  Discovery has closed in this matter, and GateGuard never sought to depose Schonfeld.

GateGuard also appears to argue that it would call Schonfeld to testify in its case in chief for purposes other than impugning Teman's conviction.  Pl. Mem. at 11; Pl. Reply at 3-4.  To understand this argument, we begin by noting that GateGuard's fraud claim alleges that Abi and Leon Goldenberg told Teman that they would make an investment of at least $1 million in GateGuard if GateGuard would "undertake specific business activities including hiring staff, contracting for product manufacturing and office space, and promotional activities."  FAC ¶¶ 20-21.  GateGuard alleges that the Goldenbergs' representations regarding the investment were "known to be false . . . when made."  Id. ¶ 23.  In the instant motion, GateGuard now argues that Leon and Abi expressed a desire — on some unstated date after the fraud was perpetrated — for Teman to go to jail as a way of resolving the civil claims in this lawsuit.  Pl. Reply at 2-3.  GateGuard's basis for this argument appears to be an affirmative answer given by Leon Goldenberg at his deposition in response to a question asking if his "hope" was that Teman's incarceration would "potentially resolve" this lawsuit.  See id.; Extract from Leon Goldenberg Deposition, annexed as Ex. A to Quainton Reply Decl. (Docket # 139-1).  GateGuard appears to contend that Schonfeld spoke with the U.S. Attorney's Office at about that time to effectuate his clients' desire for Teman to go to jail.  Pl. Reply at 2-3.  What is the connection between all of this and the instant lawsuit?  According to GateGuard, the Goldenbergs' desire for Teman to go to jail bears on the Goldenbergs' earlier "fraudulent intent" with respect to their promise to

Teman to make an investment in GateGuard.  Pl. Reply at 3, <u>accord</u> Pl. Reply at 11.  But instead of relying on the Goldenbergs' testimony for this point, they claim to require Schonfeld's testimony as to his conversations with the U.S. Attorney's Office to prove the Goldenbergs' fraudulent intent.

This convoluted argument is also frivolous.  Most obviously, GateGuard contends it already has the testimony of one of the defendants explicitly admitting that he desired that Teman go to jail so that the lawsuit would be resolved.  Assuming, <u>arguendo</u>, that such testimony would be admissible, the attorney's testimony on the exact same point is not "necessary."  <u>See generally</u> <u>Finkel v. Frattarelli Bros.</u>, 740 F. Supp. 2d 368, 375 (E.D.N.Y. 2010) ("Where counsel's testimony would be merely cumulative of testimony provided by others, disqualification is not appropriate.").  Second, the Court sees no connection between this desire on the defendants' part and whether the defendants actually had fraudulent intent when they engaged in the fraud as to their investment in GateGuard.  Third, there is no explanation as to what testimony Schonfeld would actually give.  Thus, it would be entirely speculative to assume that any testimony is even relevant to plaintiff's case.  Finally, there is no argument, let alone showing, that Schonfeld's testimony on this point would be prejudicial to Schonfeld's clients, the Goldenbergs --- a requirement for disqualification under the attorney-witness rule.  <u>See</u> <u>Murray</u>, 583 F.3d at 178.

GateGuard identifies one other area of testimony it seeks from Schonfeld: specifically, "his role in structuring a transaction to avoid liability."  Pl. Mem. at 1.  This claim is fleshed out slightly in GateGuard's reply brief, Pl. Reply at 9-10, but still is completely devoid of any evidence showing that Schonfeld actually engaged in any improper action.  Additionally, GateGuard has (a) failed to show that, even if some proper restructuring took place, Schonfeld is

the only witness who could testify to such matters, and  (b) has failed to offer any comprehensible argument as to why such evidence would be admissible under Fed. R. Evid. 404(b).

In the end, all of GateGuard's bases to claim Schonfeld's testimony is necessary rely on a farrago of suspicions and faulty leaps of logic.  GateGuard has thus failed to meet its "heavy burden" of showing that Schonfeld must be disqualified based on any need for his testimony. John Wiley & Sons, Inc., 126 F. Supp. 3d at 419.

