Jan 31, 2019

To: **Yoseff Shachor**
 Yoseff.Shachor@gmail.com


Dear Yoseff,

Re: <u>**Employment Offer Letter**</u>

We are pleased to offer you a position as Operations Manager at Friend or Fraud, Inc. (the "**Company**"). We are extremely excited about the prospect of having you join our team and look forward to working with you to make the Company a great success.

This letter will specify certain terms and conditions which will apply to your engagement with the Company.

Commencing as of Feb 12, 2019, you will be employment by the Company in a full time position (the "**Employment Scope**"). You shall devote your full business time, attention, skill, and best efforts to the performance of your duties under this Offer Letter and shall not engage in any other business or occupation during the term of your employment, including, without limitation, any activity that (x) conflicts with the interests of the Company or any subsidiary of the Company, (y) interferes with the proper and efficient performance of your duties for the Company, or (z) interferes with your exercise of judgment in the Company's best interests.

You will report to the Chief Executive Officer of the Company or such other person designated by the Company from time to time. You will work from the Company's offices in NYC. You may be permitted to work remotely from time to time, upon prior coordination with the Company's Chief Executive Officer. In addition, the nature of your position may require extensive travel.

Your annual base salary will be US$90,000. The annual base salary will be paid twice a month, in accordance with the Company's standard payroll practices and procedures. All forms of compensation referred to in this Offer Letter are subject to reduction to reflect applicable withholding and payroll taxes.

You will be eligible to receive 0.25% equity in the Company, which shall vest over three years in accordance with the terms and conditions of the 2015 Equity Incentive Plan.

During your employment, you will be eligible to participate in the standard benefits plans offered to similarly situated employees by the Company from time to time, if any, subject to plan terms and generally applicable Company policies. The benefit plans will apply only to your base salary.

You shall also be entitled to the same number of holidays, vacation days, and sick days, as well as any other benefits, in each case as are generally allowed to similarly situated employees of the Company in accordance with the Company policy as in effect from time to time.  Nothing contained herein shall be construed to limit the Company's ability to amend, suspend, or terminate any employee benefit plan or policy at any time without providing you notice, and the right to do so is expressly reserved.

Like all Company employees, you will be required, as a condition of your employment with the Company, to sign the Company's Non-Disclosure and Invention Assignment Agreement, which is attached hereto as <u>Schedule B</u>.

1

**GG00204**

Case 1:20-cv-01609-VEC-GWG    Document 154-19    Filed 03/17/23    Page 2 of 11

Normal working hours are from 8 am. to 6 pm, Monday through Friday. As an exempt salaried employee, you will be expected to work additional hours as required by the nature of your work assignments.

Your employment with us will be "at-will." This means that either you or we may terminate the employment relationship at any time with or without cause.

Any employment policies and other materials provided to you by the Company ("**Employment Materials**") will not change your at-will employment status and are merely meant to provide additional information relating to your job. You agree to comply with all such Employment Materials.

By countersigning this Offer Letter, you represent and warrant to the Company that—

(a)  you are entering into this Offer Letter, including its Schedules, voluntarily and that your employment hereunder and compliance with the terms and conditions hereof and other Schedules hereto will not conflict with or result in the breach by you of any agreement to which you are a party or by which you may be bound; and

(b)  you have not violated, and in connection with your employment with the Company will not violate, any non-solicitation, non-competition, or other similar covenant or agreement of a prior employer by which you are or may be bound.

This Offer Letter and the Employment Materials contain all of the terms of your employment with the Company and supersede any prior understandings or agreements, whether oral or written, between you and the Company. This Offer Letter agreement may not be amended or modified except by an express written agreement signed by you and the Chief Executive Officer of the Company. The terms of this Offer Letter and the resolution of any disputes hereunder shall be governed by New York State law.

Please countersign this Offer Letter and return it to the Company by email. If the Company does not receive your countersigned Offer Letter, without any changes, modifications or revisions, by 11:50 pm EST on Oct 1, 2017, this Offer Letter shall be null and void.


Sincerely,

Ari Teman, CEO
Friend or Fraud, Inc.


Agreed and accepted as of:

_____
YOSEFF SHACHOR                    February____,13____ 2019

2

**GG00205**

<u>SCHEDULE B</u>

**NON-DISCLOSURE AND INVENTION ASSIGNMENT AGREEMENT**

I, Yoseff Shachor, am engaged as an employee of Friend or Fraud, Inc., a Delaware corporation (the "**Company**").  I am making this agreement in consideration of my engagement as an employee of the Company.

