Case 1:20-cv-01609-VEC-GWG Document 154-31 Filed 02/09/23 Page 0 of 10 9

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

----------------------------------------------------------------------x

GATEGUARD, INC.,

        *Plaintiff*,

    v.

GOLDMONT REALTY CORP.,
LEON GOLDENBERG, ABI
GOLDENBERG,

        *Defendants*.

----------------------------------------------------------------------x

Index No. 657197/2019

**VERIFIED FIRST
AMENDED COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiff GateGuard, Inc. ("GateGuard" or "Plaintiff"), by its attorneys FisherBroyles, LLP, alleges as follows:

### INTRODUCTION

1. GateGuard is a startup company that provides intercom devices and related services to hundreds of multi-tenant apartment buildings in New York and throughout the U.S.

2. Defendant Goldmont Realty Corp. ("Goldmont") is a prominent real-estate owner and management company based in Brooklyn, NY. Goldmont's CEO, Defendant Leon Goldenberg ("L. Goldenberg") is a high-profile investor, community activist, and media personality.

3. On August 30, 2019, Goldmont and GateGuard entered into an Equipment Purchase Agreement (the "Agreement"), whereby Goldmont purchased 41 GateGuard intercom devices at a substantial discount from GateGuard's standard pricing.

4. The 41 purchased devices were delivered to Goldmont on October 29, 2019.

5. Pursuant to the Agreement, Goldmont must now make a purchase payment of $369,000.00 to GateGuard.

Case 1:20-cv-01609-VEC-GWG Document 154-31 Filed 02/09/23 Page 3 of 10

6. Over several phone calls and emails regarding the payment due to GateGuard, Goldmont's counsel asserted that "*the terms [of the Agreement] are irrelevant*."

7. Goldmont's counsel further referenced Goldmont and L. Goldenberg's prominence in an attempt to intimidate GateGuard – a startup company with limited resources – from collecting the agreed-upon payment.

8. Specifically, Goldmont's counsel noted that **Goldmont and L. Goldenberg "have lots of money"** and would **"drag this [dispute] out forever,"** sooner than pay GateGuard the amounts due under the Agreement.

9. Goldmont's failure to pay GateGuard the amounts due, in addition to the intimidation tactics it has employed to dissuade GateGuard from collecting, have caused significant harm and disruption to GateGuard's business.

## THE PARTIES

10. GateGuard is a Delaware corporation having a place of business at 5 Penn Plaza #2372, New York, NY 10001.

11. Upon information and belief, Goldmont Realty Corp. ("Goldmont") is a domestic corporation having a principal place of business at 1360 East 14th Street Suite 101, Brooklyn, NY 11230.

12. Leon Goldenberg ("L. Goldenberg") is an individual residing at 1255 E 27th St., Brooklyn, NY 11210. Upon information and belief, L. Goldenberg is the Chief Executive Officer of Goldmont.

13. Abi Goldenberg ("A. Goldenberg") is an individual who, upon information and belief, resides in Brooklyn, NY and has a mailing address at 1360 East 14th Street Suite 101,

2

Case 1:20-cv-01609-VEC-GWG Document 154-31 Filed 02/09/23 Page 4 of 9

Brooklyn, NY 11230. Upon information and belief, A. Goldenberg is employed in an executive capacity in "Asset Management" at Goldmont.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over Defendants pursuant to CPLR § 301 because each of them resides and conducts business in the State of New York.

15. Venue is proper in New York County pursuant to CPLR § 503(a) because at least one of the parties currently resides in New York County and a substantial part of the events giving rise to Plaintiffs' claims occurred in New York County.

## FACTUAL BACKGROUND

16. In 2018, A. Goldenberg engaged GateGuard to provide intercom devices and related services at various properties owned and/or managed by Goldmont.

17. In early 2019, L. Goldenberg and A. Goldenberg engaged in numerous communications and meetings with GateGuard's CEO, Ari Teman ("Teman").

