UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GATEGUARD, INC.,

                          *Plaintiff,*

GOLDMONT REALTY CORP.,
LEON GOLDENBERG, ABI GOLDENBERG,

                          *Defendants*
---------------------------------------------------------X

Civil Case No.: 1:20-cv-01609
(VEC)(GWG)


**DEFENDANTS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFF'S
MEMORANDUM OF LAW IN OPPOSITION THERETO**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………iii

PRELIMINARY STATEMENT……………………………………………………………1

RESPONSE TO COUNTERSTATEMENT OF FACTS ............................................................ 2

ARGUMENT……………………………………………………………………….……..3

    I.    THE STATEMENTS SET FORTH IN DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS ARE DEEMED ADMITTED BY PLAINTIFF . …………………………………………………….................3

    II.  DEFENDANTS SUSTAINED THEIR BURDEN AND DEMONSTRATED THE ABSENCE OF A TRIABLE ISSUE OF FACT ..............................……….……... 4

        A.    *There is no genuine issue of material fact as to Abi Goldenberg* .............. 4

        B.    *There is no genuine issue of material fact as to material misrepresentations* ……...............................……………....……… 7

            1.   GateGuard lacks standing ................................................................. 7
            2.   The alleged promise is not actionable ................................................7
            3.   The Court need not weigh the credibility of any witness ................... 8
            4.   Scienter is not relevant ........................................................................ 8

        C.    *Any reliance by plaintiff on an alleged agreement / promise would have been unreasonable* ........................................................................ 8

        D.    *Plaintiff concedes that it suffered no damages* ........................................ 10

CONCLUSION……………………………………………………………………...…10

## TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 106 S. Ct. 2505 (1986) ........................................................................... 7

*Giannullo v. City of New York*,
322 F.3d 139, 140 (2d Cir. 2003) .................................................................................. 4

*Konteye v. N.Y.C. Dep't of Educ.*,
2019 U.S. Dist. LEXIS 62794 (S.D.N.Y. Apr. 10, 2019) .............................................. 8

*Mallis v. Bankers Trust Co.*,
615 F.2d 68, 80-81 (2d Cir. 1980) ................................................................................ 9

*McChriston v. Diversified Consultants, Inc.*,
2019 US Dist LEXIS 97157, at *6 (SDNY June 7, 2019, No. 18-CV-185 (VEC) (BCM)) ......... 4

*Murray v. Xerox Corp.*,
811 F.2d 118, 121 (2d Cir. 1987) .................................................................................. 7

*Shah v. Helen Hayes Hosp.*,
252 F. App'x 364, 366 (2d Cir. 2007) ...........................................................................
6

*Wright v. Ernst & Young LLP*,
152 F.3d 169, 178 (2d Cir. 1998) .................................................................................. 6

RULES

S.D.N.Y Local Rule 56.1(c) ...................................................................................... 2, 4

## PRELIMINARY STATEMENT

Defendants LEON GOLDENBERG ("Leon"), and ABI GOLDENBERG ("Abi"; Leon and Abi referred to collectively as "Defendants"), by and through their attorneys, Koss & Schonfeld, LLP, respectfully submit this memorandum of law in further support of their motion for summary judgment and in reply to the opposition filed by Plaintiff.

In support of their motion, Defendants cited to the pleadings and testimony of Plaintiff's own witness, establishing their entitlement to summary judgment as a matter of law. The opening brief was deliberately specific and targeted, avoiding ancillary and unnecessary arguments, and raising only matters relevant to the limited issues before this Court. Plaintiff's brief in opposition is a collection of careless errors in substance and process, a hodgepodge of disjointed statements and opaque arguments that are, at times, difficult to decipher. For example, Plaintiff refers to the movants by the wrong names, makes allegations that are demonstrably false, references documents and exhibits that do not exist, cites to testimony never offered and advances arguments that lack merit. Plaintiff also alternates between referring to the alleged investment as an "agreement" a "representation" a "misrepresentation" and a "promise" each of which is materially significant and separate from the others, and none of which is true.

