```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 05/04/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GATEGUARD INC.,

                Plaintiff,

-against-

GOLDMONT REALTY CORP., LEON
GOLDENBERG, ABI GOLDENBERG,

                Defendants.

20-CV-1609 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

      Plaintiff, a company that provides intercom devices, is suing real estate developers for allegedly inducing Plaintiff to spend resources on new staff, contracts, and advertising in reliance on a false representation that Defendants would invest at least $1 million in the company. *See generally* Am. Compl., Dkt. 1.[1] Defendants have moved for summary judgment. *See* Defs. Not. of Mot., Dkt. 146. For the following reasons, their motion is GRANTED.

## BACKGROUND[2]

      GateGuard, Inc. ("GateGuard") is a company that provides intercom devices. Rule 56.1 Counterstmt., Dkt. 160-4, ¶¶ 3, 5.[3] Ari Teman ("Teman") is GateGuard's CEO. Rule 56.1 Stmt., Dkt. 148, ¶ 4. Leon Goldenberg ("L. Goldenberg") is the CEO and President of the real

---

[1] Plaintiff's claim against Goldmont Realty Corp. ("Goldmont") for breach of a contract to purchase intercom devices was referred to arbitration. *See* Opinion & Order, Dkt. 101. "Defendants" in this opinion, therefore, refers solely to Leon Goldenberg and Abi Goldenberg.

[2] All facts described herein are undisputed unless otherwise stated.

[3] The Court notes that both parties submitted statements pursuant to Federal Rule of Civil Procedure 56.1 that fail to comply with the Undersigned's Individual Rules. According to Rule 4.H.ii.b of the Court's Individual Practices in Civil Cases, "[o]pposing parties must reproduce each entry in the moving party's 56.1 Statement and set out the opposing party's response directly beneath it. The response must state specifically what is admitted and what is disputed, as well as the basis for any dispute and citations to specific portions of the evidentiary record that supports the existence of a genuinely-disputed fact. The response may make additional factual allegations in paragraphs numbered consecutively to those of the moving party (i.e., do not begin re-numbering at 1)." Counsel are cautioned to pay attention to individual rules of practice and to comply with them.

1

estate development company Goldmont Realty Corp. ("Goldmont"). Rule 56.1 Counterstmt. ¶ 30. Abi Goldenberg ("A. Goldenberg") is L. Goldenberg's son. *Id.*[4]

At some point in 2018, A. Goldenberg and Teman began discussing the potential for GateGuard to provide intercom devices and related services to properties owned or managed by Goldmont. Rule 56.1 Stmt. ¶ 5; Rule 56.1 Counterstmt. ¶¶ 5, 31. Shortly afterwards, A. Goldenberg learned that Teman was seeking to raise $5 million in new capital for GateGuard. Rule 56.1 Counterstmt. ¶ 32; Rule 56.1 Reply, Dkt. 166, ¶ 32.

On December 26, 2018, Teman, L. Goldenberg, and A. Goldenberg met in person. Rule 56.1 Counterstmt. ¶ 33; Rule 56.1 Reply ¶ 33. The parties dispute what happened at the meeting. According to Plaintiff, L. Goldenberg promised to invest $1 million into GateGuard; the parties "sealed this commitment" with a handshake. Rule 56.1 Counterstmt. ¶ 36. Defendants maintain that the parties did not agree to anything during the meeting; Defendants acknowledge that the possibility of an investment was discussed. Rule 56.1 Reply ¶¶ 33, 36.

After that meeting, A. Goldenberg looked for other potential investors. Rule 56.1 Counterstmt. ¶ 63; Rule 56.1 Reply ¶ 63. On March 7, 2019, Teman met with L. Goldenberg, A. Goldenberg, and a group of potential investors the Goldenbergs had brought together to discuss an investment in GateGuard. Rule 56.1 Counterstmt. ¶¶ 44–46; Rule 56.1 Reply ¶¶ 44–46.

On March 13, 2019, L. Goldenberg informed Teman that the potential investors would not be investing in GateGuard. *See* Rule 56.1 Counterstmt. ¶ 49; Rule 56.1 Reply ¶ 49; Email,

---

[4] Because this case was removed on diversity grounds, *see* Notice of Removal, Dkt. 1, ¶¶ 17–18, and the parties initially submitted conflicting evidence regarding Plaintiff's principal place of business, the Court ordered the parties to clarify whether the Court has diversity jurisdiction, *see* Order. Dkt. 163. The Court concluded that it does. *See* Order, Dkt. 165.

