

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/30/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**GateGuard Inc.,**
Plaintiff,

v.

**Goldmont Realty Corp., et al.,**
Defendants.

Case No. 1:20-cv-01609 (VEC)

**MOTION TO INTERVENE,**
**FOR RELIEF UNDER RULE 60(b),**
**FOR A FINDING OF FRAUD ON THE COURT,**
**AND FOR AN EVIDENTIARY HEARING**
**BY NON-PARTY ARI TEMAN**

**PRELIMINARY STATEMENT**

This motion presents a question that goes to the core of judicial integrity: whether conduct already sanctioned by this Court as repeated violations of Court-ordered deadlines operated, in practice, to suppress material evidence and distort the adjudicative process in a manner requiring intervention, relief, and further proceedings.

The Court has already found that counsel repeatedly failed to comply with its orders and imposed sanctions pursuant to Rule 16(f). Those findings are not disputed. What is now before the Court is the consequence of those failures.

The record, when read together with materials subsequently identified in *United States v. Teman*, demonstrates that these violations coincided with the delayed or withheld production of evidence directly bearing on the criminal prosecution of Ari Teman, including evidence relating to witness credibility, motive, and the absence of criminal intent.

The Federal Rules do not permit a court to treat such conduct as merely procedural when its effects are substantive and constitutional. Nor do they permit a proceeding affected by such conduct to be insulated from scrutiny.

**STATEMENT OF FACTS ESTABLISHING THE SUBPOENA GAP AND TIMING**

1

The procedural violations already identified by this Court did not occur in isolation. They occurred during a period in which material evidence—later identified in *United States v. Teman*—was actively being sought by the defense in that matter.

The Court's Order reflects that joint status reports were missed on multiple occasions, despite explicit warnings.

Those failures coincide with the period during which:

- subpoenas had been issued in the criminal case for communications involving Joseph Soleimani and related actors;
- the defense was seeking documents relating to GateGuard's system performance and contractual relationships; and
- those materials were not produced.

The temporal overlap is critical.

The same period in which:

- this Court was deprived of timely status reporting and oversight,

is the period in which:

- the criminal defense was deprived of materials later shown to exist.

---

**A. Specific Suppressed Evidence Demonstrates the Materiality of the Gap**

The materials identified in Dkt. 295 include, among others, communications showing that:

- Soleimani did not comply with his subpoena obligations in United States v. Teman
  - *and colluded with others to do so over the phone and WhatsApp.*

- Soleimani attributed system failures to his own internet connectivity, not to GateGuard;
  - replacement systems experienced similar failures; and
  - those issues were known contemporaneously.

- Soleimani investigated contracts and "Terms and Condition" in detail

  - Soleimani investigated potential fees and penalties for early termination
  - Soleimani *knew* he was breaching the GateGuard contract and made proactive efforts together and in collaboration with others to hide this.
  - Soleimani made nearly identical, fraudulent excuses to avoid paying other vendors

These facts directly contradict his representations made at trial that the GateGuard system "did not work" and that Soleimani was not aware of the Terms and Conditions and Termination Fees.

In this context, Schonfeld's *willful* violation of Court deadlines and discovery requirements warrants careful scrutiny as to whether they coincided with, and may have contributed to, the delayed disclosure of material evidence.

The same record includes group communications in which:

- Teman, his business, and the criminal case were discussed;
- the contractual terms were understood and referenced; and
- participants coordinated their positions.

This is not cumulative evidence. It goes to:

- credibility,
- causation, and
- intent.

---

## B. The "Coincidence" Cannot Be Ignored

The Court need not draw final conclusions at this stage. It is sufficient that:

> the failures already sanctioned by this Court occurred during the precise period in which the defense in a criminal case was seeking the very materials that were not produced.

That alignment creates, at minimum:

- a substantial question as to whether the procedural violations had substantive consequences; and
- a sufficient basis to warrant intervention, discovery, and an evidentiary hearing.

## C. Teman was not represented in this matter and not made aware until today of these issues

During the period in which the procedural violations identified by this Court occurred, Ari Teman was not represented in this action in his personal capacity.

Although counsel represented GateGuard, that representation did not extend to Teman individually, and no counsel was charged with protecting or advancing his personal legal interests in connection with the matters addressed in this motion.

