# GateGuard®

Trusted by hundreds of top landlords and property managers

Ari Teman, CEO & Founder
ari@teman.com

October 21, 2021

The Honorable Judge Alison Nathan
District Judge
Southern District of New York
40 Foley Square
New York, NY 10007
NathanNYSDChambers@nysd.uscourts.gov
via email

> *"Government lawyers wield enormous prosecutorial power.*
> *They must exercise it in a way that is fully consistent with*
> *their constitutional and ethical obligations.*
> *And it is the obligation of the courts to ensure that they do*
> *and hold them accountable if they do not."*
> - Judge Alison J. Nathan, US v Nejad (Doc 379)

**RE:     SDNY withholding documents useful and relevant to *GateGuard v Goldmont*, showing pattern of collusion between SDNY and defendants in this matter (and *GateGuard v MVI Systems*) to hide exculpatory evidence from *US v Teman*, present false information in this matter and *US v Teman*, and delay exposure of exculpatory evidence**

Dear Judge Nathan,

We respectfully write to inform you of willful Rule 5F violations, Rule 16 violations, Brady and other disclosure violations, in violation of Your Honor's orders to the US Attorney's Office (USAO, SDNY) in *US v Pizzaro and US v Nejad*, by the USAO, which have resulted in documents and evidence relevant to this matter, *GateGuard v. Goldmont* being withheld. We respectfully request that this letter be filed to the Docket.

Documents in discovery, which has already been greatly delayed (and continues to be delayed) through Government disclosure violations in *US v Teman, which the Government admits were <u>willful</u>,* prove clearly that AUSA Bhatia and his office reached into this case before Your Honor, and into *GateGuard v MVI Systems*, to delay discovery and encourage witnesses to delay production of exculpatory evidence, as well as to collude on false narratives to present to *US v Teman*.  It is clear that  AUSA Kedar Bhatia and his partner law enforcement agent Daniel Alessandrino *knew* about the documents being withheld, and even facilitated the witnesses in collaborating on hiding and delaying production with defendants in *GateGuard v Goldmont, including hiding evidence themselves.*

We are *not* asking Your Honor to intervene in *US v Teman*, which is before the Second Circuit, but respectfully to ask Your Honor to order SDNY to honor their disclosure obligations to me, CEO of GateGuard, and provide

documents not only exculpatory to me, *but relevant to obstruction of justice committed by officers and counsel for Goldmont,* who plainly admitted in a recent deposition that me going to prison would help them avoid paying the bill for the contract their attorney negotiated and they admit to signing. Leon Goldenberg, founder of *Goldmont* said explicitly, "I was **hoping that it would impact him**… You know, if he's going to jail, going to be in jail, can't work, will it get him to drop the lawsuit." (Emphasis added.)

---

Page 376

GOLDENBERG

that as part of the strategy here when you were discussing with Abi how to -- how to handle this case whether, you know --

A.      No.  I was hoping that that would impact him.

Q.      How do you mean?

A.      You know, if he's going to jail, going to be in jail, can't work, will it get him to drop the lawsuit.  Obviously it didn't.

Q.      Okay.  So your -- fair to say your hope was that if Mr. Teman went to prison, that would potentially resolve the -- this problem for you?

A.      Yes.

---

Surely it is relevant to *GateGuard v Goldmont,* therefore, that SDNY hid interviews with Abi Goldenberg and their counsel, Simcha Schonfeld. Surely it is relevant, therefore, that SDNY hid that Abi Goldenberg and Samuel Taub (defendant in *GateGuard v MVI Systems*) were passing documents about me to Joseph Soleimani, SDNY's star witness who passed it to SDNY (AUSA Bhatia via Detective Alessandrino) which SDNY hid the source and passed to Judge Engelmayer. Surely it is relevant that documents in discovery in *GateGuard v Goldmont* show that in-fact SDNY's star witness, Joseph Soleimani introduced Abi Goldenberg to Mr. Alessandrino and Mr. Bhatia, and then Mr. Bhatia *hid an entire interview with Mr. Goldenberg and nother with Goldenberg's attorney by Mr. Goldenberg's own admission.*

**<u>"The prosecution of Mr. Teman is not justice" - Harvard Law Professor Lessig (Pro Bono)</u>**

Your Honor is likely aware of *US v Teman*, because it has been mentioned by counsel for Goldmont, but Your Honor may not be aware of the significant public outcry by legal experts across the political spectrum calling the case a "major injustice" and decrying prosecutorial misconduct akin to that in *US v Nejad* and other recent cases in SDNY.