## IV.   SCHONFELD'S ACTIONS AS AN ATTORNEY AND HIS REPRESENTATION OF CLIENTS

Plaintiff also seeks disqualification based on claims that Schonfeld somehow acted unethically with respect to certain matters that are not the subject of the fraud claim in this case. The factual basis for these allegations are almost impossible to discern.  In the fact section of its main brief, GateGuard claims that a company called "MVI Systems LLC" ("MVI") began misappropriating GateGuard's technology.  Pl. Mem. at 4.  GateGuard instituted a suit against that MVI.  Id.  This caused certain customers to back out of their obligations to GateGuard, leading Teman to take certain actions to seek payment from these customers for which Teman was later convicted of bank fraud.  Id. at 5.  Some other property owners then sued GateGuard for illegally installing GateGuard devices.  Id. at 5-6.  What does all this have to do with Schonfeld?  We are told Schonfeld is "at the center of [a] web of accusations and counteraccusations" relating to these matters.  Id. at 6.  Few clear specifics are given, however. Apparently Schonfeld represents the property owners, who are suing GateGuard in what are characterized as "baseless attacks."  Id.  Schonfeld also "served as counsel to MVI Systems LLC in structuring [an] alleged fraudulent conveyance" about which we are told only that it was designed to "frustrate the claim of creditors in two separate lawsuits" against MVI.  Id. (referring

to id. at 1).  Also underlying this claim are the assertions that Schonfeld was in contact with prosecutors of Teman at the U.S. Attorney's office and was "possibly coordinating with witnesses in the case."  Id.

While the above "web of accusations," as GateGuard itself aptly puts it, id., are set forth in the fact section of GateGuard's brief, the argument section of its brief focuses on two seemingly narrower allegations.  One allegation is that Schonfeld purportedly had a role in "structuring the alleged fraudulent conveyance between MVI Systems LLC and MVI Industries, LLC."  Pl. Mem. at 12.  The other relates to Schonfeld's representation of "One of Gateguard's Principal Competitors."  Id. at 14.  We address each next.

A.  Structuring of Transactions.

As noted, a violation of an ethical rule alone is not sufficient to merit disqualification. GSI Com. Sols., Inc. v. BabyCenter, L.L.C., 618 F.3d 204, 209 (2d Cir. 2010) ("Although the American Bar Association ('ABA') and state disciplinary codes provide valuable guidance, a violation of those rules may not warrant disqualification.").  "[W]ith rare exceptions disqualification has been ordered only in essentially two kinds of cases:" (1) where an attorney's concurrent representation of clients "undermines the court's confidence in the vigor of the attorney's representation of his client" or (2) "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation, . . . thus giving his present client an unfair advantage."  Bd. of Educ. of City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979) (citations and internal quotations omitted). "Outside of these two situations, courts 'have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct.'"  Guan v. Long Island Bus. Inst., Inc., 2017 WL 11703847, at *9 (E.D.N.Y. Jan. 24, 2017), report and recommendation adopted,

10

2017 WL 11703846 (E.D.N.Y. Mar. 6, 2017) (quoting Tradewinds Airlines, Inc. v. Soros, 2009 WL 1321695, at *4 (S.D.N.Y. May 12, 2009)).

GateGuard argues that the Court must disqualify Schonfeld because "in structuring the alleged fraudulent conveyance between MVI Systems, LLC and MVI Industries, LLC" he has committed a breach of Rule 3.4(a)(6) sufficient to merit disqualification.  Pl. Mem. at 12.  This rule states that: "A lawyer shall not . . . knowingly engage in other illegal conduct or conduct contrary to these Rules."  N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule 3.4(a)(6). Essentially, GateGuard argues that the head of MVI Systems, LLC, sought to liquidate the company to avoid liability and transfer its assets to an entity named MVI Industries, LLC.  Pl. Mem. 12-13.  Without citing any evidence, GateGuard insinuates that Schonfeld, who represented MVI in transactional work, was responsible for this structuring, which GateGuard deems fraudulent.  Id.

GateGuard provides zero evidence of any illegal conduct by Schonfeld.  It is reduced to arguing that it has "not yet had an opportunity to obtain discovery from Schonfeld and is entitled to know whether Goldmont is being represented by counsel who participated in the structuring of a fraudulent conveyance."  Pl. Mem. at 13.  This argument, however, ignores the fact that discovery is over in this case and that GateGuard never sought discovery from Schonfeld.  In any event, the argument itself amounts to an implicit concession that GateGuard has no evidence to back up its claim of an ethical violation.[2]

 GateGuard does point to two ongoing proceedings involving MVI that it claims will demonstrate disqualifying conduct on the part of Schonfeld.  Pl. Reply at 5-6.  In one case,

---

[2] GateGuard contends that it will develop evidence of a fraudulent conveyance in its arbitration with MVI.  Pl. Reply at 6. But the hope that it will obtain evidence in the future does nothing to shore up the complete lack of evidence now.

entitled <u>Runs Like Butter, Inc. v. MVI Systems, LLC</u>, and brought against MVI, GateGuard points to an instance where the judge in that case remarked that "if something has happened to the assets of the defendants then clearly we'll need an amended complaint for fraudulent conveyance." <u>Id.</u> at 5. GateGuard notes that the case settled shortly thereafter. Pl. Mem. at 13; Pl. Reply at 5-6. This apparently is meant by GateGuard to constitute proof that Schonfeld engaged in some sort of illegal conduct and has testimony to offer about it. The other case is <u>GateGuard, Inc. v. MVI Systems, LLC, MVI Industries, LLC and Samuel Taub</u>. <u>See</u> Pl. Reply at 6. GateGuard says it has the "identical issue" in this arbitration but does not explain what that issue is and what evidence it has that Schonfeld did anything improper. <u>Id.</u> at 6.