**1.      Representations and Warranties; Covenants.**

**1.1      No Conflict with any Other Agreement or Obligation**.  I represent and warrant that I am not bound by any agreement or arrangement with or duty to any other person that would conflict with this agreement.  Except for any obligation described on <u>Exhibit A</u> attached to this agreement, I do not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that I learned of during any previous engagement, employment or association nor have I had any obligation to assign contributions or inventions of any kind to any other person.  I shall not disclose to the Company or induce the Company to use any proprietary, trade secret or confidential information or material belonging to others.

**1.2      No Infringement of Third Party Intellectual Property Rights.** I represent and warrant that the Inventions (as defined in Section 3 below) will not infringe any patent, copyright, trade secret or other proprietary right of any third party.

**1.3      Open Source.** I represent and warrant that the Inventions will not include any open source software, except with the prior written consent of the Company.  If open source software is included in the Inventions, I agree to maintain for the Company a regularly updated record of all such open source software.

**2.      Confidential Information.**

**2.1      Definition of Confidential Information.**  "**Confidential Information**" means all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that the Company is obligated to treat as confidential or proprietary, and any other technical, operating, financial and other business information that has commercial value, relating to the Company, its business, potential business, operations or finances, or the business of the Company's affiliates or customers, of which I may have acquired or developed knowledge or of which I may in the future acquire or develop knowledge of during my work for the Company, or from my colleagues while working for the Company.

In the event I am compelled or requested to release any confidential information by any court or law enforcement or government or regulatory authority or subpoena or discovery request in pending litigation (or actual litigation) I will first provide the company with written notice in order to allow the company an opportunity to obtain a protective order.

**2.2      Protection of Confidential Information**.  I will use the Confidential Information only in the performance of my duties for the Company.  I will not disclose the Confidential Information, directly or indirectly, at any time during or after my employment with the Company except to persons authorized by the Company to receive this information.  I will not use the Confidential Information, directly or indirectly, at any time during or after my employment with the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company.  I will take all action

3

**GG00206**

reasonably necessary to protect the Confidential Information from being disclosed to anyone other than persons authorized by the Company.

**2.3** **Return of Confidential Information.** When my employment with the Company terminates, I will immediately return or destroy all materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium) containing, summarizing, abstracting or in any way relating to the Confidential Information. At the time I return these materials I will acknowledge to the Company, in writing and under oath, in the form attached as Exhibit C, that I have complied with the terms of this agreement.

3.     **Inventions.**

**3.1** **Definition of Inventions**. The term "**Inventions**" means:

(a)     contributions and inventions, discoveries, creations, developments, improvements, works of authorship and ideas (whether or not they are patentable or copyrightable) of any kind that are conceived, created, developed or reduced to practice by me, alone or with others, while I am employed by the Company that are either: (i) conceived during regular working hours or at my place of work, whether located at Company, affiliate or customer facilities, or at my own facilities; or (ii) regardless of whether they are conceived or made during regular working hours or at my place of work, are directly or indirectly related to the Company's business or potential business, result from tasks assigned to me by the Company, or are conceived or made with the use of the Company's resources, facilities or materials; and

(b)     any and all patents, patent applications, copyrights, trade secrets, trademarks, domain names and other intellectual property rights, worldwide, with respect to any of the foregoing.

(c)     the term "Inventions" specifically excludes any inventions I developed entirely on my own time without using any Company equipment, supplies, facilities or trade secret information, unless (i) the invention related at the time of conception or reduction to practice of the invention to (A) the Company's business, or (B) the Company's actual or demonstrably anticipated research or development, or (ii) the invention results from any work performed by me for the Company.

**3.2** **All Inventions are Exclusively the Property of the Company**. (a) I will promptly disclose all Inventions, in full detail, to persons authorized by the Company. I will not disclose any Invention to anyone other than persons authorized by the Company, without the Company's express prior written instruction to do so.