18. During these communications and meetings, L. Goldenberg, A. Goldenberg, and Teman discussed and negotiated an investment into GateGuard by L. Goldenberg and A. Goldenberg.

19. On or about March 7, 2019, Teman met with L. Goldenberg and A. Goldenberg at 3877 Flatlands Ave. in Brooklyn, NY.

20. At this meeting, both L. Goldenberg and A. Goldenberg represented to Teman that each of them would participate in making an investment into GateGuard, such investment totaling no less than $1 million dollars.

3

21. On or about March 7, 2019, both L. Goldenberg and A. Goldenberg further instructed Teman to undertake specific business activities on behalf of GateGuard, including hiring staff, contracting for product manufacturing and office space, and promotional activities.

22. In reasonable reliance on L. Goldenberg and A. Goldenberg's representations, GateGuard undertook the specific business activities referenced above, incurring substantial expense in doing so.

23. However, upon information and belief, the foregoing representations by L. Goldenberg and A. Goldenberg were false and were known to be false by both L. Goldenberg and A. Goldenberg when made.

24. Rather, upon information and belief, L. Goldenberg and A. Goldenberg each made their respective false representations with the intent to cause GateGuard to undertake the referenced activities and incur the referenced expenses in order to gain further leverage against GateGuard in subsequent business negotiations.

25. Subsequently, in mid-2019, A. Goldenberg negotiated on behalf of Goldmont for the purchase of additional intercom devices from GateGuard.

26. On August 30, 2019, Goldmont entered into a written Equipment Purchase Agreement (the "Agreement") with GateGuard.

27. Pursuant to the Agreement, Goldmont agreed to purchase 41 GateGuard "AI" Intercom Devices (the "Devices").

28. The Agreement specifies that "[t]he total purchase price to GOLDMONT of the 41 Devices is $369,000."

29. The Agreement further allows Goldmont to make payments towards the total purchase price to a third-party financer ("TPF"). If Goldmont elects to veto the involvement of

4

the TPF, the Agreement requires Goldmont to pay GateGuard the total purchase price ($369,000.00) within 30 days of delivery of the Devices to Goldmont.

30. On October 29, 2019, the 41 Devices were delivered to Goldmont's offices at 1360 East 14th Street Suite 101, Brooklyn, NY 11230.

31. On November 19, 2019, counsel for Goldmont contacted GateGuard's counsel by phone and conveyed that Goldmont had elected to veto the involvement of the TPF under the Agreement.

32. When confronted with the fact that, by vetoing the TPF, Goldmont was obligated to pay $369,000.00 to GateGuard, counsel for Goldmont asserted that "***the terms are irrelevant***."

33. Counsel for Goldmont further noted that "Goldmont's a large company. They have a lot of money and… can drag this out forever" in litigation, whereas "[GateGuard] does not."

34. As 30 days have elapsed since the delivery of the Devices, Goldmont owes GateGuard $369,000.00 under the agreement.

35. To date, Goldmont has failed and refused to make the payment to GateGuard.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT
### (Against Defendant Goldmont)

36. GateGuard realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 35 above.

37. At all relevant times, GateGuard had a valid and enforceable contract with Goldmont.

38. GateGuard fully performed under the contract and all conditions precedent to enforcement of the contract have been satisfied.

5

39.	By refusing to make a payment to GateGuard in the amount of $369,000.00, Goldmont has materially breached its contractual obligations to GateGuard.

40.	GateGuard has been damaged as a result of Goldmont's breach of contract.


**SECOND CAUSE OF ACTION - FRAUD**
**(Against Defendants L. Goldenberg and A. Goldenberg)**

41.	GateGuard realleges and incorporates by reference each and every allegation set forth in paragraphs 1 through 40 above.

42.	Defendant L. Goldenberg represented to Teman, GateGuard's CEO, that he (L. Goldenberg) would participate in making a substantial financial investment into GateGuard, such investment totaling no less than $1 million dollars.