Perhaps most puzzling of all is Plaintiff's opening argument, which states repeatedly that the undersigned "willfully failed" (Memo[1] at page 1) and "utterly failed" (Memo at page 8) to file a Rule 56.1 Statement of Undisputed Facts. This is false. The Rule 56.1 Statement of Undisputed Facts was filed together with the motion, as required, and is Docket #148.

The evidence establishes that neither Leon nor Abi ever reached an agreement with GateGuard whereby they would invest the sum of $1 million. The evidence further demonstrates

---

[1] References to "Memo" are to Plaintiff's Memorandum of Law in opposition.

that GateGuard incurred no damages relating to whatever agreement / representation or promise it may have unjustifiably perceived to have occurred. Try as it may, Plaintiff simply cannot escape its pleadings and testimony. The arguments set forth in Plaintiff Memorandum of Law in Opposition will be addressed in the order that they were made.

## RESPONSE TO COUNTERSTATEMENT OF FACTS

Plaintiff's brief contains what it terms a "counterstatement of facts". Plaintiff did not, however, respond to the Rule 56.1 Statement of Undisputed Facts[2] and, as such, each and every statement set forth therein is deemed admitted. S.D.N.Y Local Rule 56.1(c). Anything set forth in the "counterstatement of facts" that is contrary to the admitted and undisputed facts, must be discounted. The following are responses only to those portions of the "counterstatement of facts" that are germane[3] to this motion.

Plaintiff states that "Plaintiff *is* wholly owned by Friend or Fraud, Inc. ("FFI"), which *is* in turn principally owned by Ari Teman" (Memo at page 2) (emphasis added). Plaintiff cites to Teman's Declaration[4] where he states, at ⁋ 2 that "GateGuard *is* wholly owned by FFI" and at ⁋ 3 that "I *own* approximately 97% of FFI" (emphasis added). Each of these statements is made in the present tense and is, as such, irrelevant. The structure of GateGuard's ownership as it exists today is not relevant. Moreover, in his deposition, Teman testified that FFI had other investors

---

[2] Plaintiff's failure to respond to the Rule 56.1 Statement of Undisputed Facts is especially curious insofar as counsel did file a Declaration four different times (see Docket #s 151-154) and certainly could have included a response in at least one of those filings.

[3] By way of illustration, the undersigned will not address ancillary matters such as the contract claims subject to arbitration, how many buildings Goldmont operates and whether Leon is a "prominent" businessman.

[4] The Declaration contains only Teman"s typewritten name and not a formal electronic or handwritten signature, nor is it notarized.

(Ex. F at 21:25-23:1). There has been no evidence or testimony indicating that any of the FFI investors were aware of, consented to or approved of the alleged agreement to invest in FFI and dilute their shares.

Page 4 of Plaintiff's brief states that "[t]here was never any dispute that, as a matter of economic substance, any investment would be made into GateGuard" and cites to "Leon Dep.[5] 116". Nothing on page 116 of Leon Goldenberg's deposition states anything of the sort.  Page 4 of Plaintiff's brief also states that GateGuard undertook various activities apparently on reliance upon a "representation" made at a December 26, 2018 meeting. The brief is silent as to what this "representation" is referring to. Moreover, the implication of this assertion is directly contracted by ¶¶ 19-20 of the Amended Complaint, wherein Plaintiff alleged that it was at a meeting on March 7, 2019 (and not in December of the previous year) that an agreement was reached.

On page 6 of its brief, Plaintiff states that "with no warning, on March 13, Leon informed Teman that the deal with the larger group of investors had fallen through" and cited to Exhibit BB at bates #000212. That document does not exist. Exhibit BB ends at bates #000169[6]. The brief is also silent as to who the "larger group" was, what "the deal" was and, most importantly, how this is relevant to the claims before this Court.

## ARGUMENT

## I.    THE STATEMENTS SET FORTH IN DEFENDANTS' RULE 56.1 STATEMENT OF UNDISPUTED FACTS ARE DEEMED ADMITTED BY PLAINTIFF.

In perhaps the most puzzling section of Plaintiff's brief, it argues as it very first argument

---

[5] This is presumably a reference to what is elsewhere referred to as Exhibit C to the Declaration of Plaintiff's counsel.