Dkt. 154-29, at 000169. L. Goldenberg also informed Teman that he himself would "not be investing substantial money." Email, Dkt. 154-29, at 000169.

The parties dispute the extent to which GateGuard acted in reliance on Teman's understanding that Defendants would make an investment. According to Plaintiff, GateGuard, among other things, marketed free intercom systems to hundreds of new buildings with Defendants' "knowledge and tacit consent"; began an advertising campaign "on the back of" Defendants' "contemplated investment"; and had its parent company hire new employees to expand its business at L. Goldenberg's "insistence." Rule 56.1 Counterstmt. ¶ 54. According to Defendants, none of the evidence Plaintiff cites supports its version of events. Rule 56 Reply ¶ 54.[5]

Defendants never invested in GateGuard. Rule 56.1 Stmt. ¶ 8; Rule 56.1 Counterstmt. ¶¶ 8, 50.

Plaintiff sued Defendants for breach of contract and fraudulent inducement on December 4, 2019. *See* Compl., Dkt. 1.[6]

---

[5] Plaintiff cites emails in which Teman notified Defendants of marketing, advertising, and hiring activities, as well as employment paperwork. *See* Email, Dkt. 154-17; Email, Dkt. 154-18; Employment Paperwork, Dkt. 154-19; Employment Paperwork, Dkt. 154-20; Email, Dkt. 154-20. Plaintiff cites testimony from Teman stating that Plaintiff engaged in marketing, advertising, and hiring activities in reliance on Defendants' promise to invest in GateGuard. *See* Teman Dep. Tr., Dkt. 154-9, at 75:25–76:1-22; 77:7-9; 94:3-22.

[6] Plaintiff originally only sued Goldmont and L. Goldenberg for breach of contract; it added a fraud claim and A. Goldenberg as a defendant in its Amended Complaint. *See* Am. Compl., Dkt. 1. The Amended Complaint only alleges breach of contract against Goldmont, not L. Goldenberg. *Id.* ¶¶ 36–40.

## DISCUSSION

Plaintiff's fraud claim fails at summary judgment because there is no evidence that Defendants did not intend to invest in GateGuard when they purportedly promised they would do so; to the contrary, the circumstantial evidence Plaintiff proffers suggests that Defendants seriously considered investing in Plaintiff and encouraged acquaintances to do the same. The failure to make good on a promise is not, without more, fraud.

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute exists when the evidence is such that, if the party against whom summary judgment is sought is given the benefit of all permissible inferences and all credibility assessments, a rational factfinder could resolve all material factual issues in favor of that party." *SEC v. Sourlis*, 851 F.3d 139, 144 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is appropriate when there can be but one reasonable conclusion as to the verdict, . . . *i.e.*, it is quite clear what the truth is, . . . and no rational factfinder could find in favor of the nonmovant." *Id.* (citations and internal quotation marks omitted).

The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (citations and internal quotation marks omitted). Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (citation omitted).

Under New York law, fraud requires proof of "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009)).

If the purported misrepresentation is a promise of future action, the plaintiff must prove that the promise was made "with a preconceived and undisclosed intention of not performing it." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 222 (S.D.N.Y. 2007) (internal quotation marks and citation omitted), *aff'd*, 354 F. App'x 496 (2d Cir. 2009). Fraudulent intent "is rarely susceptible of direct proof and must ordinarily be established by circumstantial evidence and the legitimate inference arising therefrom." *Martell Strategic Funding LLC v. Am. Hosp. Acad.*, No. 12-CV-627 (VSB), 2019 WL 632364, at *11 (S.D.N.Y. Feb. 14, 2019) (quoting *Goshen Litho, Inc. v. Kohls*, 582 F. Supp. 1561, 1564 (S.D.N.Y. 1983)). It is well established that, at summary judgment, proof of "non-performance of a promise" is not enough to establish a triable issue of fact with respect to fraudulent intent. *Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir. 1987).