As a result, Teman was not in a position to:

3

- monitor compliance with Court-ordered deadlines;

- assess the significance of missed filings or delayed discovery; or

- take action to address the non-production of materials later identified as relevant.

Nor was Teman informed, at the time, of the discovery failures or of the existence of materials that were being sought in the related criminal proceeding but not produced.

This lack of communication must also be understood in context. In related proceedings before the United States Court of Appeals for the Second Circuit, counsel Quainton acknowledged that he was experiencing significant neurological limitations that affected his ability to function in a traditional advocacy role, including the ability to stand when presenting argument. His co-counsel, who left his firm, informed Teman after Quainton's withdrawal here that these conditions had continued to worsen over time.

This is not raised to assign fault, but to explain the practical reality that, during the relevant period, Teman did not have the benefit of fully functioning representation capable of monitoring developments across proceedings, ensuring compliance with discovery obligations, or communicating material developments affecting his rights.

Teman was not aware, until today, of the discovery failures or the sanctions imposed by this Court on Quainton.

As a result, Teman was not in a position to identify or respond to these failures described above at the time they occurred. Once the relevant facts became known to him, he acted promptly -- the very next day -- in seeking relief.

---

## ARGUMENT

---

## I. UNDER CONTROLLING SDNY AND SUPREME COURT AUTHORITY, TEMAN'S PARTICIPATION CANNOT BE RESTRICTED ABSENT A DIRECT NEXUS — AND NO SUCH NEXUS EXISTS HERE

In *Teman v. Zeldes Needle Cooper LLP*, No. 1:24-cv-09830 (LJL), Judge Liman held:

> "the instant case lacks the expressly required nexus between fugitivity and the course of the proceedings."

That holding reflects the Supreme Court's directive that courts must exercise restraint before denying access to adjudication. *Degen v. United States*, 517 U.S. 820, 828 (1996) (rejecting

4

disentitlement where there is no meaningful connection between the litigant's status and the proceeding, and cautioning that courts must not lightly foreclose access to judicial review).

## A. The Absence of a Nexus Precludes Any Restriction on Participation

The governing rule is not discretionary. It is limiting.

A court may not:

- bar a litigant from participating,
- stay or dismiss claims, or
- impose procedural disabilities

absent a direct nexus between the asserted justification and the proceeding itself.

Here, no such nexus exists.

Teman's status—whatever characterization is asserted—is not connected to:

- the claims in this action,
- the conduct giving rise to those claims, or
- the issues now before the Court.

## B. Using Status to Block This Motion Would Invert the Doctrine

The doctrine exists to protect the judicial process from abuse.

It cannot be used to prevent examination of whether the judicial process has been abused.

To deny intervention here on the basis of Teman's status would:

- impose a procedural bar without the required nexus;
- prevent inquiry into misconduct occurring within this case; and
- allow the Court's own processes to be used as a shield against scrutiny.

That is precisely the result *Degen* prohibits.

## C. The Absence of a Nexus Is Dispositive Where the Motion Seeks to Address Fraud on the Court

This motion does not seek to relitigate unrelated claims.

5

It seeks to address:

- conduct occurring within this proceeding,
- conduct already recognized through sanctions, and
- the consequences of that conduct on the integrity of the record.

Where the purpose of a motion is to expose potential fraud on the court, the absence of a nexus is not merely relevant—it is decisive.

It removes any legal basis for restricting access to the Court.

---

## II. THE RULE 16(f) SANCTIONS ARE DIRECTLY LINKED TO THE SUPPRESSION OF MATERIAL EVIDENCE

The Court has already determined that counsel repeatedly violated its scheduling orders. That determination must now be evaluated in context.

The record reflects that, during the same period in which those violations occurred:

- subpoenaed materials were not produced,
- communications among key actors were not disclosed, and
- evidence contradicting central assertions presented in a criminal trial remained hidden.

This temporal and substantive overlap is not incidental. It creates a substantial and non-speculative basis to infer that the procedural violations sanctioned by this Court coincided with—and may have contributed to—the delayed disclosure of material evidence.

The withheld materials are not peripheral. They include:

- evidence that Leon Goldenberg expressed a desire that Teman be incarcerated so that litigation would cease,
- communications showing that system failures attributed to GateGuard were, in fact, known by the witness to be caused by his own internet connectivity, and
- discussions among witnesses concerning Teman, the contractual terms, and ongoing litigation, contrary to representations made at trial.