**Harvard Law School Professor Lawrence Lessig,** writing entirely *pro bono* to A.G. Barr, wrote this about the case (Professor Lessig's full letter is attached, for Your Honor's reference):

> "What explains this prosecution is not the law, nor the justice within this commercial dispute. What explains it, apparently, is the relative inexperience of the front line prosecutors. Those prosecutors were new to the U.S. Attorney's office. They allowed their inexperience to guide their intuitions. And once it was clear that they had uncovered not a criminal commercial enterprise but ordinary online commerce, rather than acknowledging their error, and the injustice in prosecuting a commercial dispute as a crime, they continued to press the prosecution against Mr. Teman.
>
> This behavior is surprising and troubling to those like me who have high regard for United States Attorneys. Yet it is clear that sometimes, winning becomes more important than justice. The prosecution of Mr. Teman is not justice."

There are additional letters from legal experts and lay leaders, and video at JusticeForAri.org . Legal experts with decades of experience writing entirely pro-bono say they *cannot find any evidence of a crime or intent of a crime*, but plenty of evidence of cheating by SDNY.

However, I am writing to Your Honor because SDNY continues to hide evidence *GateGuard v Goldmont*, despite being asked for it repeatedly and also being obligated to provide it under Brady and under Rule 5F, relevant to the breach of contract and other tortious behavior by Goldmont's officers and agents and business partners. I am begging Your Honor to step and and order SDNY to follow the rules and obey their disclosure obligations, and to stop obstructing justice in *GateGuard v Goldmont*[1].

**<u>SDNY hid that my defense counsel was married to AUSA Graham</u>**
**<u>and that she could overhear attorney-client calls,</u>**
**<u>while her husband delayed (sabotaged) discovery in this matter before Your Honor</u>**

It is not only the witnesses in this case (*GateGuard v Goldmont)* who actively delayed and sabotaged evidence collection in *US v Teman*, but the husband of AUSA Graham[2] who failed to disclose this relationship to me when being retained as my counsel! On December 1, 20201,  **SDNY admitted they willfully hid their ability to eavesdrop on my attorney-client calls for half a year, because nobody told me AUSA Graham was married to my defense attorney, Noam Biale**! It is important to note that I hired Biale's firm (Sher Tremonte) *specifically to uncover and motion-on SDNY disclosure violations and Biale instead colluded with SDNY on a major one!*

---

[1] (and in any other case Your Honor sees fit, given their obstruction is obviously harming us in US v Teman and GateGuard v MVI Systems)

[2] Your Honor will recognize AUSA Graham from her previous willful disclosure violation in  *US v Pizzaro.* https://www.nytimes.com/2018/06/06/nyregion/murder-confession-brady-rule.html

**<u>The Government very clearly admitted the disclosure violation was willful:</u>**

> Case 1:19-cr-00696-PAE (Document 182):
>
> THE COURT: Let me ask you, Mr. Bhatia, were you aware that Mr. Biale is married to one of your colleagues?
>
> MR. BHATIA: Yes, I was.
>
> […]
>
> THE COURT: I'm trying to understand how it can be that both counsel in this case who knew that you, Mr. Biale, are married to somebody who works for the office that is prosecuting Mr. Teman and trying to put him in prison, didn't think to raise -- in the case of Mr. Biale with Mr. Teman, in the case of either of you -- with the Court the potential conflict."
>
> ...
>
> THE COURT: "And Mr. Teman's look of shock was obvious to me, even from 1,000 miles away on video, when he learned that one of his lawyers works -- is a colleague of Mr. Bhatia's."

To be clear, this also means that SDNY was able to spy on my attorney-client calls and Zoom  *regarding discovery in GateGuard v Goldmont, this case before Your Honor*, and then instruct their witnesses on how to delay and hide the production of evidence.

It must now be clear to Your Honor now looking at the many lies and tactics used by Attorney Schonfeld, that Goldmont's delay tactics were extreme and extremely unethical and out-of-bounds, and they make sense when viewed through the lens of Goldmont working with SDNY to cheat me into prison. Thus, SDNY's file on me, their communications, their eavesdropping, their hiding of interviews and evidence, are all entirely relevant to this case, *GateGuard v Goldmont*, and we respectfully ask that Your Honor order SDNY into Court in this matter to compel them to produce the documents and the full file, and all conversations so we may investigate the extent to which the Biale/Graham conflict resulted in unfair advantages to the defendants in this matter through a violation of my (and GateGuard's) Fourth Amendment rights.