As is clear from a mere recounting of this argument, GateGuard has failed to provide any evidence that Schonfeld violated any Rules of Professional Conduct, and GateGuard certainly has not met its high burden to show disqualification. GateGuard has not even provided any evidence that Schonfeld was involved in any transfer relating to MVI and has pointed to no non-speculative evidence of fraud. As one case has noted, "merely raising the possibility that wrongdoing could be uncovered does not create a conflict." <u>Craig v. City of New York</u>, 2022 WL 2238451, at *7 (E.D.N.Y. June 22, 2022). And even if such a showing had been made, there is no coherent explanation of why allowing Goldmont to continue with Schonfeld as its attorney runs any risk of tainting the trial of this matter. The connections drawn by GateGuard between this alleged conduct and the issues in this case are virtually non-existent.

    B. <u>Schonfeld's Purported Representation of an Adverse Party</u>

GateGuard's other argument in support of disqualification on the basis of Schonfeld's alleged violation of ethical rules is even more frivolous than previous ones, if that is possible. GateGuard argues that Schonfeld's representation of MVI Systems, LLC, renders him and his

firm disqualified to represent defendants because MVI Systems is an "intercom vendor (MVI)

with interests potentially adverse to an intercom purchaser (Goldmont)." Pl. Mem. 14-15. It

argues that this representation has led to Schonfeld having "loyalties to MVI that conflict with its

duties to Goldmont." Pl. Mem. at 16. The effort to explain this alleged conflicting loyalty is

incomprehensible. Plaintiff seemingly asserts that positions taken in this lawsuit by Schonfeld or

members of his firm must be driven by the firm's representation of MVI and that Schonfeld is

"likely to prioritize his defense of [the MVI] claim over the defense of Goldmont." Pl. Mem. at

15. Again, GateGuard's argument relies entirely on conjecture, and thus lacks any evidentiary

weight. The Court will not dignify it with further analysis except to say that that GateGuard has

provided zero non-speculative evidence of any divided loyalties. Obviously, this case is not one

of the "rare[]" cases where the plaintiff has met its "heavy" burden of proving that Schonfeld's

representation of Goldmont "poses a significant risk of trial taint." Glueck v. Jonathan Logan,

Inc., 653 F.2d 748-49 (2d Cir. 1981); see also W.T. Grant Co. v. Haines, 531 F.2d 671, 677 (2d

Cir. 1976) ("The business of the court is to dispose of litigation and not to act as a general

overseer of the ethics of those who practice here unless the questioned behavior taints the trial of

the cause before it.").

    For what it is worth, GateGuard's brief, see Pl. Mem. at 15, cites to a single case in

support this aspect of its argument: U.S. Football League v. Nat'l Football League, 605 F. Supp.

1448, 1461 (S.D.N.Y. 1985). Not surprisingly, that case is irrelevant to the issues raised here

inasmuch as it involved a motion by a plaintiff to disqualify the defendant's counsel because the

defendant's counsel had represented plaintiff's predecessor. Id. at 1456. The case thus analyzed

whether there was a substantial relationship between the two representations and whether any

confidential information was in the hands of the attorneys as a result of the prior representation.

Id. at 1457-68.  Here, of course, Schonfeld never represented GateGuard, and thus no such analysis is required.

VII.   CONCLUSION

For the foregoing reasons, there is no basis on which to disqualify  Schonfeld and thus no basis on which to disqualify his firm, Koss & Schonfeld.  Thus, GateGuard's motion to disqualify (Docket # 126) is denied. On or before November 30, 2022, the parties shall file a letter to Judge Caproni containing a proposed briefing schedule for any summary judgment motions.[3]

SO ORDERED.

Dated: November 21, 2022
          New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[3] In their opposition, defendants request sanctions under 28 U.S.C. § 1927.  Def. Opp. at 16.  The Court does not address this request because it was not made as part of a motion filed by defendants.  Also, while defendants have certainly demonstrated the motion's frivolousness (a matter that could have been the subject of a sanctions motion pursuant to Fed. R. Civ. P. 11 if properly made), they have not attempted to explain why they meet the much higher burden required to obtain sanctions under 28 U.S.C. § 1927.