(b)     All Inventions will be deemed "work made for hire" as that term is used in the U.S. Copyright Act, and belong solely to the Company from conception. I hereby expressly disclaim all interest in all Inventions. To the extent that title to any Invention or any materials comprising or including any Invention is found not be a "work made for hire" as a matter of law, I hereby irrevocably assign to the Company all of my right, title and interest to that Invention. At any time during or after my employment with the Company that the Company requests, I will sign whatever written documents of assignment are necessary to formally evidence my irrevocable assignment to the Company of any Invention.

(c)     At all times during or after my employment with the Company I will assist the Company in obtaining, maintaining and renewing patent, copyright, trademark and other appropriate protection for any Invention, in the United States and in any other country, at the Company's expense.

**3.3** **Excluded Information**. On Exhibit B attached to this agreement I have included a complete list, with non confidential descriptions, of any inventions, ideas, reports and other creative works

**GG00207**

that I made or conceived prior to my employment with the Company (collectively, the "**Excluded Information**").  I intend that the items on that list and only the items on that list shall be excluded from the restrictions set forth in this agreement.  I will not assert any right, title or interest in or to any Invention or claim that I made, conceived or acquired any Invention before my employment with the Company unless I have specifically identified that Invention on the attached Exhibit B.  In the event that any Excluded Information is incorporated into any Invention, I hereby grant Company a perpetual, worldwide, royalty free, non-exclusive license to use and reproduce the Excluded Information for commercial, internal business and all other purposes.

**4.        Non-Solicitation; Non-Compete.** Non-Solicitation; Non-Compete.  In view of the competitive nature of the Company's industry, in order to protect the legitimate business interests of the Company and in consideration of my employment and the Company's willingness to provide to me access to its Confidential Information, I agree that during theperiod beginning on the initial date of my employment with the Company and ending one (1) year after termination of my employment with the Company for any reason, I will not directly or indirectly, whether as owner, sole proprietor, partner, shareholder, director, member, consultant, agent, founder, co-venture partner or otherwise, (i) do anything within the New York metropolitan area, or any other metropolitan area within which the Company or its customers operate,  to divert or attempt to divert from the Company any business of any kind, including, without limitation, providing products or services that are within the scope of or otherwise competitive with the products and services provided by the Company, (ii) provide products or services to or solicit or interfere with, in any geographic area, any of the Company's customers, clients, members, business partners or suppliers, (iii) solicit, induce, recruit or encourage, in any geographic area, any person engaged or employed by the Company to terminate his or her employment or engagement, or (iv) engage, invest or participate in any business, within the New York metropolitan area, or any other metropolitan area within which the Company or its customers operate,  that is similar to those which the Company has created, has under development or are the subject of active planning from time to time during my employment with the Company, provided, however, that I may own, as a passive investor, publicly-traded securities of any corporation that competes with the business of the Company so long as such securities do not, in the aggregate, constitute more than three percent (3%) of any class of outstanding securities of such corporations.  I acknowledge that these non-compete and non-solicitation terms are reasonable in duration and scope and, if enforced, would not impose undue hardship on me.

**5.        Miscellaneous**

**5.1        Interpretation and Scope of this Agreement.**  Each provision of this agreement shall be interpreted on its own.  If any provision is held to be unenforceable as written, it shall be enforced to the fullest extent permitted under applicable law.  In the event that one or more of the provisions contained in this agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, then it shall (a) be enforced to the fullest extent permitted under applicable law, and (b) such unenforceability shall not affect any other provision of this agreement, but this agreement shall then be construed as if such unenforceable portion(s) had never been contained herein.

**5.2        Remedies.**  I understand and agree that if I breach or threaten to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm and that monetary damages would be an inadequate remedy.  I agree that, in the event of my breach or threatened breach of any of the provisions of this agreement, the Company shall have the right to seek relief from a court to restrain me (on a temporary, preliminary and permanent basis) from using or disclosing Company Confidential Information or Inventions or otherwise violating the provisions of this agreement, and that any such restraint shall be in addition to (and not instead of) any and all other remedies to which the Company shall be entitled, including money damages.  The Company shall not be required to post a bond to secure against an imprudently granted injunction (again, whether temporary, preliminary or permanent).