43.	Defendant A. Goldenberg also represented to Teman that he (A. Goldenberg) would participate in making a substantial financial investment into GateGuard, such investment totaling no less than $1 million dollars.

44.	Both L. Goldenberg and A. Goldenberg further instructed Teman that GateGuard should undertake specific business activities including hiring staff, contracting for product manufacturing and office space, and promotional activities.

45.	Upon information and belief, the foregoing representations by L. Goldenberg were false and were known to be false by L. Goldenberg when made.

46.	Upon information and belief, the foregoing representations by A. Goldenberg were false and were known to be false by A. Goldenberg when made.

47.	Upon information and belief, L. Goldenberg made the foregoing false representations to Teman with intent to induce GateGuard's reliance on such representations, including by causing GateGuard to undertake the specific business activities referenced above.

6

48.     Upon information and belief, A. Goldenberg made the foregoing false representations to Teman with intent to induce GateGuard's reliance on such representations, including by causing GateGuard to undertake the specific business activities referenced above.

49.     In reasonable reliance upon L. Goldenberg's representations, GateGuard undertook the specific business activities referenced above, incurring substantial expense in doing so.

50.     In reasonable reliance upon A. Goldenberg's representations, GateGuard undertook the specific business activities referenced above, incurring substantial expense in doing so.

51.     GateGuard would not have undertaken the referenced activities, nor incurred their associated expenses, but for its reliance on Defendant L. Goldenberg and Defendant A. Goldenberg's material misrepresentations.

52.     As a direct and foreseeable result of the foregoing, GateGuard sustained damages in an amount to be proven at trial, for which Defendant L. Goldenberg and Defendant A. Goldenberg are jointly and severally liable.

**WHEREFORE** Plaintiff demands judgment against Defendants as follows:

A.      On the First Cause of Action, judgment against Defendant Goldmont, awarding Plaintiff damages in the amount to be determined at trial, but comprised of no less than $369,000.00, with interest thereon; punitive damages; the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees; incidental damages and consequential damages; and such other and further relief as the Court may deem proper and just.

7

Case 1:20-cv-01660-VEC-GWG Document 15-31 Filed 02/09/23 Page 9 of 9

B.      On the Second Cause of Action, judgment against Defendants L. Goldenberg and A. Goldenberg, awarding Plaintiff damages in the amount to be determined at trial, but comprised of direct and consequential damages, with interest thereon; punitive damages; the costs and disbursements incurred in connection with this action, including reasonable attorneys' fees; and such other and further relief as the Court may deem proper and just.

RESPECTFULLY SUBMITTED,

New York, NY
February 1, 2020

/s/ Ariel Reinitz
Ariel Reinitz
FISHERBROYLES, LLP
445 Park Avenue, Ninth Floor
New York, NY 10022
(646)494-6909
Ariel.Reinitz@FisherBroyles.com
*Attorneys for Plaintiff*

8

## VERIFICATION

ARI TEMAN hereby affirms, deposes, and says:

1.      I am CEO of GateGuard, Inc., Plaintiffs in this action.

2.      I have read the forgoing Verified First Amended Complaint and know the contents thereof. Based on my personal knowledge, together with the information reasonably available to me in the ordinary course of business, I hereby verify that the contents of the Verified Complaint are true, except those statements made upon information and belief, which, to the best of my knowledge, information, and belief, are also true.

February 1, 2020

State of Virginia
County of Fairfax

_____
Ari Teman

SWORN TO AND SUBSCRIBED before
Me on February 1, 2020   by  Ari Teman


LAKISHA R HOWARD

REGISTRATION NUMBER
7706227
COMMISSION EXPIRES
DECEMBER 31, 2020

_____
Notary Public

Printed Name:   Lakisha R Howard

My Commission Expires:  12/31/2020

Notarized online using audio-video communication

9