[6] References to non-existent documents or bates numbers recure throughout the brief, starting from the very first Exhibit – A – which references bates "GG_00015", a number that is nowhere in the exhibit.

that by failing to file a Rule 56.1 statement, "Defendants have utterly failed to comply with their obligations under the Local Rules and the Individual Practice Rules and their motion must be denied for this reason" (Memo at page 8). Yet the Rule 56.1 Statement, *was* filed, together with all of the underlying motion papers, and appears as Docket entry 148. Leaving aside how Plaintiff could possibly make this argument, its failure to respond to the Rule 56.1 statement renders all of the statements set forth therein admitted as a matter of law pursuant to S.D.N.Y Local Rule 56.1(c)

In *McChriston v. Diversified Consultants, Inc.*, 2019 US Dist LEXIS 97157, at *6 (SDNY June 7, 2019, No. 18-CV-185 (VEC) (BCM)), Your Honor was faced with a scenario comparable to the one here and held that "the uncontroverted paragraph is deemed admitted" *citing* Local Civ. R. 56.1(c); *and citing Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Here, as in *McChriston*, Plaintiff failed to address, let alone "specifically controvert" a single statement set forth in the Rule 56.1 Statement. As such, each of the statements set forth therein is deemed admitted.

## II.   DEFENDANTS SUSTAINED THEIR BURDEN AND DEMONSTRATED THE ABSENCE OF A TRIABLE ISSUE OF FACT.

*A.   There is no genuine issue of material fact as to Abi Goldenberg.*

In § II(A) of its Argument, Plaintiff states that "there is a genuine issue of material fact as to Ari [sic] Goldenberger's [sic][7] participation in the alleged $1 million investment" (Memo at page 9). In their opening brief, Defendants cited the testimony of Ari Teman, where he stated

---

[7] On page 10 of the brief, Plaintiff refers to "Ari Goldenberg" and "Abi Goldenberg" and on page 1 of the brief, Plaintiff refers to "Abi Goldenberger". On page 12 of its brief, Plaintiff refers to both "Abi" and "Ari" interchangeably in the same sentence. It is presumed that Ari Goldenberger, Ari Goldenberg, Abi Goldenberger, Abi Goldenberg and, in some instances, Ari, are all referring to defendant Abi Goldenberg.

unequivocally that the investment agreement was made with Leon Goldenberg only and not with Abi Goldenberg. That fact is also deemed admitted, as set forth in ¶ 7 of the Rule 56.1 Statement. Plaintiff has not responded to this point, nor demonstrated that the testimony was withdrawn or otherwise misstated.

In opposition to the motion, Plaintiff seems to argue that despite the clear language of ¶ 43 of the Complaint and the unambiguous testimony of Teman, Teman "believed the investment was a collective Goldenberg affair" and that "Teman almost always viewed Abi and Leon as a unit" (Memo at pages 10-11). Plaintiff seems unclear of its own position. If, and to the extent that Plaintiff is arguing that Abi agreed to invest in GateGuard, that is definitively disposed of in the deposition testimony of Teman as noted in the opening brief, as well as in ¶ 7 of the Rule 56.1 Statement, which is deemed admitted. If, and to the extent that Plaintiff is arguing that Abi has liability based on the expectation that Abi would be "discussing matters with his father, making suggestions, imposing conditions and following through operationally" as argued on page 12 of its brief, this claim, made for the first time in opposition to a summary judgment is procedurally and substantively defective.

The allegations in the Complaint against Abi are identical to those against Leon. See Exhibit A at ¶¶ 42-52. Now, for the first time in this action, Plaintiff appears[8] to be claiming that the claims against Leon and Abi are completely different, advancing a new theory with respect to Abi. "A party may not use his or her opposition to a dispositive motion as a means to amend the

---

[8] To be sure, here, as was the case in the motion to disqualify the undersigned as counsel, Plaintiff's arguments are "not readily discernable" and "elude easy comprehension" (Exhibit G at page 6). Plaintiff argues that it (1) "believed the investment was a collective Goldenberg affair" (Memo at page 10); (2) "viewed Abi and Leon as a unit" (Memo at page 11); (3) believed that the Goldenberg "family" was going to invest the $1 million (Memo at pages 11, 12); and (4) believed Abi would "participate" in the investment in unspecified ways but "of course, that Leon would actually write the $1 million check is not in dispute" (Memo at page 10).

complaint." *Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). The new theory is therefore defective as a matter of law.