II. **Application**

The parties do not dispute that Plaintiff's fraud claim is based on Defendants' purported promise to invest in GateGuard in the future.[7] Although a promise of future conduct can be

---

[7] Defendants assert that Teman only promised to invest in GateGuard's parent company. *See* Defs. Mem., Dkt. 149, at 7–9; Pl. Mem., Dkt. 150, at 14–16. According to Defendants, GateGuard therefore lacks standing to sue because "a claim of fraud will not lie when premised on the reliance of a third party." Def. Mem. at 8 (quoting *Shaw v. Rolex Watch, U.S., Inc.*, 673 F. Supp. 674, 682 (S.D.N.Y. 1987)). That argument misses the mark. GateGuard, not its parent company, allegedly relied on Defendants' fraudulent representations to GateGuard's CEO. The Court is therefore not persuaded that GateGuard lacks standing to sue. *See TVT Records v. Island Def. Jam Music Grp.*, 279 F. Supp. 2d 366, 383 (S.D.N.Y. 2003) (concluding that a subsidiary had standing to sue defendants for fraud in connection with an agreement signed by its parent company because "[w]hat matter[ed]" was that the subsidiary would have "benefit[ted]" from the promised transaction and defendants "knew or should have known

actionable as fraud, to survive a motion for summary judgment, Plaintiff must have admissible evidence that tends to prove that the promise was made with intent to defraud. That is where Plaintiff's claim falters.

Plaintiff maintains that it has met its burden at summary judgment because it alleged that "Defendants had no intention of honoring" their promises and because fraudulent intent is an issue of fact for trial. Pl. Mem., Dkt. 150, at 17 (citing Am. Compl. ¶ 45). In response to a motion for summary judgment, invoking a conclusory allegation contained in the Amended Complaint is inadequate to raise a triable question of fact. *See Murray*, 811 F.2d at 122 (affirming summary judgment because the plaintiff "failed to offer evidence of [the defendant's] fraudulent intent" at the time it made an allegedly fraudulent promise); *CCM Rochester, Inc. v. Federated Inv'rs, Inc.*, 234 F. Supp. 3d 501, 506 n.11 (S.D.N.Y. 2017) (dismissing a fraudulent inducement claim in part because "[m]erely stating that [fraudulent] intent is a question of fact does not discharge the plaintiff's burden at the summary judgment stage"); *Bogart v. Shearson Lehman Bros., Inc.*, No. 91-CV-1036 (LBS) (NG), 1995 WL 46399, at *1 (S.D.N.Y. Feb. 6, 1995) (dismissing fraud claims because the plaintiff "point[ed] to a variety of allegations" in his complaint rather than admissible evidence).

Apart from that bare-bones argument, Plaintiff rattles off purported facts to substantiate its claim that Defendants knew that their promise to invest in GateGuard was false. *See* Rule 56.1 Counterstmt. ¶¶ 39–50. The facts Plaintiff invokes do not tend prove that there was never an intent to perform and actually tend to prove the opposite. According to Plaintiff, L. Goldenberg sought to form a group of investors so they would have more leverage in their

---

that some such benefit" would run to the subsidiary), *reversed on other grounds*, 412 F.3d 82 (2d Cir. 2005). The Court does not address Defendants' other arguments in favor of summary judgment because they are not directed at Article III standing. *See generally* Defs. Mem.