At a minimum, these facts establish that the failures already sanctioned by this Court coincided with—and may have enabled—the suppression of material evidence bearing directly on issues of credibility, motive, and intent.

That is sufficient to warrant further factual development.

6

## III. THE RECORD SATISFIES THE STANDARD FOR FRAUD ON THE COURT

Fraud on the court is reserved for conduct that "defiles the court itself" and prevents the judicial machinery from performing in the usual manner. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246 (1944) (recognizing the inherent power of courts to vacate judgments obtained through corruption of the judicial process).

The Second Circuit has clarified that such fraud must be directed at the judicial process itself and must be egregious. *King v. First American Investigations, Inc.*, 287 F.3d 91, 95 (2d Cir. 2002) (holding that fraud on the court involves conduct that seriously undermines the integrity of the proceedings).

This case satisfies that standard.

This is not a matter of isolated delay or inadvertence. It involves:

- repeated violations of Court orders after warning,
- the withholding or delayed production of evidence bearing on critical issues, and
- resulting prejudice extending beyond this case to a criminal proceeding.

Where material evidence affecting credibility and intent is withheld, and where the record presented to a tribunal diverges from the underlying reality, the integrity of the process is compromised. That is the essence of fraud on the court.

## A. EVIDENCE OF IMPROPER MOTIVE AND COORDINATION

The record contains direct evidence of improper motive.

Leon Goldenberg admitted in sworn testimony that he hoped the criminal case would result in Teman's incarceration in order to affect ongoing litigation.

That admission is not collateral. It is probative of intent.

It demonstrates:

- a motive to influence the outcome of the criminal case;
- a connection between the civil dispute and the criminal proceeding; and
- a basis to scrutinize conduct affecting the flow of information between the two.

## B. Evidence of Coordination

The record further reflects communications among:

7

- Soleimani,
- Taub, and
- the Goldmont parties

in which:

- the criminal case,
- Teman's business, and
- related matters were discussed.

Such communications support a reasonable inference that the civil defendants were not merely passive participants, but were engaged in a broader factual context overlapping with the criminal proceeding, warranting further inquiry.

That is sufficient to warrant inquiry.

---

## IV. THE CONSTITUTIONAL DIMENSIONS OF THE SUPPRESSED EVIDENCE REQUIRE FURTHER PROCEEDINGS

The materials identified in Dkt. 295 fall squarely within the principles articulated in *Brady v. Maryland*, 373 U.S. 83 (1963) (requiring disclosure of exculpatory evidence) and *Giglio v. United States*, 405 U.S. 150 (1972) (requiring disclosure of evidence affecting witness credibility).

Although those obligations arise in the criminal context, the civil record here reveals the existence of evidence that:

- bears directly on witness credibility,
- undermines the factual basis of the prosecution, and
- supports the absence of criminal intent.

Where civil discovery failures reveal the existence of such material, courts cannot disregard the constitutional implications. At minimum, those implications require factual development sufficient to determine the scope and impact of the suppressed evidence.

---

## V. INDEPENDENT LEGAL AUTHORITIES CONFIRM THE SIGNIFICANCE OF THE SUPPRESSED MATERIALS

Two independent authorities—each acting pro bono and without prior relationship to Teman—have reviewed the case and reached consistent conclusions.

8

Professor Lawrence Lessig concluded that the conduct underlying the conviction "certainly do[es] not establish a crime nor evince any criminal intent" and that the prosecution "is not justice."

Ronald D. Coleman, a practitioner admitted in New York, concluded that the theory of criminal liability was inconsistent with established principles of contract law and that the conviction represents a miscarriage of justice.

These analyses are not cited as precedent, but as corroboration that the suppressed materials go to dispositive issues and that their absence from the record was consequential.

   A.  Industry Standard Evidence That Was Not Fully Developed

      Ronald D. Coleman's pro bono analysis explains that GateGuard's contractual structure was consistent with widely used "click-wrap" agreements and modeled on platforms such as Airbnb.

      That analysis is significant for present purposes not because it resolves the criminal case, but because:

      - it demonstrates that the contractual framework was not anomalous; and
      - it supports the conclusion that evidence relating to industry practice was material to the issue of intent.

      To the extent such arguments were not fully developed at trial, the absence of contemporaneous documentary evidence—now identified, including communications in which the relevant contractual terms were discussed—becomes even more significant in assessing whether the record before the criminal court was complete.