(Because Judge Engelmayer informed us on December 1, 2020, at that same hearing, that he is the *mentor* and close personal friend of Mr. Biale and also the former professional colleague and close personal friend of AUSA Graham, that he has been in their home, knows their child, and has dined with them frequently my defense counsel and other advisors felt it safer for us to leave that issue for Appeals. Judge Engelmayer also failed to immediately disclose his relationship with Biale, accidentally or not, so it would be awkward for us to argue he should recuse for his own violation and we feared retaliation -- I still fear retaliation but I cannot take the destruction of my life and businesses the tactics SDNY has taken are causing and so I am begging Your Honor to please step up and help.)

We are merely and solely asking Your Honor to take action to ensure the evidence which was hidden, which is *relevant to discovery in GateGuard v Goldmont*, is handed over by SDNY and their witnesses -- unfortunately,

the Government continues to refuse *even though this same information was required to be handed to me long ago (years ago!) as a matter of law (Rule 5F, Brady, Rule 16, etc.)*

In this case, *GateGuard v Goldmont*, through sworn answers to interrogatories and in deposition answers, as well as one hearing before Your Honor, Mr. Abi Goldenberg and Mr. Schonfeld revealed that SDNY hid at least two witness interviews with them, and also hid the paper trail of a suicide note written by me pre-trial which was passed via Mr. Goldenberg and Mr. Samuel Taub (defendant in *GateGuard v MVI Systems*) to AUSA Bhatia and then to Judge Engelmayer. At no time did the Government share the source of the note, and we now know from Mr. Goldenberg and his discovery production that he was the source, via Mr. Taub, to Mr. Soleimani, who was the source to the Government.

This is extremely shocking, because there was no evidence or any communications provided by the Government or Mr. Soleimani evidencing any conversations or collusion between Mr. Soleimani (the Government's first and main witness in *US v Teman*) and Goldmont or MVI, but now we know from this case that not only did Mr. Soleimani hide abundant communications between himself and defendants in two federal civil cases GateGuard filed in this district before trial in *US v Teman*, but that SDNY, and specifically AUSA Bhatia and AUSA Gutwillig *knew that their star witness was hiding his communications and documents and business dealings with these parties because they saw these communications and did not disclose them (and appear to have actively redacted them, hid interviews, etc.).*

Mr. Bhatia and Mr. Gutwillig clearly hid this collusion that would open Mr. Soleimani to cross-examination on his dealings with two defendants in federal civil cases, including this one, and open these witnesses to subpoenas by my defense counsel -- information which would have certainly shifted the outcome of this civil case and the other (*GateGuard v MVI*) much faster, including causing GateGuard to append claims for obstruction of justice, and tortious interference, and add Mr. Soleimani as a defendant in the other civil matter (and perhaps soon in this one).

It is also relevant, because it would open Mr. Soleimani to cross-examination on his awareness of GateGuard's terms and the fact that I had GateGuard file two civil lawsuits against parties which had violated those terms, *using the same lawyer who was warning Soleimani in writing that he was breaching the GateGuard terms!*[3]

However, as Leon Goldenberg's deposition and Avi Goldenberg's attempt to sabotage my legal defense fundraising show, they also make it clear in their deposition and through their behavior that they did it to prevent me from having sufficient funds to hire adequate local counsel (instead I was forced to rely upon an old college friend from St. Louis. I am now out on bond pending appeal because of a possible Ineffective Assistance of Counsel argument, suggested by Judge Engelmayer himself!).

---

[3] (As background only, the Government arrested me on one count of "counterfeiting" checks, but when they realized that I had simply enforced the online terms of GateGuard which allow the company to draft via Remotely Created Check ("RCC" or "telecheck", a sort of paper ACH, common in recurring revenue, internet and phone sales, and real estate businesses), they pulled a constructive amendment in closing arguments and post-trial motions making the absurd theory that I "structured" the online terms to "bury" the payment terms subpage. However, (a) I did not structure the terms, his corporate lawyers did (EXHIBIT 2, attached) and (b) the clients admitted to seeing the paragraph saying the payment terms were binding and the link to the payment terms (EXHIBIT 4, transcripts of the clients admitting to being informed). Thus, the fact that SDNY hid that Mr. Soleimani was well-aware of the terms and conditions and had discussed lawsuits based on them with Goldmont and MVI, is highly relevant, and it is relevant to *this* case because it shows that Goldmont colluded and worked to sabotage me, and that is relevant not only to their breach of contract and their conduct in this case and their counsel's conduct, but also to us amending claims for their slander, defamation, tortious interference, and the like.