**GG00208**

**5.3** **Governing Law; Jury Waiver; Consent to Jurisdiction.** This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the state of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof. For all matters arising directly or indirectly from this Agreement ("**Agreement Matters**"), I hereby (a) irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the state of New York that is located in the county of New York (and of the appropriate appellate courts from any of the foregoing) in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding ("**Proceeding**") directly or indirectly arising out of or relating to any Agreement Matter; provided that a party to this Agreement shall be entitled to enforce an order or judgment of any such court in any United States or foreign court having jurisdiction over the other party, (b) irrevocably waive, to the fullest extent permitted by law, any objection that I may now or later have to the laying of the venue of any such Proceeding in any such court or that any such Proceeding which is brought in any such court has been brought in an inconvenient forum, (c) irrevocably waive, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (d) irrevocably waive, to the fullest extent permitted by law, any right to a trial by jury in connection with a Proceeding, (e) covenant that I will not, directly or indirectly, commence any Proceeding other than in such courts and (f) agree that service of any summons, complaint, notice or other process relating to such Proceeding may be effected in the manner provided for the giving of notice as set forth in this agreement.

**5.4** **Entire Agreement; Amendments and Waivers.** This agreement (including the exhibits attached hereto) represents the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and can be amended, supplemented, or changed and any provision hereof can be waived, only by written instrument signed by the party against whom enforcement of any such amendment, supplement, change or waiver is sought.

**5.5** **Captions**. The captions and section headings in this agreement are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this agreement.

**5.6** **Counterparts; Binding Effect.** This agreement may be executed in counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same agreement. Except as otherwise expressly provided herein, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

**5.7** **Notices**. All notices and other communications given or made pursuant to this agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications to me shall be sent to the respective parties at their address as set forth on the signature page of this agreement, or in the Company's records, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section and all notices to the Company shall be provided to the Company's headquarters, attention President.

[*Signature Page Follows*]

6

**GG00209**

By signing this agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this agreement and understand its terms including that it places significant restrictions on me.

EMPLOYEE:

By:

Name:    Yoseff Shachor

Address:    792 Columbus Ave, New York, NY 10025

Date:    February 13, 2019


Accepted by Company:

FRIEND OR FRAUD, INC.

By:

Name:    ARI TEMAN

Title:    PRESIDENT/CEO

Date:    November 22, 2018

7

**GG00210**

EXHIBIT A

**Obligations to Other Persons:**
[Securely attach additional pages if necessary]

_____

*[If this exhibit is left blank, the employee shall be deemed to represent that he/she does not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that he/she learned of during any previous engagement, employment or association nor has he/she had any obligation to assign contributions or inventions of any kind to any other person.]*

**GG00211**

EXHIBIT B

**Excluded Information:**
[Securely attach additional pages if necessary]

*[If this exhibit is left blank, the employee shall be deemed to represent that he/she does not have any Excluded Information.]*

9

**GG00212**

EXHIBIT C
**Form of Acknowledgment**

My employment with Friend or Fraud, Inc. (the "**Company**") is now terminated.  I have reviewed my Non-Disclosure and Invention Assignment Agreement with the Company, dated _____.\_\_\_\_ (the "**Agreement**"), and I swear, under oath, that:

• I have complied and will continue to comply with all of the provisions of the Agreement.

• I understand that all of the Company's materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium), whether or not they contain Confidential Information (as that phrase is defined in the Agreement), are and remain the property of the Company.  I have delivered to authorized Company personnel, or have destroyed, all of those documents and all other Company materials in my possession.

_____
Signature

_____
Name (please print clearly)

_____

_____
Address

STATE OF _____          )
                                    ) ss.:
COUNTY OF _____)

BE IT REMEMBERED, that on this \_\_\_\_\_ day of _____, \_\_\_\_\_, before me, the subscriber, a notary public of the State of _____, personally appeared _____, who being by me duly sworn on his oath, deposed and made proof to my satisfaction that (s)he is the person named in the within instrument, to whom I first made known the contents thereof, and thereupon (s)he acknowledged that (s)he signed, sealed and delivered the same as his/her voluntary act and deed for the uses and purposes therein expressed.

**GG00213**

---------- Forwarded message ---------
From: Ari Teman <ari@teman.com>
Date: Tue, Mar 12, 2019 at 2:45 PM
Subject: Re: sponsored by Teman!
To: Dina Burcat <burcat@yu.edu>


Sales Executive

On Tue, Mar 12, 2019, 11:38 AM Dina Burcat <burcat@yu.edu> wrote:

> What's Levi's position?
>
>
>
>
> Dina Burcat
>
> Director of Alumni Professional Development

GG00214