The new theory of liability fails substantively as well. Teman testified to a series of meetings that Abi participated in. These included meetings at Leon Goldenberg's office, at 1 Penn Plaza, 5 Penn Plaza, and at the offices of Omni Insurance (Ex. F at 54:17-55:24). Participants included Jerry Weisman, Ely Pasternack and Yechiel Bromberg (Ex. F at 64:5-65:15; 68:15-69:23). As such, to the extent that Plaintiff is now arguing that Abi has liability for fraud because he failed to "participate" in seeking to secure investors, that statement is false as confirmed by the testimony of Teman. In fact, in ‖ 7 of his unsigned Declaration, Teman states that he "understood that Abi would put GateGuard in touch with additional investors Leon [sic] and Abi's circle" which is precisely what he did, according to Teman's deposition testimony. In ‖ 8 of his unsigned Declaration, Teman states that he understood that Abi would be acting as his liaison "with Leon and Goldmont[9] for the purposes of the family's[10] investment." The testimony cited in Plaintiff's own brief demonstrates that Abi did just that.

The claim that Abi agreed to fund any portion of the investment is belied by the testimony of Teman as stated in the opening brief. The claim, to the extent that it is even being made, that Abi has liability for fraud arising out of assurances by Abi that he would assist in attempting to procure investors (even if true) is improperly raised for the first time here and fails to meet a single element necessary to sustain a claim for fraud. Therefore, and for the reasons

---

[9] Goldmont has been dismissed from this case and there are no claims pending against Goldmont before this Court.

[10] Here, again, Plaintiff is ambiguous, if not altogether contradictory, on who the investor was supposed to be.

stated in the opening brief, the claims against Abi should be dismissed.

    B.   *There is no genuine issue of material fact as to material misrepresentations.*

    1.   <u>GateGuard lacks standing</u>.

Teman's testimony that the investment was to be made in non-party FFI is dispositive. In response, GateGuard argues - for the first time – that "the allegation is that a representation was made ***directly*** to GateGuard, through its CEO Teman, that an investment would be made for GateGuard's benefit through GateGuard's parent company, FFI" (Memo at page 14) (emphasis in the original). In support of this new theory of liability, Plaintiff cites to "Abi Dep., 243:23-25-244:1-4". The cited testimony says nothing about FFI whatsoever. At no time anywhere prior to its brief, has Plaintiff ever alleged, let alone established, that any defendant represented "that an investment would be made ... through GateGuard's parent company, FFI."

In response to the law cited in the opening brief, Plaintiff cites to a Chatauqua County court decision in 1979 that related to the rights of personal guarantors as against a lender, and whether they could raise claims of breach of contract and negligence. It is of no relevance here.

    2.   <u>The alleged promise is not actionable.</u>

Plaintiff argues that "[a]s long as Plaintiff *pleads* that the misrepresentation was knowingly made, a promissory misrepresentation is actionable as fraud" (Memo at page 17) (emphasis added). This action is far beyond the pleadings stage. Contrary to Plaintiff' argument, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Murray v. Xerox Corp*., 811 F.2d 118, 121 (2d Cir. 1987) *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986). Plaintiff's reliance on its pleadings is insufficient to create an issue of fact.

3. <u>The Court need not weigh the credibility of any witness</u>.

Defendants' position is based upon assuming the truth of the statements and testimony of the Plaintiff (not Defendants) cited in the opening brief. Moreover, the statements cited in Plaintiff's brief do not raise issues of fact. For example, Plaintiff writes that "Teman testified that Yeshiel [sic] Bromberg and Ely Pasternack had confirmed to him the Goldmont[11] commitment" (Memo at page 19). This is inadmissible hearsay, which does not create an issue of fact. *See Konteye v. N.Y.C. Dep't of Educ.*, 2019 U.S. Dist. LEXIS 62794 (S.D.N.Y. Apr. 10, 2019) ("A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment absent a showing that admissible evidence will be available at trial").