negotiations with Plaintiff; Defendants even organized a meeting to encourage their friends and business contacts to invest. *See id.* ¶¶ 41, 44–46. L. Goldenberg testified that he was willing to invest with Teman, *id.* ¶ 43, and A. Goldenberg spent time promoting GateGuard to potential investors, *id.* ¶ 63. The time and energy Defendants spent recruiting other investors and promoting GateGuard suggest that they were motivated to help GateGuard thrive so they could profit from its success, not that they were fraudulently manipulating GateGuard into making business expenditures for their amusement.[8] *Cf. Elliot v. Nelson*, 301 F. Supp. 2d 284, 287 (S.D.N.Y. 2004) (dismissing a negligent misrepresentation claim based on defendants' allegedly untruthful promise to raise money for the plaintiff because defendants "did take steps, although ultimately unfruitful" toward raising the funds and "no reasonable juror would conclude" that defendants "lured" the plaintiff "into the elaborate and expensive ruse of pretending to raise capital while intending not to do so, for no apparent purpose"). It is also well established that the mere failure to invest following a purported promise to do so is not enough to establish fraud. *See Murray*, 811 F.2d at 122 (affirming summary judgment because the "sole basis" upon which

---

[8] Plaintiff asserts that L. Goldenberg "knew" that Teman believed the parties had agreed to a $1 million investment on December 26, 2018, but took no action to correct this belief even though he understood Teman was relying on it to his detriment. Rule 56.1 Counterstmt., Dkt. 160-4, ¶¶ 39–40. As a threshold matter, the testimony from L. Goldenberg that Plaintiff cites in favor of this assertion says no such thing. L. Goldenberg testified that Teman thought a "check was written" the moment the parties sat down to negotiate but that the parties "didn't get close to an agreement" by the time the meeting ended. L. Goldenberg Dep. Tr., Dkt. 154-3, at 134:3-11. The emails Plaintiff invokes, all sent after Defendants purportedly misrepresented their intent to invest, fare no better. *See* Email, Dkt. 154-22 (Teman notified Defendants of a new hire); Email, Dkt. 154-18 (Teman updated Defendants on new advertising, staff members, and a new client contract); Email, Dkt. 154-13 (Teman updated Defendants on a new client and staff member, advertising, and financing from unnamed investors); *see also Murray v. Xerox Corp.*, 811 F.2d 118, 122 (2d Cir. 1987) (holding that "a showing of fraudulent intent fails as a matter of law" if no evidence demonstrates the promisor "did not intend to comply with his promise from its inception"). Even if Plaintiff had supported this assertion with admissible evidence, Plaintiff's fraud claim would still fail because Defendants' understanding of Teman's belief has no bearing on whether Defendants intended at the time not to deliver on their purported promise.

Plaintiff also accuses L. Goldenberg of general "animus" toward Teman. *See* Rule 56.1 Counterstmt. ¶¶ 64–66. The Court is not receptive to mudslinging that has no bearing on summary judgment. Defendants' reference to Teman's criminal conviction is similarly irrelevant. *See* Rule 56.1 Stmt., Dkt. 148, ¶ 9.

the plaintiff rested his fraud claim was a promisor's "purported failure to follow through" on the promise).

Rather than establishing a triable issue of fact with respect to fraud, the facts Plaintiff marshals in its favor sound in breach of contract. But that is not its claim. Plaintiff's lawsuit therefore fails. *See Shetel Indust. LLC v. Adin Dental Implant Sys., Inc.*, 493 F. Supp. 3d 64, 110 (E.D.N.Y. 2020) (granting summary judgment on a fraudulent inducement claim because the plaintiff "allege[d] nothing more" than that the defendant "misrepresented a future intent to perform" under an "alleged oral employment agreement"); *Sobel v. Eggleston*, No. 12-CV-2551 (DAB), 2013 WL 1344712, at *5 n.4 (S.D.N.Y. Mar. 28, 2013) (dismissing a fraudulent inducement claim at the pleading stage in part because it was "essentially a breach of contract claim"; defendants allegedly promised to do something and then "violated that promise").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close the open motion at docket entry 146 and to STAY the case.

Not later than **Friday, June 9, 2023**, the parties must submit a status update regarding the arbitration of Plaintiff's breach-of-contract claim.[9]

**SO ORDERED.**

Date: May 4, 2023
New York, New York

VALERIE CAPRONI
United States District Judge

---

[9] Plaintiff's counsel asserts that Plaintiff's arbitration action was closed because Goldmont did not consent to the Commercial Arbitration Rules and because Plaintiff did not pay the requisite fee. *See* Quainton Decl., Dkt. 160, ¶¶ 5–7. The parties apparently have until Monday, July 3, 2023 to reopen the case. *See* Email, Dkt. 160-2. If Plaintiff fails promptly to initiate arbitration, the Court may dismiss the case. *See Occilien v. Related Partners, Inc.*, No. 19-CV-7634 (KPF), 2021 WL 3727275, at *1 (S.D.N.Y. Aug. 23, 2021) (noting that courts in this District have "dismissed cases with prejudice . . . where, despite a court order, a [p]laintiff failed to commence arbitration and demonstrated no intent to initiate arbitration" and collecting cases).

Plaintiff's counsel also states that Defendants' counsel sent him a Rule 11 sanctions letter, but does not attach the letter or otherwise comment on it. *See* Quainton Decl. ¶ 9; Email, Dkt. 160-3. The Court expects counsel to behave collegially and not to waste judicial resources with unripe disputes and unnecessary motion practice.