      Professor Lessig's independent conclusion that the conduct did not evince criminal intent further underscores that the suppressed materials go to the core of the case.

---

**VI.  THE REQUEST FOR A 60-DAY PERIOD IS NECESSARY FOR THE COURT TO ADJUDICATE THE ISSUES BEFORE IT**

The request for a 60-day period is not a matter of convenience. It is a necessity for the Court.

The record now raises issues that include:

- potential suppression of material evidence,
- interference with subpoena compliance, and
- conduct bearing on the integrity of a criminal proceeding.

A court cannot reliably adjudicate such issues without input from counsel capable of addressing their criminal law dimensions.

## VII. AN EVIDENTIARY HEARING AND TARGETED DISCOVERY ARE NECESSARY

Where material facts are disputed and implicate the integrity of judicial proceedings, courts must permit factual development through evidentiary hearings. *United States v. International Brotherhood of Teamsters*, 247 F.3d 370 (2d Cir. 2001) (affirming the use of evidentiary hearings where necessary to resolve issues affecting the integrity of the process).

Discovery is likewise required where facts essential to adjudication remain unresolved. *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15 (1964) (recognizing that discovery is appropriate where necessary to establish facts relevant to a party's claims or defenses).

Here, the Court must determine:

- what evidence existed,
- when it was known,
- why it was not produced, and
- how its absence affected the proceedings.

Those questions cannot be resolved on the existing record alone.

---

## CLAIMS FOR RELIEF

WHEREFORE, non-party Ari Teman respectfully requests that this Court enter an Order:

1. **Granting Intervention**
   Granting Ari Teman intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively permissive intervention pursuant to Rule 24(b), on the grounds that his interests have been directly and substantially affected by misconduct occurring in this action and are not adequately represented by any existing party;

2. **Granting Relief Under Rule 60(b)**
   Granting relief pursuant to Rule 60(b)(3) and Rule 60(b)(6), on the grounds that misconduct, misrepresentation, and extraordinary circumstances prevented a full and fair presentation of material facts and undermined the integrity of the proceedings;

3. **Finding Fraud on the Court**
   Entering a finding that the conduct described herein—including repeated violations of Court orders, the withholding or delayed production of material evidence, and conduct that prevented the Court from adjudicating on a complete and accurate record—constitutes fraud on the Court within the meaning of *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944);

4. **Determining Whether Conduct Warrants Criminal Referral**
   Determining whether the conduct at issue—including interference with discovery

10

obligations, failure to comply with subpoenas, and actions that may have obstructed access to material evidence—warrants referral to the appropriate authorities, including the United States Attorney's Office, for investigation of potential violations of federal law;

5. **Ordering an Evidentiary Hearing**

   Ordering a full evidentiary hearing to determine:
   - what evidence existed and when,
   - who had knowledge of such evidence,
   - the circumstances under which such evidence was not produced, and
   - the extent to which such conduct affected the integrity of these proceedings and related matters;

6. **Opening Targeted Discovery and Authorizing Subpoenas**

   Ordering targeted discovery, including authorization for subpoenas, to obtain:
   - communications among the Goldmont parties, their counsel, and third parties;
   - communications involving Joseph Soleimani and related actors;
   - materials referenced in Dkt. 295 of *United States v. Teman* not produced in this action; and
   - any other materials necessary to determine the scope and impact of the conduct at issue;

7. **Granting Time to Retain Criminal Counsel**

   Granting GateGuard a period of sixty (60) days to retain qualified criminal law counsel to evaluate and address issues arising from the conduct described herein, pursuant to the Court's inherent authority to manage proceedings and ensure fairness, see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991);

8. **Awarding Further Relief**

   Granting such other and further relief as the Court deems just and proper to restore the integrity of the proceedings and ensure that all affected parties are afforded a full and fair opportunity to be heard.

---

**CONCLUSION**

The record now before this Court reflects more than disagreement about litigation conduct. It reflects a convergence of facts that, taken together, require judicial scrutiny.

It is not only Ari Teman who asserts that material evidence was withheld or delayed. The record includes sworn testimony that a principal actor, Leon Goldenberg, expressed a desire that the criminal case would result in Teman's incarceration in order to affect ongoing litigation.