As well, delaying resolution of *GateGuard v Goldmont* meant that GateGuard could collect the $364,000 and additional damages it is owed by Goldmont before trial in *US v Teman*. This meant that GateGuard's account was in the red at the time of trial, but would have been *positive* $100,000, and the alleged victim bank left without any damage. SDNY and the Goldenbergs delaying discovery in this matter and hiding exculpatory evidence would benefit them both and sabotage my defense -- and Leon Goldenberg admits in his deposition that rendering me unable to work, getting me cheated into prison, destroying GateGuard in essence as I am the founder and CEO and it's a small, very new company, would help him avoid his bill in *GateGuard v Goldmont*. Therefore, for the sake of justice in *GateGuard v Goldmont*, we hope Your Honor will expose the evidence SDNY and Goldmont both continue to hide.

It appears SDNY acted in such a way as to not only sabotage my criminal defense, but to sabotage GateGuard's ability to gain access to information in this matter before Your Honor, including evidence that defendants in two civil cases were colluding to cheat me into prison -- which of course would lead GateGuard to amend the claims in these cases and likely would have motivated the resolution of this case much sooner..

We are therefore asking Your Honor to hold hearings as to the obstruction of justice by SDNY  and by Mr. Abi Goldenberg, Mr. Leon Goldenberg, Mr. Joseph Soleimani, and Mr. Simcha Schonfeld *in this matter*.  This includes:

1.  SDNY and defendants conspiring to hide evidence and delay discovery in this civil matter

2.  SDNY's flagrant disregard for the confidentiality of a defendant's attorney-client privileged materials and conversations, eavesdropping on me and on GateGuard's strategy in *GateGuard v Goldmont* via AUSA Graham (as described above) and thus gaining access to information about *GateGuard v Goldmont* through a violation of my and GateGuard's 4th and 5th Amendment rights.

3.  SDNY sabotaging my case and *GateGuard v Goldmont* via AUSA Graham's husband, Noam Biale, who fought against many defense strategies, and also ordered (and very-much scared and pressured) Mr. Reinitz to delay discovery and depositions until after sentencing (which replacement attorneys for me in *US v Teman* said was egregious and reversed, but the exculpatory evidence came too late, post-sentencing, as a result.

4.  SDNY hiding multiple interviews with defendants in this case and their counsel (all of which were only discovered after trial in *US v Teman*, and seemingly only through the accident of defendants and their counsel in this matter)

5.  SDNY hiding a paper trail showing collusing with defendants in this matter (*GateGuard v Goldmont*) and witnesses in my criminal trial.

**Summary**

Your Honor has a great and unique reputation in the Southern District of New York for holding the Prosecutors in that district accountable. Prosecutorial misconduct has cost GateGuard in this matter, and of course myself in *US v Teman*, and my family, my loved ones, my team, my customers, my community so much -- Your Honor, I have been forced into nineteen months of near-solitary confinement, 20-hours a day, sometimes days without human interaction, over the claims of witnesses the Government knows perjured and violated subpoenas. Nearly eight of those months were due to Mr. Biale and AUSA Graham's (and AUSA Bhatia's) willful disclosure violation, surely confident in getting away with it because Judge Engelmayer is their close personal friend.

I hope Your Honor with Your great knowledge and great compassion, can find a way to motivate the Government to free an innocent man. Of course, Mr. Williams, being very new to the office, was perhaps going to do this anyway and will do so now upon review with Your Honor's encouragement.

However, from a procedural standpoint, in this document we are *only* asking Your Honor to act to order SDNY to produce all relevant evidence to *GateGuard v Goldmont*.

We respectfully request Your Honor's independent action on these matters relevant to *GateGuard v Goldmont* firstly because of your excellent record on these issues, especially in *US v Nejad* and *US v Pizzaro*. Further, we have made several requests for the production of exculpatory information in US v Teman which have been ignored by the Government.

Thank you,

Ari Teman
CEO, GateGuard Inc

CC      US Attorney Damian Williams
        Mr. Ariel Reinitz, via email

P.S. I attach, as well, the sworn statement of Ms. Shelly Jenkins Pecot (EXHIBIT 5,6,7), which proves that two more of the Government's witnesses willfully hid exculpatory evidence and perjured. I am sure Your Honor will share my amazement that *five* of the Government's witnesses felt comfortable hiding evidence, violating subpoenas, and at least three of them felt comfortable perjuring on the stand (and we believe it's at-least five). What a coincidence that five individuals felt so comfortable walking into Federal court, taking the stand under oath, and lying, after they had also withheld exculpatory documents which contradict their testitomy! If we (GateGuard) are to get a fair hearing before Your Honor in this matter, we must be able to review and use all the evidence, and SDNY continuing to hide evidence relevant to this case, and continuing to encourage their witnesses to hide evidence and lie themselves through such behavior modeling, is of course relevant to and within the jurisdiction of Your Honor.