Plaintiff also cites testimony that Leon and Teman "shook hands" at the end of a meeting, as evidence of an unspecified agreement (Memo at page 19). Whether the parties shook hands is of no probative value and the veracity of that assertion need not be considered by the Court.

4. <u>Scienter is not relevant</u>.

Defendants established that there was no agreement, no misrepresentation and no fraud, nor any standing by GateGuard to sue on behalf of FFI. That being the case, scienter need not be considered. Stated more simply, since there was no fraud, there was by definition no scienter. It is impossible to prove (and illogical to posit) that having proven the absence of fraud, the movant must also prove the absence of scienter at the time that the fraud did *not* actually happen.

C. *Any reliance by plaintiff on an alleged agreement / promise would have been unreasonable.*

Plaintiff argues that its reliance on the [non-existent] agreement by Leon, or Leon and Abi, or the Goldenberg family, or Goldmont, to fund, was justifiable. What Plaintiff refers to as

---

[11] As noted, Goldmont has been dismissed from this case and there are no claims pending against Goldmont before this Court.

"minutiae" on page 23 of its brief, is in fact crucial. That is, Plaintiff would have this Court believe that it undertook significant actions based on an agreement (or promise?) that one or more Defendants would fund GateGuard or FFI, without a single term having been agreed to. Absent from the agreement (or promise?) were material terms such as when the new investor was required to fund; when it would receive a return on its capital and in what priority; what managerial rights the investor would have; whether the investment would accrue interest or be subject to a preferred return; whether the recipient was offering any security for the investment; whether the investor would be entitled to any rights of first refusal, and so on. Teman's admission that the existing FFI shareholders would suffer "a little bit" of dilution (Memo at page 23) confirms that those investors would have to be party to any agreement. At an absolute minimum, Teman, had "the means of knowing, by the means of ordinary intelligence" that a million-dollar investment in a twenty-five million dollar company with at least three other known shareholders, required a modicum of detail before being finalized. *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980).

Plaintiff also states – with no evidence – that there is nothing "unusual in the start-up world for investors to commit $500,000 or $1,000,000 on a handshake, *with the details to be worked out later*" (Memo at page 24) (emphasis added). First, Teman testified that GateGuard was incorporated in 2016 (Ex. F at 26:1-4). That means at the time of the alleged fraud, GateGuard had been in business for years and – with an alleged valuation of $25 million – could hardly be referred to as a startup. Second, if the "details were to be worked out later" a person of "ordinary intelligence" would surely understand that no deal had yet been finalized. Therefore, it is respectfully submitted that any reliance Plaintiff could possibly have had on any agreement or promise that could have possibly been made, would be unreasonable as a matter of law.

9

### D.  *Plaintiff concedes that it suffered no damages.*

In its brief, Plaintiff admits that "[m]ost of the damages suffered by GateGuard ... occurred *before* March 7 and were predicated on the reliance on the false promise made on December 26, 2018" (Memo at page 25) (emphasis in the original). ⁋ 11 of the Rule 56.1 statement states that "Teman testified that there was never a written investment agreement, the terms were never fully agreed to, and the damages alleged were not related to the fraud alleged." ⁋ 12 states that "Teman testified that the costliest expenditures, the hirings of two employees, took place on February 24, 2019, prior to the purported agreement that GateGuard alleges to have been reached with Leon."

As noted above, each of these statements is admitted by Plaintiff. Plaintiff, therefore, is estopped from arguing otherwise, and its contention that "Defendants [sic] argument is hobbled by their failure to prepare a Rule 56.1 Statement" is correct as to the impact of a failure to comply with Rule 56.1 but, ironically, should have been addressed inwards.

## CONCLUSION

In light of the forgoing, and for the reasons stated in the opening brief, Defendants respectfully submit that their motion for summary judgment should be granted in its entirety and that the Court grant such other and further relief as it deems just and proper.

Dated: New York, New York
        April 5, 2023

Respectfully submitted,

_____
Simcha D. Schonfeld, Esq.
**Koss & Schonfeld, LLP**
160 Broadway, 8ᵗʰ Floor
New York, NY 10038
Direct Dial: (212) 796-8916
*Attorneys for Defendants*

10