It includes documentary evidence showing that witnesses possessed information directly contradicting positions advanced at trial, including the causes of system failures and the scope of their knowledge of contractual terms, which was not timely produced.

11

It includes the Court's own findings that counsel repeatedly failed to comply with Court-ordered deadlines, even after explicit warnings.

And it includes the independent, pro bono analysis of respected legal authorities who concluded that the underlying prosecution lacked a proper criminal basis and that the issues at stake were fundamentally civil in nature.

Taken together, these facts give rise to a serious question: whether the procedural failures already identified by this Court coincided with, and contributed to, the suppression or delayed disclosure of material evidence bearing on issues of credibility, motive, and intent.

That question cannot be resolved on the existing record. Nor can it be set aside as merely collateral. Where the integrity of the adjudicative process is implicated, the Court has both the authority and the obligation to ensure that its proceedings are grounded in a complete and accurate record.

The Court's responsibility at this stage is not to resolve ultimate questions of liability, but to ensure that its proceedings—and any proceedings affected by them—are not grounded in an incomplete or unreliable record.

The relief requested here is not extraordinary in scope. It is tailored to allow the Court to determine the facts:

- intervention so that the affected party may be heard;
- discovery so that the relevant materials may be obtained;
- a hearing so that factual disputes may be resolved; and
- appropriate consideration of whether the conduct warrants further action.

The alternative—leaving the record as it stands—would risk allowing a proceeding affected by acknowledged misconduct to stand without full examination of its consequences.

At this stage, the Court is not being asked to make ultimate findings of liability or intent. It is being asked to ensure that its proceedings—and any proceedings affected by them—are not premised on an incomplete or distorted record. Where credible questions exist as to whether material evidence was not timely disclosed, and where those questions intersect with conduct already sanctioned by the Court, further inquiry is not discretionary—it is required.

For these reasons, and for those set forth above, the motion should be granted in its entirety.

Respectfully submitted,

Dated: April 21, 2026

**s/Ari Teman/**
Ari Baruch Teman**,** Pro Se
Tel Aviv, Israel -- Mail: 1521 Alton Road #888, Miami Beach, FL 33139
ari@teman.com 781-718-3375

12

Application DENIED.  The Court need not recount all the ways in which this motion is frivolous.  It will note just three.

First, the motion is untimely, inasmuch as this case was dismissed months ago.  Mr. Teman's assertion that he was unaware of what was happening in this action is simply false; among other things, he attempted to file a *pro se* motion on behalf of Plaintiff in October 2025 and worked with counsel to submit a sworn declaration in November 2025.  *See* Dkts. 198, 200, 213, 214.  Mr. Teman has had ample opportunity to move to intervene.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) ("The determination of the timeliness of a motion to intervene is within the discretion of the district court, evaluated against the totality of the circumstances before the court," including "how long the applicant had notice of the interest before he made the motion to intervene" (cleaned up)).

Second, even if this motion were timely, it would still be denied because it fails to acknowledge the reasons why this action was dismissed.  The arbitration in this case was repeatedly delayed because Mr. Teman refused to return to the United States.  The Court ordered him to return by November 17, 2025.  He failed to do so, and so the case was dismissed for failure to prosecute.  *See* Dkt. 216.  The problems Mr. Teman describes regarding Mr. Quainton's representation of GateGuard are, for purposes of this motion, immaterial.

Third, Mr. Teman's assertion that he has an interest in this case is inconsistent with his own prior statements.  In a sworn declaration to this Court, Mr. Teman stated, "I am no longer an officer, director, or employee of GateGuard. . . . It is unclear to me what possible knowledge defendant contends I have concerning plaintiff's claims for breach of contract. . . . None of [the events that give rise to this action] involved action by me, I was not part of the contract negotiation that was conducted exclusively between counsel, and I was not present during the equipment delivery."  Teman Decl., Dkt. 214-1 ¶¶ 2, 8-9.  The Court has already expressed its view that these assertions are dubious.  *See* Dkt. 216.  Regardless, Mr. Teman cannot alter his prior positions to suit his current whims.

The Clerk of Court is respectfully directed to mail a copy of this order to Mr. Teman at 1521 Alton Road #888, Miami Beach, FL 33139.

SO ORDERED.

*Valerie Caproni*    4/30/2026

HON. VALERIE CAPRONI
UNITED STATES DISTRICT JUDGE