# HARVARD LAW SCHOOL

LAWRENCE LESSIG
ROY L. FURMAN PROFESSOR OF LAW AND LEADERSHIP
1563 MASSACHUSETTS AVE
CAMBRIDGE · MASSACHUSETTS · 02138
TEL. (617) 496-8853
LESSIG@LAW.HARVARD.EDU

November 12, 2020

President Donald J. Trump
1600 Pennsylvania Avenue
Washington, DC 20500

The Honorable William Barr Attorney General

The Honorable Jeffrey Rosen
Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC, 20530

Re: Ari Teman

I have reviewed, *pro bono*, the case involving Ari Teman. Ari was convicted for acts that certainly do not establish a crime nor evince any criminal intent. I urge the Justice Department to dismiss the case or the President to pardon Mr. Teman.

The facts underlying this case involve a business dispute between Mr. Teman's company, GateGuard, and some of its clients. Those clients had failed to pay for the services GateGuard had provided. Pursuant to the terms agreed to by the clients and GateGuard, Mr. Teman effected a transfer of funds from the clients' bank accounts to GateGuard. The clients had contractually authorized GateGuard to collect overdue fees in this way. The contract that authorized this was not crafted by Mr. Teman, but by his lawyers. They had patterned the agreement on other well known companies (such as AirBnB). The lawyers' work obviously cannot be the foundation for a finding of Mr. Teman's fraudulent intent.

Whether GateGuard's contract should be enforceable in a civil court is an interesting question for academics to consider. GateGuard's customers acknowledged they received the contracts; they claimed they hadn't read it. Again, that poses an interesting question for a contracts exam. It doesn't evince fraudulent intent by

1

Mr. Teman. Indeed, the reality of online commerce is that agreements like this are the norm. The judge in this case suggested that the terms authorizing the transfer of funds were buried in the contract. GateGuard's contract is actually quite concise relative to many online agreements. The suggestion that a surprising term in an online agreement constitutes an intent to defraud would render most banks and credit card companies guilty of fraud. Nothing in GateGuard's terms of service is extreme or unusual.

The judge in this case, writing to uphold a jury verdict, was constrained to justify the jury's verdict. He was therefore persuaded that the fees charged were unreasonable. And he was skeptical that the terms authorizing a transfer were in fact present at the time the clients agreed to the contract.

But the fees were charged as many contracts — cell phones contracts for example — provide today: a low monthly fee that is accelerated if a contract is terminated early, or not kept current. And the evidence in this case demonstrates conclusively that the term authorizing transfers from the clients' accounts was both part of the original agreements and expressly acknowledged by at least some of the clients.

What explains this prosecution is not the law, nor the justice within this commercial dispute. What explains it, apparently, is the relative inexperience of the front line prosecutors. Those prosecutors were new to the U.S. Attorney's office. They allowed their inexperience to guide their intuitions. And once it was clear that they had uncovered not a criminal commercial enterprise but ordinary online commerce, rather than acknowledging their error, and the injustice in prosecuting a commercial dispute as a crime, they continued to press the prosecution against Mr. Teman.

This behavior is surprising and troubling to those like me who have high regard for United States Attorneys. Yet it is clear that sometimes, winning becomes more important than justice. The prosecution of Mr. Teman is not justice. It is not a credit to the work of the Department. I urge you to take whatever steps are possible to stop this prosecution before Mr. Teman is sentenced to prison.

Sincerely,



Lawrence Lessig

2

**EXHIBIT 2 : GKH EMAIL**

Note Mr. Hammer writes "we moved things around and separated the original terms of service into the different documents". It was corporate counsel who did this, *not* Mr. Teman, and therefore Mr. Teman could have no *mens rea* to defraud via the terms' "Structure"

---

From: **Ran Hammer** < RanH@gkh-law.com>
Date: Tue, May 10, 2016 at 2:22 AM
Subject: SubletSpy Terms of Service
To: Ari Teman < ari@friendorfraud.com>
Cc: Jonathan Irom <jonathani@gkh-law.com>

Hi Ari,

Attached please find the following documents for SubletSpy, based on the drafts you provided -

1.   General Terms of Service.

2.   Payment Terms.

3.   Governing Law and Dispute Resolution Terms.

4.   Privacy Policy.

The privacy policy is attached in both clean version and marked in redline against the existing version. The other documents are provided in clean version, since we moved things around and separated the original terms of service into the different documents.

We apologize for the delay in getting this back to you, our firm was on vacation during Passover.

Please don't hesitate to reach out with any questions or comments.

Best regards,
Ran

**GKH** **Ran Hammer, Adv.** | Gross, Kleinhendler, Hodak, Halevy, Greenberg & Co.
LAW OFFICES E-mail: ranh@gkh-law.com | View Profile | Download vCard

**EXHIBIT 3 : AIRBNB TERMS OF SERVICE (2016)**
https://web.archive.org/web/20161101145932/https://www.airbnb.com/terms?cdn_locale_redirect=1

**EXHIBIT 3B : AIRBNB PAYMENT TERMS (2016)**
https://web.archive.org/web/20161101150251/https://www.airbnb.com/terms/payments_terms

These are attached as separate documents, to be uploaded as Internet Citations.

The Court should please note the line in the main Terms page, "Payment Services provided by Airbnb Payments are subject to the Payments Terms of Service ("Payments Terms")."

That is a link to the Payment Terms.

It should now be obvious to the Court and the Government from the structure and verbiage of Airbnb's mid 2016 Terms that GateGuard's corporate counsel (then Touchless Lab LLC's corporate counsel) copied Airbnb's terms near-identically in form and substance, and therefore I could have no *mens rea* to defraud anyone by inventing this terms structure as it was not his or his counsel's invention.

The Government knows I had nothing to do with the "structuring" of the terms, yet they wish for me to sit and rot for a year pending appeal, torn from my family and loved ones, my life being destroyed, based on the argument I "buried" a clause in terms I did not structure.

**EXHIBIT 4: The Testimony at Trial Shows the Clients were well-aware of the Terms and Accepted them:**

Defense Attorney Gelfand, a former AUSA, did an excellent job establishing that these clients had read and accepted the terms and conditions of GateGuard before ordering, and even asked questions about them. I include the relevant transcripts herein:

**Elie Gabay, Coney Realty (Cross Examination):**

**January 23; Page 126; Line 14; (Court Report Page: 386)**
Q. Now, you testified previously that this was your check, in other words, your company's check?
A. That's correct.
Q. And this was for the payment for the invoice of $3600 that we just discussed; correct?
A. Correct.
Q. What's the date on that check?
A. January 31st, 2018.
Q. Is it fair to say January 19th, the invoice is generated; correct?
A. Yes.
Q. January 23rd, you send a markup of terms and conditions with proposed changes; correct?
A. Yes.
Q. January 31st, eight days after that, you send in the check for the invoice?
A. That is accurate.
Q. And the invoice expressly says that you agree to the terms and conditions that we just read?
A. That's what the invoice says.
Q. That's on the bottom; correct?
A. That's what it says, yes.
Q. And the invoice obviously predates you sending the check; correct?
A. Yes.

**Bonnie Soon Osberger:**

**January 23; Page 161; Line 25;**
Q. Following the show, when you were thinking about purchasing an intercom, did there come a time when you saw the terms and conditions?
A. Yes.
Q. What was your reaction to them?
A. It was very lengthy and I went through all of it...

**January 23; Page 162; Line 21**
Q. Do you recognize those documents?
A. Yes.
Q. As a general matter, what do they reflect?
A. There is the terms and conditions of GateGuard. And then

==there is communications between Ari, myself. And then there is communication between Jackie and myself, the management company. And then there is a copy of the invoice==

**January 23; Page 164; Line 12;**
And then I said further if we'll continue to be
interested, how do we proceed to the next step. And that's
when he said you go onto the site and then you can sign up and
order the product. ==And so I went on the site. I ordered the product,== looked at it.
Before I ordered -- well, I had to submit some sort of
ordering process or some sort of interest process, because
that's when I can get more information from him about the
product. So that's when there is a terms -- **==I asked him about a contract, you know, can I see a contract, and that's when he said that there is a terms and conditions in that ordering process.==**
Q. So you were directed to this Terms & Conditions.

**January 23; Page 167; Line 22:**
==Q. So you read this agreement -- sorry. You read the Terms & Conditions page, right?==
==A. Yes.==
Q. And there is -- you can see here in the middle of this

paragraph, there is -- it says, "==The applicable fees shall be as stipulated in the price list made available by GateGuard on the site from time to time and subject to the additional payment terms stipulated out,==" and then there is a Web page.
Did you click on that link?
A. I didn't because the pricing was what he mentioned to me at the show.[4]

**Soleimani (ABJ)**

**January 23; Page 235; Line 1**
Q. What are the two of those documents?
A. These are invoices for the GateGuard system.
Q. Are those invoices that were sent to you?
A. Yes.
Q. And are they invoices that you paid?
A. Yes.

---

[4] This is plainly untrue based on her testimony a minute prior where she says Teman told her to refer to the website for all Terms and Conditions. As well, the language of the contract makes clear the Payment Terms subpage is not limited to "pricing". Regardless, it is clear that people cannot selectively pick and choose which sections of a contract to disregard without notice and agreement, and that Teman should not be caged because she claims she arbitrarily chose to not click a link.

**January 24; Page 54; Line 24;**

A. We received invoices which we paid for, and then we set up an installation.

Q. So your testimony is that you never went onto the GateGuard website to become a customer; you never signed up online?

A. Not that I recall.

Q. Let me get this straight for a second. Is it your testimony that you don't recall doing it or that you didn't do it?

A. As far as I remember, I did not do it.

Q. I'm not trying to be difficult, but I want to really get this straight. Do you remember whether you did it or are you saying -- or are you denying that you did it?

        MR. BHATIA: Objection. Asked and answered.
        THE COURT: Overruled.

A. I don't recall.

**January 24; Page 57; Line 2;**

In the process of becoming a GateGuard customer, you received invoices; correct?

A. Yes.

Q. Okay. And the invoices were generated by GateGuard to you; correct?

A. Correct.

Q. And you paid those invoices; correct?

A. Yes.

Q. The bottom of the invoice expressly said that you agreed to be bound by the terms and conditions; correct?

A. I did not see that at the time.

Q. That wasn't my question. You've seen it since then; correct?

A. Correct.

Q. And you'd agree with me that that's actually what it says; correct?

A. Yes.

**January 24; Page 60; Line 23;**

Q. Can you please read that full sentence?

A. "Payer accepts terms at gateguard.xyz/legal/terms.php."

Q. Can you please read what follows after that?

A. "This is a three-year contract."

**January 24; Page 79; Line 5;**

Q. And you had actually asked for a general release from GateGuard to Mr. Reinitz in October of 2018; correct?

A. Correct.

Q. So to be clear, when you asked for a release, you were

asking to be relieved from any prior obligations that might have existed; correct?

A. Any prior obligations he was claiming.

**January 24; Page 83; Line 23;**

And when you communicated with JPMorgan Chase, you had obviously by that point seen the checks themselves; correct?

A. Correct.

Q. All of them say, "Draw per contract. No signature required." Correct?

A. Correct.

Q. All of them reference the same URL on the invoice that you received back in 2017; correct?

A. Correct.

Shelly Jenkins Pecot
18 Mercer St. New York NY 10013
shelly.pecot@gmail.com (917) 561-6505

Judge Paul Engelmayer
District Judge
Southern District of New York
40 Foley Square
New York, NY 10008

August 21, 2021

Your Honor,

My name is Shelly Jenkins Pecot. I am a shareholder at 18 Mercer. I was out of the country when I was subpoenaed to testify.

With regard to 18 Mercer, I do not believe Ari Teman should go to prison.

Ari Teman did warn myself and other shareholders of what he said were the following terms in the contract he signed with our then board Vice President via an online document.

1. There was an $18,000 fee for removing the device
2. There was a $10,000 fee for collections
3. There would be attorney fees
4. There was binding arbitration
5. That he believed he had the right to draft owed monies from our bank account

I confirm that I did text with Mr. Teman and that the texts he has shown to me are accurate and match those on my phone.

I also confirm that I did forward the two attached emails to Mr. Teman on Aug 19th.

I do not live in New York and was only at the coop for a few days while Mr. Teman's device was installed. During that time, the device was connecting to the app but seemed to be disconnected from the door lock.

My personal interactions with Mr. Teman on this matter were amicable at first. I believed that he wanted to work with us to get his device working properly. Mr. Teman told me that our internet was not sufficient to run the device and that he had informed the board of this. Mr. Teman also told me that he had added a new router to help with this issue.

I was informed by another shareholder that this shareholder had been told by contractors that Bonnie Soon-Osberger had instructed them to disconnect the device. At the time, my suspicion was that it had been sabotaged to justify going with a different company. However, I had no direct proof of this and now believe they were referring to when the device was removed to be replaced.

I have no direct knowledge of Mr. Teman's interactions with the board or management. However the management team did insist to shareholders that they had no interactions with Mr. Teman. Mr. Teman forwarded me emails between himself and management to show me that they were not being truthful.

I am out of state, but I would be happy to speak by Zoom on this matter if you have any further questions.

Shelly Jenkins Pecot

Aug 20, 2021

Shelly Precot appeared before me
on August 20th 2021

Melody Hannigan as notary

MELODY HANNIGAN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID# 20064012643
MY COMMISSION EXPIRES APR. 05, 2022

 Gmail

**Ari Teman <ari@teman.com>**

## Fwd: How do we resolve this intercom situation?
1 message

**shelly pecot** <shelly.pecot@gmail.com>                                    Thu, Aug 19, 2021 at 2:49 PM
To: Ari Teman <ari@teman.com>

---------- Forwarded message ---------
From: **margaret** <margaret@dogbarksound.com>
Date: Mon, Dec 3, 2018 at 11:44 AM
Subject: Re: How do we resolve this intercom situation?
To: Jackie Monzon <jackie@crystalrmi.com>
Cc: Tracey Tooker <traceytooker@icloud.com>, Bonnie Soon-Osberger <bsoon-osberger@metisource.com>, shp83@hotmail.com <shp83@hotmail.com>, Shelley Pecot <shelly.pecot@gmail.com>, dick <rwien@cbs.com>, robi.buldini@gmail.com <robi.buldini@gmail.com>, Caroline Cabrera <caroline@crystalrmi.com>, Gina Hom <Gina@crystalrmi.com>

By 'the board' so you mean Bonnie and Stephanie? I'm a board member and I have no idea where things stand with the intercom.

**The last communications from Ari Teman:**

10/5  An e-mail from Ari stated that there was a 10 year contract and he would put a lien on the building.

10/22  The next e-mail from Ari stating that it would cost $18,000 to disable the device and $10,000 in collections if he wasn't paid in full.

**The last communication from Bonnie.**

10/22  An e-mail to Ari stating that he would hear from our attorney that week

And that's the only information the shareholders have. Are we involved in a lawsuit? Are we working on getting another intercom? Is there some reason the shareholders can't have this information?

Thank you,

Margaret

On Dec 3, 2018, at 10:16 AM, Jackie Monzon wrote:

The Board is working on this.

Jackie Monzon
President
1441 Broadway, Suite 5047
New York, NY 10018
646 569-5574

Jackie@crystalrmi.com
www.crystalrmi.com

NOTICE: The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination,

distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply email and delete this message from your computer. Thank you for your cooperation.


-----Original Message-----
From: Margaret <margaret@dogbarksound.com>
Sent: Saturday, December 1, 2018 12:25 PM
To: Tracey Tooker <traceytooker@icloud.com>
Cc: Bonnie Soon-Osberger <bsoon-osberger@metisource.com>; shp83@hotmail.com; Shelley Pecot <shelly.pecot@gmail.com>; dick <rwien@CBS.com>; robi.buldini@gmail.com; Jackie Monzon <jackie@crystalrmi.com>; Caroline Cabrera <caroline@crystalrmi.com>; Gina Hom <Gina@crystalrmi.com>
Subject: Re: How do we resolve this intercom situation?

I don't know. Anytime I ask Bonnie, Stephanie or management for update on what is being done to get a functioning intercom I get no answer.

Sent from my iPhone


> On Dec 1, 2018, at 12:08 PM, Tracey Tooker <traceytooker@icloud.com> wrote:



Been going on for months?


Tracey


Sent from my iPhone

 Gmail

**Ari Teman <ari@teman.com>**

## Fwd: Who moved the intercom at 18 Mercer?
1 message

**shelly pecot** <shelly.pecot@gmail.com>                                          Thu, Aug 19, 2021 at 4:34 PM
To: Ari Teman <ari@teman.com>

Ari, I have to send this to you because it is the right thing to do. Please don't make me sorry I did it. I wish you all the best.
I appreciate very much that you explained and apologized for your prior actions.

Shelly
---------- Forwarded message ---------
From: **Margaret** <margaret@dogbarksound.com>
Date: Mon, Oct 22, 2018 at 11:40 AM
Subject: Re: Who moved the intercom at 18 Mercer?
To: Bonnie Soon-Osberger <bsoon-osberger@metisource.com>
Cc: Stephanie Phillip <shp83@hotmail.com>, bonnie soonosberger <bsoonosberger@gmail.com>, Mark Osberger
<mark.axisfilms@gmail.com>, Angela Huang <ahuang30@gmail.com>, <traceytooker@hotmail.com>, <rwien@cbs.com>,
Roberta Buldini <robi.buldini@gmail.com>, Cc: Jackie Monzon <jackie@crystalrmi.com>, Archie Davidson
<inchfitness@aol.com>, <shelly.pecot@gmail.com>


We know who moved it. You told the men working on the lobby to move it. ( they told me) So I guess you're legally liable.

Sent from my iPhone

On Oct 22, 2018, at 1:14 PM, Bonnie Soon-Osberger <bsoon-osberger@metisource.com> wrote:


All-


Please discard any communication from Ari Teman.


It is unfortunately that he has very bad reputation and it aligns with his behavior to make repreat legal threats

We will take up with our attorney at this point for his advice for laws under consumer protection as his intercom panel is defective.

I believe anyone has direct contact with him before or moving without going through our management will have legal liability or sequence.

Thanks,

Bonnie